IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON  DIVISION

| | | |
|---|---|---|
| **JOHN KIRK OWENS,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **FILE  NO.:** _5:09-cv-399_ |
| | : | |
| **CITY OF McDONOUGH, GEORGIA,** | : | |
| **KENNETH B. NOBLE,** | : | |
| **JOHN ABERNATHY,** | : | |
| **WILLIAM STOKES,** | : | |
| | : | |
| **Defendants**. | : | |

## COMPLAINT

**COMES NOW**, Plaintiff **John Kirk Owens** and files this civil  action for monetary damages and equitable relief against the **City of McDonough, Georgia**, **Kenneth B. Noble**, **John Abernathy** and **William Stokes**, as follows:

## INTRODUCTION

### 1.

This is a civil action arising from the unlawful arrest, detention and prosecution of Owens caused by the willful and wrongful acts of the Defendants in violation of Owens' rights under the Fourth Amendment of the United States

–1–

Constitution.   Owens asserts his federal claims pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.  Owens seeks equitable relief and monetary damages; he also seeks an award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

2.

This Court has original jurisdiction over Owens' federal civil rights claims pursuant to 28 U.S.C. §§ 1331 and 1343.

3.

Venue is proper in the Middle District of Georgia – Macon Division pursuant to 28 U.S.C. § 1391 because two or more of the parties reside therein (**Abernathy & Stokes**) and some of Owens' claims arose in this District.

## PARTIES

4.

John Kirk Owens is a citizen of the State of Georgia residing in Henry County, Georgia.

5.

Defendant City of McDonough, Georgia ("McDonough"), is a municipality organized pursuant to the Georgia Constitution and is subject to the jurisdiction of this Court.  McDonough may be served with summons and process by and through Mayor Billy Copeland, City Hall, 136 Keys Ferry Street, McDonough, Georgia 30253.

6.

McDonough, acting pursuant to its governmental authority, operates the McDonough Police Department (MPD).  MPD is staffed with 41 full time certified and 5 non-certified employees and operates three shifts of uniformed patrol officers. MPD conducts all phases of investigations which include criminal, narcotics and all vice crime investigations utilizing 5 full time investigators and 2 narcotics investigators.

7.

As fully set forth herein, Owens alleges that McDonough is liable for the injuries he suffered as a result of the illegal actions of Defendant Noble, a criminal investigator employed by MPD, because policies and customs established by

officials within MPD with final policy making authority were the moving force behind Defendant Noble's illegal actions.

8.

Defendant Kenneth B. Noble, ("Noble"), is a citizen of the State of Georgia and is subject to the personal jurisdiction of this Court.  Noble may be personally served with the Complaint and summons at the McDonough Police Department, 88 Keys Ferry Street, McDonough, Georgia  30253.

9.

At all times relevant to this action, Noble was acting under color of state law and within the scope of his discretionary functions as duly sworn, certified law enforcement officer  employed by the McDonough Police Department.

10.

Defendant John Abernathy, ("Abernathy"), is a citizen of the State of Georgia and resides in the District.  He is subject to the personal jurisdiction of this Court.  Abernathy may be personally served with the Complaint and summons at the Bibb County Sheriff's Offices located at 704 Hawthorn Street, Macon, Georgia  31201.

11.

At all times relevant to this action, Abernathy was acting under color of state law and within the scope of his discretionary functions as duly sworn, certified law enforcement officer employed by the Bibb County Sheriff's Office ("BCSO").

12.

Defendant William Stokes, ("Stokes"), is a citizen of the State of Georgia  and is subject to the personal jurisdiction of this Court.  Stokes may be personally served with the Complaint and summons at the Twiggs County Sheriff's Department, 37 North Ash Street, Jeffersonville, Georgia  31044.

13.

At all times relevant to this action, Stokes was acting under color of state law and within the scope of his discretionary functions as a duly sworn, certified law enforcement officer employed by the Twiggs County Sheriff's Department.

## FACTUAL ALLEGATIONS

### 14.

Owens is a life-long resident of McDonough in Henry County, Georgia.  He graduated from Henry County High School in 1984.

### 15.

His family founded the McDonough Christian Academy, now known as the Eagle's Landing Christian Academy, as part of their ministry at the First Baptist Church in McDonough more than thirty years ago.

### 16.

For more than twenty years, Owens has owned and operated McDonough Fence Company.

### 17.

Owens has two boys, John Wesley and Justin, who both attended school in McDonough, Georgia.

### 18.

In the Fall of 2007, Owens was forty-one years old.   Owens weighed approximately 220 pounds.  He is 5'11".  He had a goatee.  He has dirty-blonde hair

and, at the time, his hair was not graying.  He has hazel colored eyes.  His face was round, but not chubby.

19.

He lives in a house located on Old Jackson Road in Locust Grove.  He has been living in the same house for almost ten years.

20.

Before owning his present home, Owens lived in a home located on his family's farm in Henry County.

21.

Owens keeps his business and personal checking accounts at the Macintosh State Bank in Henry County, Georgia.  He has been banking there for more than fifteen years.

