IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON  DIVISION

JOHN KIRK OWENS,                          :
                                          :
        Plaintiff,                        :
                                          :   CIVIL ACTION
v.                                        :   FILE  NO.: <u>5:09-cv-399</u>
                                          :
CITY OF McDONOUGH, GEORGIA,               :
KENNETH B. NOBLE,                         :
JOHN ABERNATHY,                           :
WILLIAM STOKES,                           :
                                          :
        Defendants.                       :

<u>PLAINTIFF'S CONSOLIDATED BRIEF IN OPPOSITION
TO DEFENDANTS' MOTIONS TO DISMISS</u>

**COMES NOW**, Plaintiff **John Kirk Owens** and files his <u>Brief in Opposition</u> to

Defendant John Abernathy's <u>Motion to Dismiss</u>**,** as follows:

### INTRODUCTION

Owens' <u>Complaint</u> sets forth 142 paragraphs of specific factual averments

supporting two civil rights claims against Abernathy:  False Arrest (Doc. #1, Count I,

¶157-169) and Malicious Prosecution (Doc. #1, Count II, ¶ 157-169).  As to each claim,

Owens' <u>Complaint</u> adequately alleges two theories of liability.  First, Owens contends

that Abernathy deficient investigation violated the Fourth Amendment.  Abernathy

ignored exculpatory evidence and failed to take objectively reasonable steps to

corroborate the scant evidence of probable cause he had prior to arresting Owens.

Second, Owens alleges that Abernathy violated the Fourth Amendment by making

materially false statements and recklessly omitting facts material to probable cause from

his warrant applications.

Abernathy seeks dismissal of Owens' <u>Complaint</u> based on the affirmative

defense of qualified immunity.  Abernathy does not contend that the law applicable to

Owens' claims was not clearly established; instead, he challenges whether Owens has

adequately stated a constitutional violation. (Doc. # 22, p. 6-8 (sufficiency of

investigation), p. 8-14 (probable cause for warrant application), and p. 15-18 (same

arguments – malicious prosecution claim)).  In other words, Abernathy seeks dismissal

solely on the first prong of the qualified immunity analysis.

The Court should deny Abernathy's motion.  Abernathy's <u>Answer</u> raises certain

disputed issues of material fact that prevent the Court from ruling on his motion at the

pleadings stage.  Even if the Court considers Abernathy's motion on the merits, Owens'

has adequately pled violations of his Fourth Amendment rights, therefore, Abernathy is

not entitled to qualified immunity.

John Kirk Owens filed this lawsuit on November 18, 2009. (Doc. # 1 ).[1]  The four

defendants have been properly served with summons. (Doc. # 3-6). Defendant William

Stokes filed his Answer on December 9, 2009. (Doc. # 10). Defendant John Abernathy

filed his Answer on December 10, 2009. (Doc. # 11). Defendants City of McDonough

and Kenneth Noble filed their Answer on December 18, 2009. (Doc. #12). The parties

conducted a Rule 16/26 conference on January 14, 2010 and submitted their Rule 16/26

Report on January 20, 2010. (Doc. # 27). Defendant Abernathy filed his <u>Motion to</u>

<u>Dismiss</u>  and <u>Motion to Stay Discovery</u> on January 14, 2010. (Doc. # 21-24). Owens now

timely files his Brief in Opposition to Defendant Abernathy's <u>Motion to Dismiss</u>.

## STATEMENT OF FACTS[2]

I.     THE ROBBERIES

The suspect started his robbing spree at a Marathon gas station in Twiggs

County on September 27, 2007. (Doc. # 1, ¶ 26-30). He robbed the First Bank in

McDonough on October 27th and hit Colonial Bank in Bibb County on November 2nd.

(Doc. # 1, ¶ 32-38; 42-44). He robbed the Capitol City Bank in Bibb County on

November 19, 2007. (Doc. # 1, ¶ 51-52). He committed his robberies in broad daylight,

---

[1] Citations to the factual allegations set forth in the Doc. # 1 ,  will appear as  "Doc. # 1 , ¶ "#".  Citations to factual allegations admitted by a Defendant in their Answer will appear as "Abernathy Ans., ¶ "#".

[2] Owens limits his presentation of the facts here, expecting that the Court will properly consider all non-conclusory facts in his Complaint, accepting them as true for purposes of this Motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).

usually around lunch time. He was calm. Except for the first robbery, he never brandished a weapon. (Doc. # 1, ¶ 26-52).