22.

In the Fall of 2007, Owens owned two pick up trucks:  a 1986 Ford pick up truck, white in color; and a 2000 Ford pick up truck, white in color.  Both trucks had valid license plates.

23.

Owens has never owned a Chevrolet pick up truck; he is Ford truck man.

24.

Owens is an upstanding law-abiding citizen of Henry County who runs his own business, owns his home, and lives an ordinary life.

25.

Owens was a well-known and respected member of his community in McDonough and Henry County.

26.

At 12:50 p.m. on September 27, 2007, a heavy set white man walked into a Marathon Gas Station on Highway 96 in Twiggs County, Georgia. He walked up to the counter, pulled a small shiny pistol from his back pocket, pointed it at the startled store clerk, and told her to give him the money out of the cash register. The white man took the money, left the store, and drove away in a silver pick up truck.

27.

A surveillance camera captured several still photographs of the white man who robbed the Marathon Gas Station. The white man wore a floppy hat that

obscured his face from view, a long light colored shirt, dark pants, and white tennis shoes.   The man had a small mustache.   He was big, tall, barrel chested, and appeared to weigh well over two hundred pounds.

28.

Ok Sun Cho, the store clerk, described the robber as a white man wearing a cowboy hat.

29.

The surveillance camera captured several still photographs of the man's pick-up truck.   The truck appeared to be a late model Chevrolet Silverado, champagne or light gold in color, with a rail on the side of the truck box, a 3 ball hitch and an antenna bud on the roof.   The truck had a cardboard tag.

30.

The Twiggs County Sheriff's Office ("TCSO") responded to the scene and, ultimately, the investigation of the Marathon armed robbery was assigned to Defendant Stokes, a criminal investigator for the TCSO.

31.

While someone was robbing Ms. Cho at gunpoint in the Marathon Store in Twiggs County, Owens was at the McIntosh State Bank in McDonough making a deposit in his checking account.

32.

A white, stocky man walked into First Bank in McDonough, Georgia at 12:30 p.m. on October 27, 2007.  He walked up to Nichole Adcock's teller window.  In a deep, calm voice, he said, "this is a robbery, my two brothers are in the truck and as long as everyone cooperates, no one will get hurt.  We want all of your money, no dye packs.  Be calm and everything will be fine.  Ms. Adcock put all the cash in her top drawer into the zipper bag the man slid to her; he turned around and walked out of the bank.

33.

Hannah Jones, a First Bank employee, described the robber as a heavy set white man with a mustache, camouflage hat, and sunglasses.

34.

Wendy Telfer, a First Bank employee, described the robber as a stocky white male who was about 5'9" tall.  He wore a big flowing shirt.

35.

Christie Robinson, a First Bank employee, described the robber as wearing a green camouflage hat, black plastic sunglasses, and having a mustache.

36.

Janice Ryan, a First Bank employee, described the robber as a white male, about 5'9"-5'11", weighing 250-260 pounds.

37.

These witnesses filled out Bandit Description Forms.  The descriptions given by the witnesses varied considerably.  Three witnesses estimated that he was in his forties; two witnesses estimated he was in his fifties.  Estimates of his height varied from 5'4" to 5'11".  Two witnesses estimated his weight at 200 pounds; two others estimated his weight at 250 pounds.   Two witnesses described a medium build; three described a "heavy" build.

38.

Other witnesses described the "get away" vehicle driven by the robber as a Chevrolet Silverado pick up truck, gold/taupe in color, with a cardboard tag that said, "lost tag."

39.

When the robbery at First Bank was taking place, Owens was working at the residence of Charles Toll, 110 Emerald Drive, McDonough, Georgia.   He was installing some gates.

40.

The First Bank robbery was within the jurisdiction of MPD and ultimately, Defendant Noble was assigned to lead the investigation.

41.

Between October 27th and November 16th, Defendant Noble made no progress in his investigation.  He identified no additional witnesses and had no suspects.

42.

A heavy set white man with a mustache and stubbly beard wearing a floppy, camouflage hat and dark sunglasses, entered the Colonial Bank in Bibb County

around 1:19 p.m. on November 2, 2007.  When a customer walked away from Amy

Gorham's teller window, the heavy set white man approached Ms. Gorham, slid a

black bag into her booth, and said, "this is a robbery and I am armed.  As long as

you give me the money and be quiet and no one will get hurt.  My two brothers are

on site.  The heavy set white man moved to Chiquita Harris' booth and repeated his

orders.  He took the money and walked out of the back door of the Colonial Bank.


43.

Amy Gorham described the robber as an older man wearing a camp brim hat,

black sunglasses, a long sleeve denim button down shirt with a white T-shirt

underneath, and denim jeans.  He spoke very softly.  He walked with a slight limp.

44.

A surveillance camera captured a photograph of the robber.  The

photograph depicts a very heavy set white man with a big round jowly face and

a mustache, wearing a wide-brimmed hat, dark glasses, a light colored shirt

hanging over his waist, a white T-shirt, blue jeans, and white sneakers, carrying a

small, dark bag in his left hand.