He was a white man of average height, maybe 5'7" to 5'11". (Doc. # 1, ¶ 32-37; 43; 51). He appeared to be middle-aged. (Doc. # 1, ¶ 43). He had a mustache, sometimes a stubbly beard. (Doc. # 1, ¶ 32-37; 43; 51). He had a jowly face and thick neck. (Doc. # 1, ¶ 32-37; 43; 51). He was fat like some football lineman – an enormous belly bursting out well beyond his beltline. (Exhibit A, 000017-18). He wore a broad brimmed camouflage hat to hide his hair and dark sunglasses to cover his eyes. He wore long, flowing shirts, jeans and white tennis shoes. (Exhibit A, 000017-18). There is no telling how many middle aged white men living between Macon and Atlanta loosely fit the general description of the robber.

The grainy surveillance pictures were also of little help. The pictures were all taken from above, thus capturing images of the floppy hat and the lower half of the robber's face. The pictures showed that the robber had a fat, round face and a mustache, but no readily identifiable features at all. (Exhibit A, 000017-18). The robber left very little evidence behind. No fingerprints were collected and there was no other physical evidence. The robber had all the markings of a pro.

Each robbery did have one consistent feature: the "get away" truck was a late model Chevrolet Silverado pick-up truck, beige or gold in color, tinted windows and a no tag. (Doc. # 1, ¶ 29, 38, 52; Exhibit A, 000017-18). The "get away" truck was the best lead available to law enforcement.

II.    THE INVESTIGATION

A.    *The Investigators*

Defendant William Stokes, a criminal investigator with the Twiggs County Sheriff's Office ("TCSO") was assigned to investigate the September 27th robbery at the Marathon gas station.  (Doc. # 1, ¶ 30).  Between September 27th and November 21st, Stokes made no progress in his investigation.  (Doc. # 1, ¶ 104).  Stokes never independently identified Owens as a suspect and no witness to Twiggs county robbery ever picked Owens from a line up.

Defendant Kenneth Noble, a detective in the McDonough Police Department ("MPD"), was assigned to investigate the October 27th robbery at the First Bank in Henry County.  (Doc. # 1, ¶ 40).  Between October 27th and November 16th, Noble made no progress in his investigation.  No witness to the First Bank robbery ever identified Owens as a suspect and Noble never collected a shred of physical evidence tying Owens to the robbery.  (Doc. # 1, ¶ 41).

Defendant John Abernathy, an investigator in the Bibb County Sheriff's Office ("BCSO") was ultimately responsible for investigating the November 2nd robbery at the Colonial Bank and the November 19th robbery at the Capitol bank.  Abernathy had no leads and no suspects prior to November 20th, when Noble first contacted him about Owens.

B.     *The Jail Trustee*

On November 16th, a jail trustee assigned to clean up duty saw the surveillance picture of the robber hanging on the wall in the detectives' room at MPD.  The jail trustee mentioned to Noble that the robber looked like Owens.  (Doc. # 1, ¶ 46).  He said Owens was going through a bad divorce and was talking about bankruptcy. (Doc. # 1, ¶ 48).  Despite having no prior experience with the jail trustee, Noble anointed him as a "reliable source" and decided that Owens would be his prime suspect.  (Doc. # 1, ¶ 47, 57).

Noble pulled Owens' driver's license  information.  He learned that his license was valid and he lived in McDonough.  (Doc. # 1, ¶ 58).  Noble did not investigate whether Owens owned his home or whether he was in danger of losing his home to foreclosure (facts that might corroborate the jail trustee's claims of Owens' financial struggles.  Noble also did not check the Superior Court records to see if Owens was going through a divorce.   Noble pulled a DMV report showing that Owens owned two older model Ford pick-up trucks, but no late-model Chevrolet Silverado matching the description of the "get away" truck.  (Doc. # 1, ¶ 67).  Noble pulled Owens' criminal history showing that Owens' had two alcohol related misdemeanors from the late 1980s.  (Doc. # 1, ¶ 69).  None of the information corroborated the jail trustee's identification of Owens.