45.

While someone was robbing Ms. Gorham in the Colonial Bank in Bibb County, Owens was in Henry County repairing a fence for Southern Pipe and Supply located at 165 McDonough Parkway, McDonough, Georgia 30253.

46.

On November 16th, a jail trustee assigned to clean up duty at MPD saw a photograph of the white male who had committed the robbery at First Bank.  The photograph was attached to a chalk board in the squad room. The jail trustee said that he thought the person looked like Owens.

47.

Noble accepted the jail trustee as a "reliable source" without making any effort to ascertain how the jail trustee knew Owens, what motivation the jail trustee had for identifying Owens, or ensuring that the jail trustee had previously been used by any law enforcement official or agency as a "reliable source" for the specific purpose of identifying unknown suspects of bank robberies.

48.

The jail trustee told Noble that Owens was going through a divorce, that he was talking about bankruptcy, that he had known Owens for a number of years, but had no idea what kind of vehicle Owens drove.

49.

Owens was going through a divorce, but he was not bankrupt and his business was doing just fine.

50.

Between November 16th and November 21st, Noble did nothing to follow up on the jail trustee's statement that the unknown robber looked like Owens.

51.

At 3:42 p.m. on November 19, 2007, an overweight white male, 6'0" tall, with grey hair and stubble on his face, but no beard, wearing a blue jean shirt, tan fishing hat, and sunglasses, walked into the Capitol City Bank in Bibb County, Georgia.  He walked up to teller Tiffany Coffer with a blue cloth bag.  He did not show her a weapon.  He told her to put the money in the bag, not to use a dye pack, and she

would not be hurt.  Ms. Coffer put the money in the blue bag, he took the bag and left the Capitol City Bank.

52.

Ms. Coffer described the "get away" vehicle as a late model Chevrolet Silverado pick up with an extended cab, tan in color, with a possible drive out tag covering the license plate of the vehicle.

53.

While someone was robbing Ms. Coffer in Bibb County on November 19, 2007, Owens was at the home of Shannon Reyome in McDonough, Georgia giving her an estimate on a fence job.

54.

The robbery at Capitol City bank received coverage on the evening news in Bibb County.

55.

Bonnie Bray, one of the witnesses to the October 27th robbery of First Bank in McDonough, saw the evening news coverage of the robbery at Capitol City Bank.

She felt the description of the robber and the robbery sounded very much like the robbery at First Bank.

56.

Bonnie Bray called Noble to tell him that she thought the description of the robber and the robbery at Capitol City Bank sounded similar to the robbery at First Bank.

57.

Noble, acting solely upon the jail trustee's observation that the unknown person depicted in the picture on the chalk board at MPD looked a bit like Owens, began investigating Owens as a possible suspect.

58.

Noble pulled Owens' drivers license information.  Owens' drivers' license was valid.

59.

Owens' drivers' license information did not verify the jail trustee's observation that the person who was committing the robberies looked a bit like Owens.

60.

His drivers' license information showed that Owens renewed his license in February of 2004.

61.

Noble ordered a copy of Owens' driver's license picture.  The picture depicted Noble as he appeared in 2000, as Noble did not have a new picture taken when he renewed his drivers' license in 2004.

62.

When his drivers' license picture was taken seven years before the robberies, Owens weighed far more than he did in 2007.

63.

Owens was diagnosed with Diabetes - Type II and lost more than 25 pounds after his drivers' license photograph was taken in 2000.

64.

Noble made no effort to determine whether the drivers' license photograph of Owens accurately depicted Owens' appearance in the Fall of 2007.

65.

Noble pulled a report from the Georgia Department of Motor Vehicles that listed all the vehicles registered to Owens.  The report shows that Noble owned two Ford pick-up trucks, including  a 1994 Ford pick-up that was white in color.

66.

All of Noble's vehicles were properly registered and licensed through the State of Georgia.

67.

Every witness who saw the "get away" vehicle at any of the robberies described the vehicle as a late-model Chevrolet Silverado, gold or taupe in color, with a cardboard license plate.

68.

Owens' motor vehicle report did not support the jail trustee's observation that the person who committed the robberies looked a bit like Owens.

69.

Noble pulled Owens' criminal history.  Owens' criminal history revealed

two misdemeanors, committed in 1985 and 1990 respectively, neither of which

had anything at all to do with theft, violence, or dishonesty.

70.

Owens' criminal history did not support the jail trustee's observation that

the person who committed the robberies looked a bit like Owens.

71.

Noble made no effort to contact Owens prior to the afternoon of November

21st.

72.

Acting solely upon the suggestion of a jail trustee, Noble asked that

Owens' picture be placed in a six person photographic line up.

73.

Noble showed the photographic line up to the witnesses of the First Bank

robbery.

74.

Hannah Jones did not pick out Owens or anyone else.

75.

Wendy Telfer did not pick out Owens or anyone else.

76.

Christie Robinson did not pick out Owens or anyone else.

77.

Janice Ryan did not pick out Owens or anyone else.

78.