Noble ordered a copy of Owens' driver's license picture.  He knew that the picture was at least three years old and, with a little effort could have learned that the picture was actually seven years old.  Noble made no effort to ensure that the picture accurately depicted Owens' appearance in the Fall of 2007.  (Doc. # 1, ¶ 64).  Noble put Owens' seven year old picture in a six person photographic line up based solely on the statement of the jail trustee.  He showed the line up to the four witnesses at First Bank, but none of the witnesses identified Owens or anyone else. (Doc. # 1, ¶ 73-77).  Noble had no reliable evidence that Owens committed the First Bank robbery.

B.      *Noble Gives Owens To Abernathy As The Suspect*

While Noble was busy trying to pin the robberies on an innocent man, the actual suspect robbed the two Bibb County banks.  Noble learned of the robberies and called Abernathy.  He told Abernathy he had a similar robbery and identified Owens as a "potential suspect." (Doc. # 1, ¶ 81, 82).

> The case had grown cold until I received a phone call from a Detective
> Noble from McDonough Police Department.  He said that he had heard
> about this robbery and it sounded like the same guy that robbed a bank
> up there.  They had gotten some photos from their robbery and the
> suspect had been identified as a John Kirk Owens.  He said that a trustee
> in their jail had seen the pictures from their bank robbery and identified
> Owens.  He gave me Owens' physical description and it matched closely
> to our suspects.  He was able to email me pictures of Owens.  He said that
> Owens had a couple of DUI's on his record but no felonies. He had Owens
> in a photo lineup to show his victims but no one could identify him.

(Ex. A, 00015, compare, Doc. # 11, ¶ 82).

Abernathy knew that Noble identified Owens as a "suspect" based solely on the jail trustee's statement. Abernathy knew that Owens had not been identified by any of the First Bank witnesses. (Doc. # 1, ¶ 84-85). Abernathy knew that Owens' criminal history was unremarkable. (Doc. # 11, ¶ 84). Abernathy knew, or with reasonable effort, should have known that Owens did not own a vehicle matching the "get away" truck. (Doc. # 1, ¶ 84). Abernathy engaged in no independent investigation to solidify Owens status as a suspect prior to placing him in a photographic line up for the witnesses at Colonial Bank and Capitol City Bank. (Doc. # 1, ¶ 86).

Abernathy used Noble's outdated picture of Owens for his six person photographic line-up. (Doc. # 1, ¶ 87). Like Noble, he made no effort to determine whether the picture fairly depicted Owens' appearance in the Fall of 2007. Abernathy showed the line up to all the witnesses at Colonial and Capitol City banks. (Doc. # 1, ¶ 88-89; 91-92). One witness, Amy Gorham, picked Owens out of the line up. Gorham had previously described the robber as "**an older man wearing a camp brim hat, black sunglasses, a long sleeve denim button down shirt with a white T-shirt underneath, and denim jeans.**" She could not describe any specific identifying features of the robber. (Doc. #1, ¶ 89, 90, 43).[3]

---

[3] Abernathy now claims that Nadia Jones identified Owens. (Doc. # 11, ¶ 92, 94). *But see* Ex. A, 000014-15).

On November 21ˢᵗ, Abernathy swore out two arrest warrants for Owens charging him with Robbery by Intimidation at Colonial bank and Capitol City bank. It is undisputed that the only evidence supporting Abernathy's warrant application consisted of Amy Gorham's identification. (Doc. # 1, ¶ 93, 95). The Capitol City bank application contained an outright falsehood: no eyewitness identified Owens. In both warrant applications, Abernathy recklessly disregarded the truth by misrepresenting and omitting facts material to a probable cause determination. (Doc. # 1, ¶ 94, 96). A reasonably prudent officer in Abernathy's position would have taken additional steps to corroborate Gorham's identification prior to swearing out arrest warrants for Owens.

Instead, Abernathy drove to Henry County, met with Noble and drove to Owens' home. When Abernathy saw Owens for the first time, he ignored the obvious fact that Owens did not resemble the robber, nor did he resemble his outdated driver's license photograph. Abernathy did not pause and reflect; he just arrested Owens. These were not the actions of an objectively reasonable, well-trained law enforcement officer. (Doc. # 1, ¶ 130, 131). To make things worse, Abernathy arrested Owens before Noble completed his search of Owens' home. Any objectively reasonable, well-trained officer would wait to see if the search uncovered evidence tying Owens to the robberies. When he learned that Noble found nothing at all during the search, Abernathy did not pause and reconsider, he took Owens straight to jail.