None of the witnesses to the First Bank robbery in McDonough corroborated the jail trustee's observation that the unknown person who robbed their bank looked a bit like Owens.

79.

Noble had no evidence supporting the supposition that Owens' was the person who robbed First Bank.

80.

Noble had a great deal of exculpatory evidence disproving any theory that Owens was involved in the robbery at First Bank, including: (a) Owens' motor vehicle report showing that he did not own a Chevrolet Silverado pick-up truck; (b) Owens' clean driving history and criminal history; and (c) none of the witnesses at the scene of the robbery identified Owens' as the suspect.

81.

Despite having no evidence at all to support the jail trustee's observation that Owens looked like the unknown person who robbed the First Bank, Noble called Defendant Abernathy of the Bibb County Sheriff's Department on November 21st and informed him that MPD had a "potential suspect."

82.

Noble gave Abernathy information concerning the description of the unknown person who robbed the First Bank.  He identified Owens as the likely suspect and further advised that "this possible suspect John Owens robbed a convenient (sic) store at gun point, in Twiggs County."

83.

Noble e-mailed Owens' picture to Abernathy on November 21st.

84.

Noble failed to disclose any of the exculpatory information concerning Owens that he had gathered during his brief investigation.

85.

Abernathy failed to ask Noble whether he had any information that supported his identification of Owens as a possible suspect.

86.

Abernathy adopted Noble's constitutionally deficient investigation as his own and, without more, decided that Owens was the principal suspect in the robberies at Colonial Bank and Capitol City Bank.

87.

To support his hunch, Abernathy placed Owens' photograph in a photographic line-up.

88.

Abernathy presented the photographic line up to the witnesses at the Colonial Bank robbery.

89.

Chiquita Harris did not pick Owens out of the photographic line up.

90.

Amy Gorham picked Owens out of the photographic line up.

91.

Abernathy presented the photographic line up to the witnesses at the Capitol City bank robbery.

92.

None of the witnesses at the Capitol City bank picked Owens out of the photographic line up.

93.

Abernathy appeared before a Bibb County Magistrate judge on November 21st and swore under oath that Owens had committed the offense of Robbery by Intimidation at the Colonial Bank.

94.

Abernathy warrant application omitted material facts and contained materially misleading facts including that Owens had been "identified by a photo-line up" when, as a matter of actual fact, Owens had not been identified by at least one witness at Colonial Bank and, other than Ms. Gorham, every other witness to any of the robberies committed in Twiggs, Bibb and Henry county.

95.

Abernathy appeared before a Bibb County Magistrate judge on November 21st and swore under oath that Owens had committed the offense of Robbery by Intimidation at the Capitol City Bank.

96.

Abernathy warrant application omitted material facts and contained out-right falsehoods, including that Owens had been "identified by a photo-line up" despite the fact that none of the witnesses at Capitol City Bank picked Owens out of the photographic line-up.

97.

Prior to securing the arrest warrants for Owens, Abernathy engaged in a constitutionally deficient investigation of the robberies at the Capitol City Bank and Colonial Bank by ignoring plainly exculpatory evidence, including but not limited to:  (a)  Owens' motor vehicle history showing that he did not own a Chevrolet Silverado pick up; (b) Owens' driving history and criminal history that gave no indication at all that Owens would perpetrate a violent crime; (c) Owens' reputation in the community as a well-respected business man.

98.

Prior to securing the arrest warrants for Owens, Abernathy engaged in a constitutionally deficient investigation of the robberies at the Capitol City Bank and Colonial Bank by failing to take reasonably prudent steps to corroborate Ms. Gorham's identification of Owens' as the perpetrator, including but not limited to: (a)  interviewing Owens prior to his arrest; (b) using his authority as a law enforcement officer to subpoena records from Owens' bank accounts that might show significant deposits; (c) placing Owens under surveillance; (d) determining whether Owens presently owned or drove a Chevrolet Silverado, and (e)

interviewing witnesses who could confirm Owens' whereabouts when the robberies occurred.

99.

No reasonably prudent trained law enforcement officer would have believed that arguable probable cause, much less probable cause, existed to seek an arrest warrant for Owens based upon the information available to Abernathy on November 21st.

100.

A reasonably prudent trained law enforcement officer in Abernathy's position would have paused and engaged in further investigation of the robberies before seeking an arrest warrant for Owens.

101.

In November of 2007, clearly established law existed that placed Abernathy on notice that seeking an arrest warrant for Owens without probable cause violated Owens' constitutional rights.

102.

Abernathy and Noble shared their hunch that Owens committed the robberies in their counties with Defendant Stokes, who had been assigned to investigate the robbery of the Marathon Gas Station in Twiggs County.

103.

Noble and Abernathy failed to disclose to Stokes any of the exculpatory information concerning Owens that they had gathered during their investigations.

104.

Between September 27th and November 21st, Stokes had made no progress in his investigation of the robbery at the Marathon Gas Station.

105.

Stokes did not independently identify Owens as a potential suspect of the robbery at the Marathon Gas Station.

106.