Abernathy confronted no exigent circumstances when he chose to arrest Owens. He had ample time to ensure that he was arresting the right man. Had Abernathy hesitated for just a day, he would have learned that Owens had lived in McDonough his entire life. (Doc. # 1, ¶ 14-25). He would have learned that Owens had strong ties to the community. (Doc. # 1, ¶ 14-25). He would have learned that Owens owned the McDonough Fence Company and had been in business for more than twenty years. (Doc. # 1, ¶ 16).

Most critically, Abernathy would have learned that Owens had solid alibis for each of the four robberies. On September 27th while the suspect was robbing the Marathon store in Twiggs County, Owens was making a deposit at the McIntosh State Bank in McDonough. (Doc. # 1, ¶ 31). On October 27th while the suspect was robbing the First Bank Owens was installing gates at the residence of Charles Toll in McDonough. (Doc. # 1, ¶ 39). On November 2nd, while the suspect was robbing the Colonial Bank, Owens was an hour away repairing a fence for Southern Pipe and Supply in McDonough. (Doc. # 1, ¶ 45). On November 19th while the suspect was robbing the Capitol City bank, Owens was giving an estimate to Shannon Reyome in McDonough. (Doc. # 1, ¶ 53). Given that the same robber committed all four robberies, just one of these alibis would be enough to eliminate Owens as a suspect in all four robberies.

## I.  STANDARD OF REVIEW

Abernathy has filed a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6) and seeks dismissal on qualified immunity grounds.  In light of the Supreme Court's decisions *Bell South v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) and *Ashcroft v. Iqbal et al*, -- U.S. -- , 129 S. Ct. 1937 , 1949 (2009),  a complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft v. Iqbal et al*, -- U.S. -- , 129 S. Ct. 1937 , 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[4] *Id.*  The Court "may dismiss a Complaint, only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Swierkiewicz, supra* at 513.

*Ashcroft* involved dismissal of a complaint on qualified immunity grounds and made no mention of a heightened pleading standard in qualified immunity cases.  Instead, the Court held that "Rule [8] in turn governs the pleading standard "in all civil actions and proceedings in the United States district courts.  Our decision in *Twombly* expounded the pleading standard for all civil actions and it applied to antitrust and discrimination suits alike."  *Ashcroft*, 129 S. Ct. at 1951.  *Ashcroft*  overrules the Eleventh Circuit's heightened pleading standard in qualified immunity cases.

_____

II. THE COURT SHOULD CONSTRUE ABERNATHY'S MOTION AS A RULE 56 MOTION, PROVISIONALLY DENY THE MOTION, AND PERMIT DISCOVERY.

Abernathy filed his <u>Answer</u> (Doc. #11) prior to filing his <u>Motion to Dismiss</u>. (Doc. # 21, 22). A Rule 12(b) motion "must be made before pleading if a responsive pleading is allowed." Under Rule 12(c), a party may move for judgment on the pleadings "after the pleadings are closed – but early enough not to delay trial." Abernathy's motion might well be considered under Rule 12(c), but for the contents of Abernathy's <u>Answer</u>.

In his <u>Answer</u>, Abernathy alternately (a) admits the allegation, but supplements his admission with additional facts; (b) denies the allegation and supplements with facts that directly conflict with the allegations in Owens' <u>Complaint</u>; or (c) states that he is "without sufficient information upon which to form a belief as to the veracity of the allegation and thus can neither admit nor deny the same." (See e.g., Doc. #1, ¶ 42, 44, 51, 59, 60-63, 68, 81-82, 92-94; Doc. # 11, ¶ 42, 44, 51, 59, 60-63, 68, 81-82, 92-94). In this situation, the Court has no choice but to convert Abernathy's motion into a summary judgment motion and, normally, "all parties shall be given reasonably opportunity to present all material made pertinent to such a motion by Rule 56." *Horsley v. Feldt et al*, 304 F.3d 1125, 1134 (11th Cir. 2002). However, as Abernathy must admit to the existence of disputed issues of material fact (after all, he created them), the Court should instead

provisionally deny Abernathy's motion, permit discovery and reconsider Abernathy's motion following the close of the discovery period.