Prior to communicating with Abernathy and Noble, Stokes had no suspects for the robbery at the Marathon Gas Station.

107.

Stokes adopted Noble and Abernathy's constitutionally deficient investigations as his own and, without more, decided that Owens was the principal suspect in the armed robbery of the Marathon Gas Station.

108.

Acting solely upon the constitutionally deficient investigations of Abernathy and Noble, Stokes identified Owens as the perpetrator of the robbery at the Marathon Gas Station.

109.

Stokes made no effort to independently verify the information provided by Abernathy and Noble.

110.

Without engaging in any meaningful investigation at all, Stokes appeared before a Magistrate judge in Twiggs County and swore out an arrest warrant for Owens for the armed robbery of the Marathon Gas Station.

111.

Stokes' warrant application omitted material facts and contained materially misleading facts including that Owens had been "identified by a photo-line up" when, as a matter of actual fact, Owens had not been identified by virtually all of the witnesses to each of the robberies committed in Twiggs, Bibb and Henry county.

112.

Prior to securing the arrest warrant for Owens, Stokes engaged in a constitutionally deficient investigation into the robbery at the Marathon Gas Station by ignoring plainly exculpatory evidence, including but not limited to: (a) Owens' motor vehicle history showing that he did not own a Chevrolet Silverado pick up; (b) Owens' driving history and criminal history that gave no indication at all that Owens would perpetrate a violent crime; (c) Owens' reputation in the community as a well-respected business man; and (d) the stark differences between the Marathon Gas Station robbery and the other robberies, specifically, the fact that no weapon was shown at any of the robberies, other than the Marathon Gas Station.

113.

Prior to securing the arrest warrants for Owens, Stokes engaged in a constitutionally deficient investigation into the robbery at the Marathon Gas Station by failing to take reasonably prudent steps to corroborate the only eye-witness identification of Owens' as the perpetrator, including but not limited to:   (a) interviewing Owens prior to his arrest; (b) using his authority as a law enforcement officer to subpoena records from Owens' bank accounts that might show significant deposits; (c) placing Owens under surveillance; (d) determining whether Owens presently owned or drove a Chevrolet Silverado, and (e) interviewing witnesses who could confirm Owens' whereabouts when the robberies occurred.

114.

No reasonably prudent trained law enforcement officer would have believed that arguable probable cause, much less probable cause, existed to seek an arrest warrant for Owens based upon the information available to Stokes on November 21st.

115.

A reasonably prudent trained law enforcement officer in Stokes' position would have paused and engaged in further investigation of the Marathon Gas Station armed robbery before seeking an arrest warrant for Owens.

116.

In November of 2007, clearly established law existed that placed Stokes on notice that seeking an arrest warrant for Owens without probable cause violated Owens' constitutional rights.

117.

Noble communicated with Stokes and Abernathy about the results of their investigations during the afternoon of November 21st.

118.

Noble, Stokes and Abernathy decided to arrest Owens on the Bibb County warrants.

119.

Noble appeared before a magistrate judge in Bibb County and submitted a sworn application for a search warrant of Owens' home.

120.

Abernathy and Stokes travelled together to Henry County on November 21st for the purpose of meeting with Noble and executing Abernathy's arrest warrants for Owens.

121.

Noble asked for the assistance of the Henry County SWAT team in executing the arrest warrants on Owens.

122.

Owens was at home preparing for Thanksgiving when the Defendants, backed by the Henry County SWAT team, descended upon his home.

123.

Several neighborhood kids were outside and saw the Defendants and the SWAT team drive onto Owens' property.

124.

One of the kids ran inside and told Owens that the police were at his home.

125.

When Owens stepped out of his front door, SWAT team members greeted him with semi-automatic rifles aimed at his head.   One SWAT team member held his the barrel of his rifle just inches from Owens' face.

126.

Owens was shocked and scared.  He asked what was happening.  One of the Defendants told him that they had warrants for his arrest for robbery in Bibb and Twiggs County.

127.

Owens was handcuffed and placed in the back of Abernathy's vehicle.

128.

Noble executed the search warrant on Owens' home.  Noble found nothing at all to corroborate the Defendants' bare suspicions that Owens had perpetrated the robberies.

129.

Abernathy and Stokes did not bother to wait for Noble to complete his search of Owens' residence.  They drove away with Owens.

130.

Any reasonably prudent trained law enforcement officer would have immediately noticed the stark difference between Owens' actual appearance in November of 2007 and his drivers' license photograph taken seven years earlier. Owens' face looked much less full – he plainly had lost a great deal of weight.

131.

Any reasonably prudent trained law enforcement officer would have immediately noticed the stark difference between Owens' appearance in November of 2007 and the appearance of the person who had perpetrated the robberies in Henry, Bibb and Twiggs counties, including:  (a) Owens had a goatee, not a mustache described by each of the victims, including the victims of the Capitol City robbery on November 19th, just two days prior to his arrest; (b) Owens' face was much smaller than the face shown in each of the surveillance photographs taken of the perpetrator of the various robberies; (c) Owens was shorter than the perpetrator; and (d) Owens did not weigh anywhere near as much as the perpetrator.