In the event that the Court elects to instead consider Abernathy motion under Rule 12(c), Owens respectfully requests that the Court consider the documents attached hereto as exhibits to Owens' Brief pursuant to the "incorporation by reference doctrine." *Horsley v. Feldt et al*, 304 F.3d 1125, 1134 (11th Cir. 2002). The Court may consider documents outside the pleadings "without converting the motion into one for summary judgment if the document is: (1) central to the plaintiff's claim; and (2) undisputed. Undisputed in this context means that the authenticity of the document is not challenged." *Id.* Owens has attached documents produced by the Bibb County Sheriff's Office in response to an Open Records Act request. These documents are central to Owens' claims and there is no dispute as to authenticity.

III.    ABERNATHY IS NOT ENTITLED TO QUALIFIED IMMUNITY

Just last year, the Supreme Court reiterated that qualified immunity is meant to strike a *balance* between important competing interests.

> Qualified immunity balances two important interests, the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably.

<u>*Pearson v. Callahan*</u>, 555 U.S. ---, 129 S.Ct. 808, 815 (2009). Courts must keep this overarching purpose in mind as they consider a qualified immunity defense.

A public official asserting qualified immunity must initially prove that "he was acting within his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).[5] The burden then shifts to the plaintiff, who must prevail on both prongs of the Supreme Court's sequential test. *See Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001); *but see*, *Pearson*, *supra* (overruling *Saucier's* "rigid order of battle"). Abernathy seeks dismissal only as to the first question – whether Owens has adequately pled a constitutional violation. As Owens' Complaint adequately alleges his constitutional claims against Abernathy, the Court should deny the motion.

A. **OWENS' COMPLAINT SUFFICIENTLY ALLEGES VIOLATIONS OF THE FOURTH AMENDMENT BY ABERNATHY**

Abernathy arrested Owens pursuant to two facially valid warrants, thus the Court must apply well-established law of arrests pursuant to a valid warrant.[6] *Malley v. Briggs*, 475 U.S. 335, 344, 106 S. Ct. 1092 (1986); *Garmon v. Lumpkin County, Ga.*, 878 F.2d 1406, 1409-1410 (11th Cir. 1989). The Warrant Clause of the Fourth Amendment requires that all warrant applications contain sufficient information to establish probable cause. *Holmes v. Kucynda et al*, 321 F.3d 1069, 1083 (11th Cir. 2003). In *Gerstein*

---

[5] Owens alleges that Abernathy was acting within the scope of his discretionary authority and Abernathy admits the same. (Doc. # 1 , ¶ 11; Doc. # 11, ¶ 11);
[6] Owens asserts two claims under the Fourth Amendment – false arrest and malicious prosecution. The law and the facts applicable to these claims are nearly indistinguishable, so Owens addresses these claims together.

*v. Pugh*, 420 U.S. 103, 112, 95 S.Ct. 854 (1975), the Supreme Court defined the probable

cause standard in these terms,

> The standard for arrest is probable cause, defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect]had committed or was committing an offense. This standard, like those for searches and seizures, represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime.
>
> Long prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also give fair leeway for enforcing the law for the community's protection. Because the situations which confront officers in the course of their duties are more or less ambiguous, room must be allowed fro some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. The rule of probable cause is a practical, non technical conception affording the best compromise that has been found for accommodating these opposing interests. Requiring more would unduly hamper law enforcement. To allow less would bet o leave law abiding citizens at the mercy of the officers' whim or caprice.

(internal citations omitted); *accord*, *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534

(1991).

In qualified immunity cases, "what counts . . .relating to probable cause to arrest

is the information known to the defendant officers or officials at the time of their

conduct, not facts known tot the plaintiff then or those known to a court later." *Jones v.*

*Cannon*, 174 F.3d 1271, 1283, n. 4 (1999). However, in assessing "the facts and

circumstances within the officers' knowledge," the Court,

must charge [the officer] with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances . . . **A police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest**.

*Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir. 2004)(emphasis added).[7]  It is not enough that an officer have a subjective belief that the "facts alleged in his affidavit are true;" the Court must conduct an objective inquiry as to "**whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should have not applied for the warrant.**" *Malley v. Briggs*, 475 U.S. at 345.

i.    <u>Abernathy's Investigation Violated The Fourth Amendment</u>

A police officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest;" however, an officer cannot "**chose to ignore information that has been offered to him . . . nor may the officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts**." *Kingsland v. City of Miami*, 382 F.3d 1220, 1228-1229 (11th Cir. 2004)(emphasis added).[8]  Abernathy blindly accepted an unreliable informant's identification of Owens as a potential suspect from a grainy surveillance photograph, he  ignored information

---

[7] *See also, Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1998); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986).