132.

Noble took no further investigative steps to corroborate his hunch that Owens committed the First Bank robbery.

133.

The negative results of the search warrant, like every other step taken by Noble in his investigation, failed to provide any evidence at all to support the jail trustee's statement that Owens resembled the person who committed the First Bank robbery.

134.

Despite all of the evidence tending to negate Noble's theory that Owens had committed the robbery at First Bank, Noble appeared before a Henry County Magistrate judge on November 27th and swore under oath that Owens had committed the offense of Robbery by Intimidation at First Bank.

135.

Noble's warrant application does nothing more than recite the essential elements of the offense of robbery by intimidation.

136.

Noble's warrant application omitted material exculpatory facts that plainly established the absence of reasonable suspicion, much less probable cause, to support an arrest warrant, including, but not limited to: (a) none of the witnesses at First Bank were able to identify Owens as the suspect; (b) Owens did not own or drive a Chevrolet Silverado; (c) a search warrant of Owens' home uncovered no evidence at all; and (d) Noble's "reliable informant" was nothing more than a jail trustee who happened to see a likeness between a bolo of the perpetrator and Owens.

137.

Prior to securing the arrest warrants for Owens, Noble engaged in a constitutionally deficient investigation into the robbery of First Bank by ignoring plainly exculpatory evidence, including but not limited to: (a) Owens' motor vehicle history showing that he did not own a Chevrolet Silverado pick up; (b) Owens' driving history and criminal history that gave no indication at all that Owens would perpetrate a violent crime; (c) Owens' reputation in the community

as a well-respected business man; and (d) none of the witnesses at First Bank were able to identify Owens as the suspect.

138.

Prior to securing the arrest warrants for Owens, Noble engaged in a constitutionally deficient investigation into the robbery of the First Bank by failing to take reasonably prudent steps to corroborate what little evidence he had identifying Owens as a possible suspect, including but not limited to:  (a)  interviewing Owens prior to his arrest; (b) using his authority as a law enforcement officer to subpoena records from Owens' bank accounts that might show significant deposits; (c) placing Owens under surveillance; (d) determining whether Owens presently owned or drove a Chevrolet Silverado, and (e) interviewing witnesses who could confirm Owens' whereabouts when the robberies occurred.

139.

No reasonably prudent trained law enforcement officer would have believed that arguable probable cause, much less probable cause, existed to seek an arrest warrant for Owens based upon the information available to Noble on November 27th.

140.

A reasonably prudent trained law enforcement officer in Noble's position would have paused and engaged in further investigation of the robberies before seeking an arrest warrant for Owens.

141.

In November of 2007, clearly established law existed that placed Noble on notice that seeking an arrest warrant for Owens without probable cause violated Owens' constitutional rights.

142.

Owens was brought before a magistrate judge in Bibb County on November 23, 2007.  The magistrate judge set a $3,000.00 bond, however, Owens had a hold from Twiggs County based on Defendant Stokes' warrant for the  Marathon Gas Station armed robbery.

143.

Had Owens made bond, he would have simply been transported to Twiggs county where he would have remained incarcerated.

144.

On December 7th, Owens' attorney appeared at his commitment hearing in Bibb County Magistrate Court.  Owens' attorney had evidence in the form of witnesses, videotape, documents, and affidavits that affirmatively proved that Owens had not committed any of the robberies.

145.

A Twiggs County investigator quickly concluded that Owens could not possibly be the perpetrator of the Marathon Gas Station armed robbery and, upon his return to Twiggs County, asked a magistrate judge to recall the arrest warrant issued at the request of Defendant Stokes.

146.

Noble refused to listen to any of the evidence produced by Owens' attorney. He left the Bibb County Magistrate Court without considering Owens' actual innocence as to the First Bank robbery.

147.

Owens was able to make bond on December 11th, 2007.

148.

The very next day, Owens learned that the Henry County Sheriff's Office had an active warrant for his arrest – the warrant taken by Noble.

149.

Owens turned himself into the Henry County Jail on December 13th.  Owens was arrested on the warrant taken by Noble.

150.

The actual perpetrator committed another robbery in Henry County on December 12th.

151.

When Owens appeared in Court on December 14th, Captain Helgerson of MPD saw him and immediately recognized that he could not possibly be the person who had committed the various robberies.  The suspect weighed at least 250-275 and Owens was no where near that heavy.

152.

The Bibb County warrants were dismissed on or about December 14, 2007.

153.

The Henry County warrant was dismissed on or about December 14, 2007.

154.

The fact of Owens' arrest as the perpetrator of several bank robberies was broadcast on several television news networks.

155.

The fact of Owens' arrest as the perpetrator of several bank robberies was covered by several newspapers, including the paper in Owens' home town of McDonough, Georgia.

156.

Owens' arrest has caused irreparable harm to his reputation in the community where he was born, raised and has lived for his entire adult life.  The arrest has negatively affected his business and inter-personal relations with customers, friends and colleagues in his community.