[8] <u>See also</u>, *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)("a police officer may not close his eyes to facts that would help clarify the circumstances of an arrest.").

establishing Owens' innocence, failed to obtain basic, readily available evidence that would have eliminated Owens as a suspect and, in the absence of any exigency, failed to take deliberate steps to corroborate his only piece of evidence – Amy Gorham's identification.

The Jail Trustee

The record is clear that Noble and Abernathy took no steps to determine whether the jail trustee who identified Owens as a possible suspect was reliable. More than ten years ago, the Eleventh Circuit held that law enforcement's improper reliance on an unreliable informant as a basis for an arrest violated the Fourth Amendment. *Ortega v. Christian*, 85 F.3d 1521 (11th Cir. 1996).

Following a robbery in Miami, a confidential informant told a detective that an organized group of which he was a member committed the robbery and identified Ortega as one of the suspects. *Ortega*, 85 F.3d at 1523. Ortega proclaimed his innocence, bit the officer ignored him. *Id.* at 1524. The Eleventh Circuit held that the informant's tip did not establish probable cause. The court considered the informant's "veracity, reliability, basis of knowledge and corroboration of the details of the informant's tip through independent police work." *Id.* at 1525. The court noted that the officer did not "take any independent steps to investigate the informant's tip or had any evidence prior to arresting Ortega" to corroborate the informants statement. *Id.*

Noble and Abernathy had no past history with the jail trustee Noble and Abernathy made no effort to determine whether the informant actually knew Owens. No effort was made to corroborate the details of the informant's story about Owens' divorce and financial troubles. The information that Noble and Abernathy did gather – Owens' driving history, his criminal history and his motor vehicle report – offered no corroboration at all of the informant's tale.

Abernathy responds that a single eye witness identification was all the corroboration he needed to establish probable cause and rob Owens of his liberty. Abernathy misses the point. Some objectively reasonable basis must exist for putting a potential suspect in a photographic line up. That basis must consist of more than a hunch, or uninformed suspicion and cannot rely solely on the uncorroborated statement of an unreliable informant. *See e.g. Alabama v. White*, 496 U.S. 325, 110 S. Ct. 2412 (1990)(anonymous tip **corroborated** by independent police work creates sufficient indicia of reliability to support *reasonable suspicion* for an investigatory stop, but not probable cause). Abernathy had an informant's identification of Owens with **no corroboration** through independent police work. Abernathy had no objectively reasonable basis for putting Owens in a photographic line up in the first place. *See e.g., United States v. Campbell*, 920 F.2d 793, 797 (11ᵗʰ Cir. 1991)(unlike *White* where the police corroborated the informant's tip, there was no corroboration and thus no probable cause to detain a suspect).

Putting Owens in a photographic line up without any objectively reasonable

basis  exposed him to the "vagaries of eyewitness identification."

> The vagaries of eyewitness identification are well-kown; the annals of
> criminal law are rife with instances of mistaken identification.  Mr. Justice
> Frankfurter once said:  "What is the worth of identification testimony even
> when uncontradicted?  The identification of strangers is proverbially
> untrustworthy.  The hazards of such testimony are established by a
> formidable number of instances in the records of English and American
> trials.  These instances are recent – not due to the brutalities of ancient
> criminal procedure..

*United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926 (1967).  Placing a suspect in a photo

line up on a whim, rather than through concrete evidence marking him as a legitimate

suspect, greatly increases the risk of misidentification and wrongful arrest.

<u>The Rest of The Investigation</u>

Abernathy engaged in no investigation.  By his own admission, the case "had

grown cold" before Noble called him on November 19th.  Abernathy adopted Noble's

plainly deficient investigation without the least concern that Owens might actually be

innocent.  He ignored all the exculpatory evidence Noble grudgingly revealed to him.

He ignored the fact that only one person, Gorham, picked Owens out of a photographic

line up shown to ten witnesses at three different robberies.   When he arrested Owens,

he ignored the fact that Owens actual physical appearance was starkly different than

the outdated driver's license picture and, more significantly, the actual robber.

Abernathy even ignored the fact that Noble failed to find any physical evidence during

this search of Owens' home.