## COUNT I

## FOURTH AMENDMENT – 42 U.S.C. §1983

**(False Arrest)**

157.

The foregoing paragraphs one (1) through one hundred and fifty-six (156) are incorporated herein by this reference.

158.

At all times relevant to this action, the individual defendants were acting under color of state law and within the scope of their discretionary functions as employees of their respective agencies.

159.

Based upon his experience, knowledge and training as a law enforcement officer, Noble knew that no probable cause existed to support his application for an arrest warrant alleging that Owens committed the robbery at First Bank on October 27, 2007.

160.

Under the facts and circumstances alleged herein, an objectively reasonable law enforcement officer in Noble's position would have known that no arguable probable cause existed to support issuance of an arrest warrant for Owens.

161.

At all times relevant to this action, the law was established with obvious clarity that Noble's actions in swearing out an arrest warrant without probable cause, arresting a citizen pursuant to such a warrant and depriving a citizen of his liberty violated the Fourth Amendment of the United States Constitution.

162.

Based upon his experience, knowledge and training as a law enforcement officer, Abernathy knew that no probable cause existed to support his application for two arrest warrants alleging that Owens committed the robberies at Capitol City Bank on November 19th and Colonial Bank on November 2nd, 2007.

163.

Under the facts and circumstances alleged herein, an objectively reasonable law enforcement officer in Abernathy's position would have known that no arguable probable cause existed to support issuance of arrest warrants for Owens.

164.

At all times relevant to this action, the law was established with obvious clarity that Abernathy's actions in swearing out an arrest warrant without probable cause, arresting a citizen pursuant to such a warrant and depriving a citizen of his liberty violated the Fourth Amendment of the United States Constitution.

165.

Based upon his experience, knowledge and training as a law enforcement officer, Stokes knew that no probable cause existed to support his application for an arrest warrant alleging that Owens committed the armed robbery at the Marathon Gas Station on September 27, 2007.

166.

Under the facts and circumstances alleged herein, an objectively reasonable law enforcement officer in Stokes' position would have known that no arguable probable cause existed to support issuance of an arrest warrant for Owens.

167.

At all times relevant to this action, the law was established with obvious clarity that Stokes' actions in swearing out an arrest warrant without probable cause, arresting a citizen pursuant to such a warrant and depriving a citizen of his liberty violated the Fourth Amendment of the United States Constitution.

168.

As a direct and proximate cause of the Defendants unlawful actions, Owens was seized and detained against his will, and thereby suffered a loss of liberty in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, entitling him to actual and compensatory damages in an amount to be determined by the enlightened conscience of the jury.

169.

The actions of the Defendants described herein were willful, deliberate, and malicious, thereby entitling Owens to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT II

**FOURTH AMENDMENT – 42 U.S.C. § 1983**

**(Malicious Prosecution)**

170.

The foregoing paragraphs one (1) through one hundred and fifty-six (156) are incorporated herein by this reference.

171.

At all times relevant to this action, the individual defendants were acting under color of state law and within the scope of their discretionary functions as employees of their respective agencies.

172.

The Plaintiff's criminal prosecution began on November 21, 2007 pursuant to two valid warrants sworn out by Abernathy for the Bibb County robberies, as well

as a valid warrant sworn out by Defendant Stokes for the Twiggs County robbery, and all three warrants substantially relied on information provided through Defendant Nobles' constitutionally deficient investigation into the Henry County robbery.

173.

On December 12, 2007, Owens turned himself in to the Henry County Jail pursuant to a valid warrant sworn out by Defendant Noble for the Henry county robbery despite the great weight of evidence demonstrating Owens' actual innocence.

174.

Owens' criminal prosecution terminated in his favor as to the Bibb County warrants when the District Attorney dismissed the charges for lack of probable cause.

175.

Owens' criminal prosecution terminated in his favor as to the Twiggs County warrants when the warrant was recalled for lack of probable cause.

176.

Owens' criminal prosecution terminated in his favor as to the Henry County warrant when the warrant was dismissed for lack of probable cause.

177.

The Defendants knowingly and willfully instituted and maintained a criminal prosecution against Tuggle with malice and without probable cause.

178.

Under the facts and circumstances alleged herein, objectively reasonable law enforcement officers  would have known that instituting and maintaining a criminal prosecution of a citizen under the circumstances described herein violated the Fourth Amendment of the United States Constitution.

179.

At all times relevant to this action, the law was established with obvious clarity that instituting and maintaining a criminal prosecution of a citizen under the circumstances described herein violated the Fourth Amendment of the United States Constitution.

180.

As a direct and proximate result of the Defendants' unlawful actions, Owens was seized and detained against his will, subjected to criminal prosecution in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

181.

As a direct and proximate cause of the Defendants' unlawful actions, Owens has and will continue to incur economic damages including lost wages, loss of economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

182.

As a direct and proximate cause of the Defendants' unlawful actions, Owens has experienced pain, suffering, emotional distress, anxiety, humiliation, outrage and loss of reputation entitling him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

183.