In *Kingsland, supra*, the Eleventh Circuit reversed a grant of summary judgment to the arresting officers in part because they conducted a constitutionally deficient investigation. Adopting the Fourth Circuit's approach in *Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988), the Eleventh Circuit held that officer's must be charged "with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances."

The Sixth Circuit's decision in *Radvansky v. City of Olmsted Falls et al*, 395 F.3d 291 (6th Cir. 2005) adopted the reasoning announced by the Fourth, Seventh and Eleventh circuits. *Radvansky* involved a landlord/tenant dispute resulting in the arrest of the tenant. *Radvansky*, 395 F.3d at 297-300. The Court found that the officers relied exclusively on the statements of the landlord to support probable cause, despite the plaintiff's "express rejection" of the essence of the landlord's claims. *Id.* at 304.

> A police officer has probable cause only when he discovery reasonably reliable information that the suspect has committed a crime. Furthermore, in obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest. [. . . ] Police officers may not make hasty, unsubstantiated arrests with impunity, nor simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone.

*Id.*

The Seventh Circuit recently applied these principles in *Sornberger et al v. City of Knoxville, IL*, 434 F.3d 1006, (7th Cir. 2006). Following a bank robbery, the defendants

arrested the plaintiffs for armed robbery. While the plaintiffs were in jail awaiting trial, the true culprit committed several similar robberies and, after comparing his image to surveillance footage from the underlying robbery, the charges against the plaintiffs were dropped. *Sornberger*, 434 F.3d at 1011-1012. The Seventh Circuit reversed the district court's grant of summary judgment, finding that, from various inconsistencies in the available evidence, a reasonable jury could conclude that no probable cause existed at the time the warrant was issued. The Court explained that,

> Reasonable avenues of investigation must be pursued especially when, as here, it is unclear who committed the crime. In the present case, the officers had obtained a warrant for the search of the [plaintiffs'] parents' computer, which would have allowed the investigators to confirm the [plaintiffs'] alibi. Rather than waiting to obtain this critical information, the offices arrested Scot while the search of his parents' home was taking place. On this record, given that the lynchpin of a probable cause determination was on the verge of being obtained, the officer's arrest of Scott before reviewing the results of the computer search appears to have been unreasonably premature.

*Id.* at 1016; *see also*, *BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986)("the amount of information that prudent police will collect before deciding to make a search or an arrest, and hence the amount of probable cause they will have, is a function of the gravity of the crime, and especially the danger of its imminent repetition").

      ii.    <u>Abernathy's Arrest Warrants Violated The Fourth Amendment</u>

Applying *Malley*, *supra*, the Eleventh Circuit has held that materially false statements and omissions in a warrant application violate the Fourth Amendment. *Holmes v. Kucynda et al*, 321, F.3d 1069 (11th Cir. 2003). "[W]hen the Fourth Amendment

demands a factual showing sufficient to comprise `probable cause,' the obvious

assumption is that there will be a *truthful* showing." *Holmes*, 321 F.3d at 1083, <u>citing</u>

*Franks v. Delaware*, 438 U.S. 154, 164, 98 S.Ct. 2674 (1978).

With regard to the warrant for Capitol City bank, Abernathy's application

contains a deliberate falsehood, "Accused was identified by photo lineup."  At the

pleadings stage, it is undisputed that no witness from Capitol City bank identified

Owens.  Even if the Court considers Abernathy's factual assertion that Nada James

identified Owens, that assertion merely creates a disputed issue of material fact as to

whether Abernathy's warrant application contains a deliberate falsehood.

With regard to both warrants, Abernathy's application violates the Fourth

Amendment because it omits plainly exculpatory evidence that far outweighed the

single piece of evidence supporting probable cause – Ms. Gorham's identification.

> "[A] warrant affidavit violates the Fourth Amendment when it contains
> omissions made intentionally or with a reckless disregard for the accuracy
> of the affidavit.  A party need not show by direct evidence that the affiant
> makes an omission recklessly.  Rather, it is possible that when the facts
> omitted from the affidavit are clearly critical to a finding of probable cause
> the fact of recklessness can be inferred from proof of the omission itself.

*Madiwale v. Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997)(internal citations omitted).