The Defendants' unlawful actions were done willfully, deliberately, and maliciously, thereby entitling Owens to an award of punitive damages in an amount to be determined by the enlightened conscience of the jury.

## COUNT III

## FOURTH AMENDMENT – 42 U.S.C. § 1983

## (Monell Liability)

184.

The foregoing paragraphs one (1) through one hundred and fifty-six (156) are incorporated herein by this reference.

185.

McDonough delegates final policy making authority to officials in the McDonough Police Department to implement policies, customs and procedures designed to train investigators responsible for engaging in criminal investigations of serious felony offenses, including robberies, bank robberies, and armed robberies.

186.

Upon information and belief, officials in the McDonough Police Department with final policy making authority failed to provide adequate training to criminal investigators assigned to its Criminal Investigations Division on basic principles of criminal investigation including, but not limited to:  (a) the use of "tips" from convicted offenders in identifying potential suspects; (b) verifying the credibility of "tips" from convicted offenders; (c) verifying that a photograph in a photographic line up fairly depicts the current appearance of a potential suspect; (d) using objective evidence to increase or decrease the likelihood that a particular citizen should be considered as a potential suspect; (e) the use of photographic line ups to identify a potential suspect; (f) the significance of corroborating evidence, or lack thereof, in reaching a probable cause determination; (g) the need to conduct a thorough investigation that considers alternative theories other than the possible guilt of a potential suspect prior to seeking an arrest warrant; and (h) the proper development of probable cause to support issuance of an arrest warrant.

187.

McDonough's failure to adequately train its criminal investigators as alleged herein was the moving force behind the constitutional violations committed by Defendant Noble and specifically set forth in Count I and II of this Complaint.

188.

Upon information and belief, officials in the McDonough Police Department with final policy making authority have established one or more of the following customs, including: (a) allowing investigators to prematurely secure arrest warrants and make warrantless arrests of potential suspects without a thorough investigation; (b) over-reliance on "tips" from unreliable sources found within the criminal elements of society; (c) identifying potential suspects for inclusion in a photographic lineup based on hunches and unreliable "tips" from convicted criminals; (d) over-reliance on photographic lineups to develop suspects and probable cause; and (e) ignoring evidence tending to negate probable cause.

189.

McDonough's customs as  alleged herein were the moving force behind the constitutional violations committed by Defendant Noble and specifically set forth in Count I and II of this Complaint.

190.

After McDonough became aware of the constitutional violations committed by Defendant Noble, officials with final policy making authority ratified Defendant Noble's actions, therefore, McDonough is liable for the injuries caused to Owens by Defendant Noble's actions.

191.

As a direct and proximate result of McDonough's unlawful actions, Owens was seized and detained against his will, subjected to criminal prosecution in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

192.

As a direct and proximate cause of McDonough's unlawful actions, Owens has and will continue to incur economic damages including lost wages, loss of

economic opportunity, as well as other economic damages in an exact amount to be proven at trial.

193.

As a direct and proximate cause of the Defendants' unlawful actions, Owens has experienced pain, suffering, emotional distress, anxiety, humiliation, outrage and loss of reputation entitling him to an award of compensatory damages in an amount to be determined by the enlightened conscience of the jury.

**WHEREFORE**, the Plaintiff respectfully requests the following relief:

A)  That the Court declare that Defendants' actions, policies, and practices complained of herein violated the rights of the Plaintiff under the First, Fourth and Fourteenth Amendments of the Constitution of the United States of America;

B)  That Defendants, their agents, their employees and successors be permanently enjoined from violating the rights of the Plaintiff and others under the First, Fourth and Fourteenth Amendments to the Constitution of the United States of America;

C)  That special damages be awarded to compensate the Plaintiff for his economic

injuries as a consequence of the Defendants' violations of his rights  in an amount to be determined by the enlightened conscious of the jury;

D)      That compensatory damages be awarded against each of the Defendants individually to compensate the Plaintiff for his pain and suffering, mental and emotional distress, anxiety, humiliation, outrage, loss of professional and personal reputation, as a consequence of the Defendants' actions  in an amount to be determined by the enlightened conscious of the jury;

E)      That punitive damages be awarded against the individual Defendants *only* in an amount to be determined by the enlighten conscious of the jury to deter them and others from similar misconduct in the future;

F)      That a trial by jury be had on all issues wherein a jury trial is permitted under law;

G)       That attorney's fees and expenses of litigation be awarded as authorized under 42 U.S.C. §1988;

H)    That prejudgment interest be awarded; and,

I)     That the Court award such other equitable or monetary relief as the Court

        deems just and proper.


        This _____18th___ Day of __November__, 2009.


                                                    Respectfully submitted,


                                                    /s/William J. Atkins_____
                                                    **WILLIAM J. ATKINS**
                                                    State Bar No.  027060
                                                    Attorney For the Plaintiff

**ATKINS & ATTWOOD, LLC**
6400 Powers Ferry Road, Suite 112
Atlanta, Georgia  30339
Telephone: (404) 969-4130
Facsimile: (404) 969-4140
batkins@aa-llc.com