Owens has adequately alleged that Abernathy omitted facts critical to a probable cause

determination from his application including:  (a) no identification from all other

witnesses;  (b) no corroboration of the informant; (c) no truck matching the description

of the "get away" vehicle; (d) no criminal history; and (e) no independent,

corroborating evidence tying Owens to either robbery in Bibb County.  At the pleadings

stage, the Court should infer recklessness from Abernathy's undisputed omission of

these facts from his warrant application.

Where the "inclusion of omitted facts would have prevented a finding of

probable cause," the warrant violates the Fourth Amendment.  *Madiwale*, 117 F.3d at

1327.  Further, where "the facts omitted . . . were . . . so clearly material that every

reasonable law officer would have known that their omission would lead to a search in

violation of federal law," the Eleventh Circuit has denied qualified immunity.  *Id.*  At

the pleadings stage, Owens has adequately pled facts that, if proven at trial, will

establish that Abernathy violated the constitution in both ways.

> **B.  PRE-EXISTING LAW GAVE ABERNATHY FAIR WARNING THAT HIS CONDUCT VIOLATED THE FOURTH AMENDMENT.**

Since the Supreme Court's decision  in <u>Hope v. Pelzer</u>, 536 U.S. 730, 741, 122 S.Ct.

2508 (2002), the Court has adopted a more flexible approach to its consideration of the

second prong of the qualified immunity test.  <u>Holloman ex rel Holloman v. Harland</u>, 370

F.3d 1252, 1277 (11th Cir. 2004), <u>*citing*</u> <u>Hope</u>, at 739.   While officials must have ***fair***

***warning*** that their acts are unconstitutional, there need  not be a case on all fours, with

materially identical facts, before we will allow suits against them.  A principle of

constitutional law can be clearly established even if there are notable factual distinctions

between the precedents relied on and the cases then before the Court, so long as the

prior decisions gave reasonable warning that the conduct at issue violated

constitutional rights. *Id*. at 1277.) (emphasis added). <u>*Hope*</u> thus stands for the simple proposition that, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>*Hope, p. 741*</u>; <u>*Vinyard v. Wilson*</u>, 311 F.3d 1340, 1349-1355 (11th Cir. 2002).

Pre-existing law established with obvious clarity that Abernathy's actions violated the Fourth Amendment. <u>*See e.g*</u>, *Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092 (1986); *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534 (1991); *Garmon v. Lumpkin County, Ga.*, 878 F.2d 1406 (11th Cir. 1989); *Ortega v. Christian*, 85 F.3d 1521 (11th Cir. 1996); *Madiwale v. Savaiko*, 117 F.3d 1321 (11th Cir. 1997); *Jones v. Cannon*, 174 F.3d 1271 (1999); *Holmes v. Kucynda et al*, 321, F.3d 1069 (11th Cir. 2003); *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004). Abernathy is not entitled to qualified immunity.

## CONCLUSION

For the within and foregoing reasons, Plaintiffs' respectfully request that the Court deny the Defendants' motions to dismiss.

Respectfully submitted,

/s/ William J. Atkins
William J. Atkins
Georgia Bar No. 027060

**ATKINS & ATTWOOD, LLC**
6400 Powers Ferry Road, Suite 112
Atlanta, Georgia 30339
www.aa-llc.com
Tel: 404.969.4130
Fax: 404.969.4140

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the within and foregoing **[NAME OF PLEADING]** upon counsel for all parties by filing this document with the Court's CM/ECF process as follows:

Andrew J. Whalen, III
THE WHALEN LAW FIRM LLP
101 South Hill Street
Griffin, Georgia  30224
Ajwhalen3@whalenlaw.net

Caroline W. Herrington
Virgil L. Adams
Adams, Jordan & Treadwell, P.C.
577 Mulberry Street, Suite 1250
Macon, GA  31202-0928
cherrington@ajtlaw.com
vadams@ajtlaw.com

Terry E. Williams
Jason Waymire
Williams, Morris & Waymire, LLC
4330 South Lee Street, Bld. 400, STE A
Buford, Georgia  30518
terry@wmwlaw.com
jason@wmwlaw.com

This  8th day of February, 2010.

/s/William J. Atkins
William J. Atkins
State Bar No. 027060

ATKINS & ATTWOOD, LLC
6400 Powers Ferry Rd., Suite 112
Atlanta, GA 30339
Tel:  (404) 969-4130
Fax:  (404)969-4140
E-Mail:  batkins@aa-llc.com

*Counsel for Plaintiff John Owens*