**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

JOHN KIRK OWENS,      :
            :
   Plaintiff,     :
            :
v.           :     CASE NO.: 5:09-CV-399 (WLS)
            :
CITY OF MCDONOUGH, GEORGIA, :
KENNETH B. NOBLE,    :
JOHN ABERNATHY,     :
WILLIAM STOKES,     :
            :
   Defendants.   :
_____:

## ORDER

  Presently pending before the Court is Defendant's Motion to Dismiss (Doc. 21 pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons discussed more fully below, Defendant's Motion to Dismiss (Doc. 21) is **GRANTED**.

## BACKGROUND

  Plaintiff John Kirk Owens alleges unlawful arrest and detention and malicious prosecution by Defendants City of McDonough, Georgia, Kenneth B. Noble, John Abernathy and William Stokes under the 4th Amendment, 42 U.S.C. § 1983 and the 14th Amendment. Plaintiff also seeks Equitable Relief and an award of Attorneys' Fees and costs pursuant to 42 U.S.C. § 1988 arising from these alleged injuries. Presently pending before the Court is Defendant Abernathy's Motion to Dismiss (Doc. 21).

## DISCUSSION

### I.    Standard of Review

#### a.   Rule 12(b)(6) Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to assert by motion the defense of failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A Motion to Dismiss a Plaintiff's Complaint under Rule 12(b)(6) should not be granted unless the Plaintiff fails to plead enough facts to state a claim to relief that is plausible, and not merely just conceivable, on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "Dismissal for failure to state a claim is proper if the factual allegations are not 'enough to raise a right to relief above the speculative level.'"  Edwards v. Prime, Inc, 602 F.3d 1276, 1291 (11th Cir. 2010) (quoting Rivell v. Private Health Care Sys, Inc, 520 F.3d 1308, 1309 (11th Cir. 2008)).  "Stated differently, the factual allegations in the Complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief.'"  Edwards, 602 F.3d at 1291 (quoting Fin. Sec. Assurance, Inc. v. Stephens, Inc, 500 F.3d 1276, 1282 (11th Cir. 2007)).

While the Court must conduct its analysis "accepting the allegations in the Complaint as true and construing them in the light most favorable to the Plaintiff," Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003), in evaluating the sufficiency of a Plaintiff's pleadings the Court must "make reasonable inferences in [p]laintiff's favor, 'but we are not required to draw Plaintiff's inference.'"  Sinaltrainal v. Coca-Cola Co, 578 F.3d 1252, 1260 (11th Cir. 2009) (quoting Aldana v. Del Monte Fresh Produce, N.A, Inc, 416 F.3d 1242, 1248 (11th Cir. 2005)). The Supreme Court instructs that while on a Motion to Dismiss "a court must accept as true all of the allegations contained in a Complaint," this principle "is inapplicable to legal conclusions," which "must be supported by factual allegations."  Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct.

1937, 1949-54 (2009) (citing <u>Twombly</u>, 550 U.S. at 555, for the proposition that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" in a Complaint). The "threshold of sufficiency that a Complaint must meet to survive a Motion to Dismiss for failure to state a claim is … exceedingly low[, but not nonexistent]." <u>Ancata v. Prison Health Servs. Inc.</u> 769 F.2d 700, 703 (11th Cir. 1985) (quotation and citation omitted).

Federal Rule of Civil Procedure 12 governs civil motions to dismiss. Rule 12(b) states seven grounds on which a Motion to Dismiss may rest. Fed. R. Civ. P. 12(b). Rule 12(h)(2)(B) provides that a claim of failure to state a claim upon which relief can be granted may also be raised "by a motion under Rule 12(c)." Fed. R. Civ. P. 12(h)(2)(B). Plaintiff has requested that the Court construe the instant Motion to Dismiss under Rule 12(c) as it pertains to motions for judgment on the pleadings. Fed. R. Civ. P. 12(c). The Court will liberally construe the Defendant's Motion to Dismiss under Rule 12(b)(6), but declines to consider the Motion to Dismiss as a Motion for Judgment on the Pleadings under Rule 12(c). "Judgment on the pleadings is appropriate where no issue of material fact remains unresolved and the moving party is entitled to judgment as a matter of law." <u>Medkser v. Feingold</u>, 307 Fed. App'x 262, 264 (11th Cir. 2008). The Court need not look beyond the pleadings in the instant case, and considers the instant Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

## II.    <u>Statement of Facts</u>

John Kirk Owens is a lifetime resident of McDonough in Henry County. (Doc. 1, ¶ 14). Defendant McDonough, Georgia is a municipality that operates the McDonough Police Department ("MPD"). Defendant Noble is a criminal investigator employed by the MPD (Doc 1, ¶ 7). Abernathy is employed as a law enforcement officer with the Bibb County Sherriff's

Office (Doc 1, ¶ 11). Stokes is a law enforcement officer with the Twiggs County Sherriff's Department (Doc 1, ¶ 13).

For more than twenty years, Owens has owned and operated McDonough Fence Company. (Doc 1, ¶ 16). In the fall of 2007, Owens was forty-one years old. Owens is 5'11 and, in the fall of 2007, weighed approximately 220 pounds. Owens has dirty-blonde hair and, at the time, his hair was not graying. He has hazel colored eyes. His face was round, but not chubby. ( Doc 1, ¶ 18). He lives in a house located on Old Jackson Road in Locust Grove. He has been living in the same house for almost ten years (Doc 1, ¶19). Before owning his present home, Owens lived in a home located on his family's farm in Henry County. (Doc 1, ¶20). Owens keeps his business and personal checking accounts at the Macintosh State Bank in Henry County, Georgia. He has been banking there for more than fifteen years. (Doc 1, ¶21)

In the fall of 2007, Owens owned two pick-up trucks: a 1986 Ford pick up truck, white in color; and a 2000 Ford pick up truck, white in color. Both trucks had valid license plates. (Doc 1, ¶22). Owens has never owned a Chevrolet pick up truck. (Doc 1, ¶24). At 12:50 p.m. on September 27, 2007, a heavy set white man walked into a Marathon Gas Station on Highway 96 in Twiggs County, Georgia. He walked up to the counter, pulled a small shiny pistol from his back pocket, pointed it at the startled store clerk, and told her to give him the money out of the cash register. The man took the money, left the store, and drove away in a silver pick up truck. (Doc 1, ¶25-26).

A surveillance camera captured several still photographs of the man who robbed the Marathon Gas Station. The man wore a floppy hat that obscured his face from view, a long light colored shirt, dark pants, and white tennis shoes. The man had a small mustache and appeared to weigh well over two hundred pounds. (Doc 1, ¶27). The store clerk, described the robber as a

white man wearing a cowboy hat. (Doc 1, ¶28). The surveillance camera captured several still photographs of the man's pickup truck. The truck appeared to be a late model Chevrolet Silverado, champagne or light gold in color, with a rail on the side of the truck box, a 3 ball hitch and an antenna bud on the roof. The truck had a cardboard tag. (Doc 1, ¶29).

The Twiggs County Sheriff's Office ("TCSO") responded to the scene and, ultimately, the investigation of the Marathon armed robbery was assigned to Defendant Stokes, a criminal investigator for the TCSO. (Doc 1, ¶30). While someone was robbing the store clerk at gunpoint in the Marathon Store in Twiggs County, Owens was at the McIntosh State Bank in McDonough making a deposit in his checking account. (Doc 1, ¶31).

A white, stocky man walked into First Bank in McDonough, Georgia at 12:30 p.m. on October 27, 2007. He walked up to Nichole Adcock's teller window and said, "this is a robbery, my two brothers are in the truck and as long as everyone cooperates, no one will get hurt. We want all of your money, no dye packs. Be calm and everything will be fine." Ms. Adcock put all the cash in her top drawer into the zipper bag the man slid to her; he turned around and walked out of the bank. (Doc 1, ¶32).

Hannah Jones, a First Bank employee, described the robber as a heavy set white man with a mustache, camouflage hat, and sunglasses. Wendy Telfer, a First Bank employee, described the robber as a stocky white male who was about 5'9" tall. He wore a big flowing shirt. (Doc 1, ¶34). Christie Robinson, a First Bank employee, described the robber as wearing a green camouflage hat, black plastic sunglasses, and having a mustache. (Doc 1, ¶35). Janice Ryan, a First Bank employee, described the robber as a white male, about 5'9"-5'11", weighing 250-260 pounds. (Doc 1, ¶36).

These witnesses filled out Bandit Description Forms. The descriptions given by the witnesses varied considerably. Three witnesses estimated that he was in his forties; two witnesses estimated he was in his fifties. Estimates of his height varied from 5'4" to 5'11". Two witnesses estimated his weight at 200 pounds; two others estimated his weight at 250 pounds. Two witnesses described a medium build; three described a "heavy" build. (Doc 1, ¶37).

Other witnesses described the "get away" vehicle driven by the robber as a Chevrolet Silverado pick up truck, gold/taupe in color, with a cardboard tag that said, "lost tag." (Doc 1, ¶38). When the robbery at First Bank was taking place, Owens was working at the residence of Charles Toll, in McDonough, Georgia installing residential gates. (Doc 1, ¶39). The First Bank robbery was within the jurisdiction of MPD and ultimately, Defendant Noble was assigned to lead the investigation. (Doc 1, ¶40).

A heavy set white man with a mustache and stubbly beard wearing a floppy, camouflage hat and dark sunglasses, entered the Colonial Bank in Bibb County around 1:19 p.m. on November 2, 2007. When a customer walked away from Amy Gorham's teller window, the heavy set white man approached Ms. Gorham, slid a black bag into her booth, and said, "this is a robbery and I am armed. As long as you give me the money and be quiet and no one will get hurt. My two brothers are on site." The heavy set white man moved to Chiquita Harris' booth and repeated his orders. He took the money and walked out of the back door of the Colonial Bank. (Doc 1, ¶42).

Amy Gorham described the robber as an older man wearing a camp brim hat, black sunglasses, a long sleeve denim button down shirt with a white T-shirt underneath, and denim jeans. According to Gorham, he walked with a slight limp. (Doc 1, ¶43). A surveillance camera captured a photograph of the robber. While someone was robbing Ms. Gorham in the Colonial

Bank in Bibb County, Owens was in Henry County repairing a fence for Southern Pipe and Supply located in McDonough, Georgia 30253.  (Doc 1, ¶45).

On November 16th, a jail trustee assigned to clean up duty at MPD saw a photograph of the white male who had committed the robbery at First Bank. The photograph was attached to a chalk board in the squad room. The jail trustee said that he thought the person looked like Owens. (Doc 1, ¶46).  Noble accepted the jail trustee as a "reliable source."  (Doc 1, ¶47).

The jail trustee told Noble that Owens was going through a divorce that he was talking about bankruptcy, that he had known Owens for a number of years, but had no idea what kind of vehicle Owens drove.  (Doc 1, ¶48).  Owens was going through a divorce, but he was not bankrupt and his business was doing just fine. (Doc 1, ¶49).

At 3:42 p.m. on November 19, 2007, an overweight white male, 6'0" tall, with grey hair and stubble on his face, but no beard, wearing a blue jean shirt, tan fishing hat, and sunglasses, walked into the Capitol City Bank in Bibb County, Georgia.  He walked up to teller Tiffany Coffer with a blue cloth bag.  He did not show her a weapon. He told her to put the money in the bag, not to use a dye pack, and she would not be hurt.  Ms. Coffer put the money in the blue bag, he took the bag and left the Capitol City Bank.  (Doc 1, ¶51).

Ms. Coffer described the "get away" vehicle as a late model Chevrolet Silverado pick up with an extended cab, tan in color, with a possible "drive out" tag covering the license plate of the vehicle.  (Doc 1, ¶52).   While someone was robbing Ms. Coffer in Bibb County on November 19, 2007, Owens was at the home of Shannon Reyome in McDonough, Georgia giving her an estimate on a fence job.  (Doc 1, ¶53).  The robbery at Capitol City bank received coverage on the evening news in Bibb County.  (Doc 1, ¶54).  Bonnie Bray, one of the witnesses to the October 27th robbery of First Bank in McDonough, saw the evening news coverage of the

robbery at Capitol City Bank. She felt the description of the robber and the robbery sounded very much like the robbery at First Bank. (Doc 1, ¶55).

Bonnie Bray called Noble to tell him that she thought the description of the robber and the robbery at Capitol City Bank sounded similar to the robbery at First Bank. (Doc 1, ¶56). In connection with Bray's call and based upon the jail trustee's observation that the unknown person depicted in the picture on the chalk board at MPD looked a bit like Owens, Noble began investigating Owens as a possible suspect. (Doc 1, ¶57). Noble pulled Owens' drivers license information. Owens' drivers' license was valid. (Doc 1, ¶58). Owens' drivers' license information showed that Owens renewed his license in February of 2004. (Doc 1, ¶60). Noble ordered a copy of Owens' driver's license picture. The picture depicted Noble as he appeared in 2000, as Noble did not have a new picture taken when he renewed his drivers' license in 2004. (Doc 1, ¶61).

When his drivers' license picture was taken seven years before the robberies, Owens weighed far more than he did in 2007. (Doc 1, ¶62). Noble made no effort to determine whether the drivers' license photograph of Owens accurately depicted Owens' appearance in the Fall of 2007. (Doc 1, ¶64). Noble pulled a report from the Georgia Department of Motor Vehicles that listed all the vehicles registered to Owens. The report shows that Noble owned two Ford pick-up trucks, including a 1994 Ford pick-up that was white in color. (Doc 1, ¶65). All of Noble's vehicles were properly registered and licensed through the State of Georgia. (Doc 1, ¶66).

Every witness who saw the "get away" vehicle at any of the robberies described the vehicle as a late-model Chevrolet Silverado, gold or taupe in color, with a cardboard license plate. (Doc 1, ¶67). Noble pulled Owens' criminal history. Owens' criminal history revealed

two misdemeanors, committed in 1985 and 1990 respectively, neither of which had anything at all to do with theft, violence, or dishonesty. (Doc 1, ¶69).

Noble made no effort to contact Owens prior to the afternoon of November 21st. (Doc 1, ¶71). Acting solely upon the suggestion of a jail trustee, Noble asked that Owens' picture be placed in a six person photographic line up. (Doc 1, ¶72). Noble showed the photographic line up to the witnesses of the First Bank robbery. (Doc 1, ¶73). None of the witnesses to the First Bank robbery in McDonough identified Owens. (Doc 1, ¶74-78). Noble called Defendant Abernathy of the Bibb County Sheriff's Department on November 21st and informed him that MPD had a "potential suspect." (Doc 1, ¶81). Noble gave Abernathy information concerning the description of the unknown person who robbed the First Bank. He identified Owens as the likely suspect and further advised that "this possible suspect John Owens robbed a convenient (sic) store at gun point, in Twiggs County." (Doc 1, ¶82).

Noble e-mailed Owens' picture to Abernathy on November 21st. (Doc 1, ¶83). Noble failed to disclose any of the exculpatory information concerning Owens that he had gathered during his brief investigation. (Doc 1, ¶84). Abernathy failed to ask Noble whether he had any information that supported his identification of Owens as a possible suspect. (Doc 1, ¶85). Abernathy adopted Noble's conclusion regarding Owens, and without more, decided that Owens was the principal suspect in the robberies at Colonial Bank and Capitol City Bank. (Doc 1, ¶86).

Abernathy placed Owens' photograph in a photographic line-up. (Doc 1, ¶87). Abernathy presented the photographic line up to the witnesses at the Colonial Bank robbery. (Doc 1, ¶ 88). A single witness, out of several, Amy Gorham picked Owens out of the photographic line up. (Doc 1, ¶90). Abernathy presented the photographic line up to the witnesses at the Capitol City bank robbery. (Doc 1, ¶91). None of the witnesses at the Capitol

City bank picked Owens out of the photographic line up. (Doc 1, ¶92). Abernathy appeared before a Bibb County Magistrate judge on November 21, 2007 and swore under oath that Owens had committed the offense of Robbery by Intimidation at the Colonial Bank. (Doc 1, ¶93).

Prior to securing the arrest warrants for Owens, Abernathy engaged in an investigation of the robberies at Capitol City Bank and Colonial Bank but failed to independently corroborate Ms. Gorham's identification of Owens' as the perpetrator, including but not limited to interviewing Owens prior to his arrest. (Doc 1, ¶98). Abernathy and Noble shared their hunch that Owens committed the robberies in their counties with Stokes, who had been assigned to investigate the robbery of the Marathon Gas Station in Twiggs County. (Doc 1, ¶102). Noble and Abernathy failed to disclose to Stokes any of the exculpatory information concerning Owens that they had gathered during their investigations. (Doc 1, ¶103). Stokes did not independently identify Owens as a potential suspect of the robbery at the Marathon Gas Station. (Doc 1, ¶105). Prior to communicating with Abernathy and Noble, Stokes had no suspects for the robbery at the Marathon Gas Station. (Doc 1, ¶106).

Stokes adopted Noble and Abernathy's investigations as his own and, without more, decided that Owens was the principal suspect in the armed robbery of the Marathon Gas Station. (Doc 1, ¶107). Acting solely upon the investigations of Abernathy and Noble, Stokes identified Owens as the perpetrator of the robbery at the Marathon Gas Station. (Doc 1, ¶108). Stokes appeared before a Magistrate judge in Twiggs County and swore out an arrest warrant for Owens for the armed robbery of the Marathon Gas Station. (Doc 1, ¶110). Stokes' warrant application stated that Owens had been "identified by a photo-line up" when, as a matter of actual fact, Owens had not been identified by virtually all of the witnesses to each of the robberies committed in Twiggs, Bibb and Henry Counties (Doc 1, ¶111). Prior to securing the arrest

warrant for Owens, Stokes engaged in an investigation into the robbery at the Marathon Gas Station by ignoring plainly exculpatory evidence, including but not limited to Owens' motor vehicle history showing that he did not own a Chevrolet Silverado pick up or interviewing Owens prior to his arrest. (Doc 1, ¶113).

Noble communicated with Stokes and Abernathy about the results of their investigations during the afternoon of November 21, 2007. (Doc 1, ¶117). Noble, Stokes and Abernathy decided to arrest Owens on the Bibb County warrants. (Doc 1, ¶118). Noble appeared before a magistrate judge in Bibb County and submitted a sworn application for a search warrant of Owens' home. (Doc 1, ¶119). Abernathy and Stokes travelled together to Henry County on November 21, 2007 for the purpose of meeting with Noble and executing Abernathy's arrest warrants for Owens. (Doc 1, ¶120). Noble asked for the assistance of the Henry County SWAT team in executing the arrest warrants on Owens. (Doc 1, ¶121). Owens was at home preparing for Thanksgiving when the Defendants, backed by the Henry County SWAT team, descended upon his home. (Doc 1, ¶122). Several neighborhood kids were outside and saw the Defendants and the SWAT team drive onto Owens' property. (Doc 1, ¶123). One of the kids ran inside and told Owens that the police were at his home. (Doc 1, ¶124).

When the warrant was executed, Owens was shocked and scared. He asked what was happening. One of the Defendants told him that they had warrants for his arrest for robbery in Bibb and Twiggs County. (Doc 1, ¶126). Owens was handcuffed and placed in the back of Abernathy's vehicle. (Doc 1, ¶127). Noble executed the search warrant on Owens' home. Noble found nothing connecting Owens to any of the robberies. (Doc 1, ¶128).

Abernathy and Stokes drove away with Owens. (Doc 1, ¶129). Neither Officer noted a difference between Owens's appearance and his drivers' license photo or the photos used for

identification purposes from the robberies. (Doc 1, ¶130-132). The negative results of the search warrant failed to provide any evidence to support the jail trustee's statement that Owens resembled the person who committed the First Bank robbery. (Doc 1, ¶133). Noble appeared before a Henry County Magistrate judge on November 27, 2007 and swore under oath that Owens had committed the offense of Robbery by Intimidation at First Bank. (Doc 1, ¶134).

Owens was brought before a magistrate judge in Bibb County on November 23, 2007. The magistrate judge set a $3,000.00 bond; however, Owens had a hold from Twiggs County based on Defendant Stokes' warrant for the Marathon Gas Station armed robbery. (Doc 1, ¶142). On December 7th, Owens' attorney appeared at his commitment hearing in Bibb County Magistrate Court. Owens' attorney had evidence in the form of witnesses, videotape, documents, and affidavits that affirmatively proved that Owens had not committed any of the robberies. (Doc 1, ¶144). A Twiggs County investigator quickly concluded that Owens could not possibly be the perpetrator of the Marathon Gas Station armed robbery and, upon his return to Twiggs County, asked a magistrate judge to recall the arrest warrant issued at the request of Defendant Stokes. (Doc 1, ¶145).

The very next day, Owens learned that the Henry County Sheriff's Office had an active warrant for his arrest – the warrant taken by Noble. (Doc 1, ¶148). Owens turned himself into the Henry County Jail on December 13th. Owens was arrested on the warrant taken by Noble. (Doc 1, ¶149). The actual perpetrator committed another robbery in Henry County on December 12, 2007. (Doc 1, ¶150). When Owens appeared in Court on December 14, 2007, Captain Helgerson of MPD saw him and immediately recognized that he could not possibly be the person who had committed the various robberies. The suspect weighed at least 250-275 and Owens was no where near that heavy. (Doc 1, ¶151).

The Bibb County warrants were dismissed on or about December 14, 2007. (Doc 1, ¶152). The Henry County warrant was dismissed on or about December 14, 2007. (Doc 1, ¶153). Owens' arrest as the perpetrator of several bank robberies was broadcast on several television news networks. (Doc 1, ¶154). Owens' arrest as the perpetrator of several bank robberies was covered by several newspapers, including the paper in Owens' home town of McDonough, Georgia. (Doc 1, ¶155).

### III.  Procedural History

Plaintiff filed the Complaint on November 18, 2009. (Doc. 1). On January 14, 2010, Defendant John Abernathy filed a Motion to Dismiss (Doc. 21), Memorandum in Support of his Motion to Dismiss (Doc. 22), and a Request for Oral Argument (Doc. 23). On February 8, 2010, Plaintiff filed a Response to Defendant Abernathy's Motion to Dismiss. (Doc. 30). Defendant filed a Reply to Plaintiff's Response on Defendant's Motion to Dismiss on February 22, 2010. (Doc. 34). Plaintiff's Complaint contains claims for false arrest in violation of the Fourth Amendment (Count One), malicious prosecution in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment (Count Two), and Monell liability against Defendant City of McDonough in violation of 42 U.S.C. § 1983. Plaintiff also requests a declaratory judgment that Plaintiff's Constitutional rights were violated and permanent injunction against any future violations of Plaintiff's Constitutional rights, in addition to compensatory, and punitive damages. Defendant's Motion to Dismiss (Doc. 21) is now fully briefed and ripe for ruling. The only matters at issue against Defendant Abernathy are Count One (false arrest) and Count Two (malicious prosecution). See Doc. 30 at pg. 1.

## IV.    Parties' Arguments

Defendant Abernathy argues that he is protected by Qualified Immunity as to all claims brought by Plaintiff pursuant to 42 U.S.C. § 1983.  (Doc. 21).  Defendant argues that this immunity should be applied at the Motion to Dismiss stage under Eleventh Circuit precedent. (Doc. 21).  Defendant Abernathy states that he was acting in his discretionary authority when Plaintiff was arrested, and, therefore, Plaintiff cannot overcome the defense of Qualified Immunity.  Further, Defendant Abernathy argues that because he had probable cause when he arrested Plaintiff, Plaintiff's false arrest claim under the Fourth Amendment is barred.  (Doc. 21). He argues that, even if he did not have probable cause under the law, then Defendant argues he at least had arguable probable cause, which also entitles him to Qualified Immunity under the applicable case law.  Defendant Abernathy argues that this existing probable cause also bars Plaintiff's malicious prosecution claim.  (Doc. 21).

In response, Plaintiff argues that Defendant's Motion should be considered under Rule 56 pursuant to Rule 12(c).  (Doc. 30).  Plaintiff argues that Defendant Abernathy's conduct does not warrant Qualified Immunity in light of the case law in the Eleventh Circuit.  Defendant's Reply contests Plaintiff's allegations regarding the lack of support for his position in case law, and restates his previous positions regarding Qualified Immunity and the existence of probable cause as a complete bar to Plaintiff's claims.  (Doc. 34).

## V.    Analysis

### a.  Qualified Immunity

"Government actors may be sued under 42 U.S.C. § 1983 in either their official or individual capacity.  When sued in an individual capacity, an official may enjoy Qualified Immunity from suit in certain actions."  Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir.

1997), *quoting* Harlow v. Firtzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).  Qualified Immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir.1991).  Often, even if public officials may have violated a Plaintiff's Constitutional rights, Qualified Immunity shields public officers from personal liability if those Constitutional acts "did not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.

The affirmative defense of Qualified Immunity may be raised and considered on a Motion to Dismiss.  The motion will be granted if the "Complaint fails to allege the violation of a clearly established Constitutional right." Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir.1997); Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001).  Once the affirmative defense of Qualified Immunity is advanced, the allegations of the Complaint take on great importance in a lawsuit.  "Unless the Plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading Qualified Immunity is entitled to dismissal before the commencement of discovery." Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985); Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 840, 133 L.Ed.2d 773 (1996) ("At the [12(b)(6)] stage, it is the defendant's conduct as alleged in the Complaint that is scrutinized for 'objective legal reasonableness.' ").[1]

To receive Qualified Immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir., 2002).  Here, it is undisputed that Defendant

---

[1] See Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)("[t]he Supreme Court has urged us to apply the affirmative defense of Qualified Immunity at the earliest possible stage in litigation because the defense is immunity from suit and not from damages only. ")(citing Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

Abernathy was acting within the course and scope of his discretionary authority when he engaged in the alleged deficient investigation and swore out the warrant application against Plaintiff. Because Defendant has shown that he was acting within his discretionary authority, "the burden shifts to the Plaintiff to show that Qualified Immunity is not appropriate." See Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir, 2004).

The Court must now proceed to determine 1) whether Defendant violated Plaintiff's Constitutional rights; and 2) whether that right was clearly established at the time of the incident. Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009). The Court need not reach the second prong of Qualified Immunity analysis if Plaintiff cannot meet the first prong – violation of a Constitutional right. See id. If a Constitutional violation occurred because the officer lacked probable cause, the Court considers whether arguable probable cause existed. The officer may still be shielded from liability because his "actions did not violate 'clearly established statutory or Constitutional rights of which a reasonable person would have known.' " Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)(internal citations and quotations omitted). "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.' " See Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001). The analysis turns on what the Officer knew at the time of the alleged constitutional violation and, although valuable, hindsight must not be applied in the Court's estimation of reasonableness.

The facts, as viewed in a light most favorable to Plaintiff are as follows. Plaintiff argues that Defendant Abernathy conducted a deficient investigation leading to Plaintiff's arrest and ignored plainly exculpatory information regarding whether or not Plaintiff committed the

robberies at issue. This exculpatory information included, but is not limited to: Defendant Abernathy's failure to reference Plaintiff's motor vehicle history indicating that he did not own the "get-away" car in question; Plaintiff's driving and criminal histories, which, according to Plaintiff, raised no suggestion that Plaintiff would commit a violent crime; and especially Defendant Abernathy's failure to interview Plaintiff before seeking warrants for Plaintiff's arrest. See Plaintiff's Complaint ¶96-98. The Court agrees that, had Defendant Abernathy considered this information, it may have in fact proved exculpatory. However, the Court finds that the proper question before the Court is not the quality of the investigation undertaken by Defendant Abernathy— but whether or not Defendant had probable cause arising from the investigation.

In contrast to Plaintiff's contentions, Defendant points to foundation for probable cause based on the following facts; there was at least one positive identification of Plaintiff by an eyewitness and an indication that Plaintiff strongly resembled surveillance images of the true perpetrator. Plaintiff asks the Court to consider Defendant's admitted dependence on the investigations of the other Defendants to be proof that he lacked foundation for probable cause; however, the Court finds that Defendant had independent and reasonable facts that contributed to his belief that Plaintiff was the perpetrator of the robberies. Defendant Abernathy states that, while he did depend on the results of the investigations of the other Defendants as instructive, he conducted his own investigation, which included a photographic line-up resulting in a positive identification of Plaintiff as the individual responsible for at least one of the Bibb County robberies. See Doc. 1, 22, 34.

The law is well established that "a government officer Defendant is entitled to Qualified Immunity unless, at the time of the incident, the 'preexisting law dictates, that is, truly compel[s],' the conclusion for all reasonable, similarly situated public officials that what

Defendant was doing violated Plaintiffs' federal rights in the circumstances. <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1031 (11th Cir. 2001)(internal quotations omitted). The Court finds that Defendant Abernathy has provided sufficient evidence under the law to support a finding of probable cause and, therefore, should be protected by Qualified Immunity. Even construed in a light most favorable to Plaintiff, the facts before the Court do not support a conclusion that reasonable, similarly situated public officials possessing the information or evidence that Defendant had the time would not have drawn the same conclusions from the evidence upon which Defendant Abernathy relied.

Defeating a Defendant Officer's foundation for probable cause is a heavy burden for a Plaintiff. The Supreme Court has found that "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." <u>Illinois v. Gates</u>, 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). Further, "[p]robable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir.1996) (quoting <u>Marx v. Gumbinner</u>, 905 F.2d 1503, 1506 (11th Cir.1990)). Plaintiff argues that Defendant's reliance on the assertion of the jail trustee was unreasonable and was evidence that should not have been considered or given great weight. Without considering whether or not the jail trustee was a reliable source, the Court is required to consider what the Officer knew and considered in conjunction with all other existing facts. Here, those facts included a positive identification from an eyewitness to the robbery and photographic evidence that showed a strong resemblance between Plaintiff and the perpetrator. Based on the evidence before the Court, it must find that Defendant Abernathy was entitled to rely on this evidence and the sum of his conclusions based thereon for purposes of probable cause.

Therefore, the evidence taken in the light most favorable to Plaintiff, establishes that Defendant Abernathy conducted an investigation, interviewed independent witnesses, including eyewitness employees of the bank, and directly observed a strong resemblance between Plaintiff and the true perpetrator. While Defendant's investigation may not have been the most thorough and submitted Plaintiff to great discomfort, Plaintiff has not provided facts that prove Defendant acted in a manner that should deny him Qualified Immunity. See Kelly v. Curtis 21 F.3d 1544 (11th Cir. 1994)(citing the Eleventh Circuit's holding in LeSavage v. White, 755 F.2d 814, 820 (11th Cir.1985), where the Court held that a police officer "was at most negligen[t]" when he failed to get an exculpatory report from a fellow officer before seeking an arrest warrant).

The Court finds that this evidence was sufficient to support Defendant Abernathy's basis for probable cause; and at the very least, provided grounds to support a finding of arguable probable cause. Based on the existence of probable cause, no Constitutional violation occurred; absent evidence that a Constitutional violation occurred, the Court need not consider whether the alleged violation was clearly established; or whether Defendant lacked even arguable probable cause. Case v. Eslinger, 555 F.3d 1317 (11th Cir. 2009). In fact, where probable cause is found, arguable cause necessarily existed.

**b.  False Arrest**

A warrantless arrest without probable cause violates the Constitution and provides a basis for a § 1983 claim. Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir.1990). The existence of probable cause at the time of arrest, however, constitutes an absolute bar to a § 1983 action for false arrest. Id. at 1505-06; see also Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir.1996) (finding no probable cause where arresting officer relied on unsubstantiated informant's tip, failed to take any independent steps to investigate the tip, and did not have any evidence which

would have corroborated the tip); <u>Kingsland v. City of Miami</u>, 382 F.3d 1220 (11th Cir. 2004). Defendant Abernathy's actions here were not based on a mere informant's tip.

### c. **Malicious Prosecution**

To establish a federal malicious prosecution claim under § 1983, a Plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. <u>Wood v. Kesler</u>, 323 F.3d 872, 881 (11th Cir.2003), *cert. denied,* 540 U.S. 879, 124 S.Ct. 298, 157 L.Ed.2d 143 (2003). "It is well settled that in an action to recover damages for malicious prosecution where, as here, the evidence is in dispute, the existence or non-existence of malice and want of probable cause are questions of fact for the jury." <u>Good Holding Co. v. Boswell</u>, 173 F.2d 395, 399 (5th Cir.1949).[2]

The Georgia tort of malicious prosecution has the following elements: (1) prosecution for a criminal offense; (2) under a valid warrant or accusation or summons; (3) termination of the prosecution in favor of the Plaintiff; (4) malice in the institution and maintenance of the proceedings; (5) lack of probable cause for the proceedings; and (6) damage to the Plaintiff. <u>Commercial Plastics & Supply Corp. v. Molen</u>, 355 S.E.2d 86, 87 (Ga.App.1987).

It is undisputed that Plaintiff has properly pled the first three elements. While the presence of malice would be a question of fact for the jury, the Plaintiff cannot prove the fifth element because this Court has found, as discussed above, that Defendant Abernathy did have probable cause for the proceeding. Further there is no allegation the Defendant Abernathy actively deceived or purposely misled the magistrate at the time the warrant was sworn. <u>See Kelly v. Curtis</u>, 21 F.3d 1544, 1556 (11th Cir. 1994)(discussing malicious prosecution claim on

---

[2] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 12, 1981.

Qualified Immunity grounds where Plaintiff alleged Officer recklessly disregarded the truth and purposely misled the Court).

Therefore, for the foregoing reasons, Defendant's Motion to Dismiss (Doc. 21) is **GRANTED**.

## **CONCLUSION**

For the reasons articulated above, Defendant's Motion to Dismiss (Doc. 21) is **GRANTED.** Plaintiff's Claims as to Defendant John Abernathy are **DISMISSED**.[3] The Court notes that, by February 4, 2010 Order of the Hon. Hugh Lawson, discovery ended in this matter on September 2, 2010. (Doc. 28). The filing date for all dispositive motions also expired on September 17, 2010. The Court will by separate Order notice the remaining parties for trial to begin at the William A. Bootle Federal Building and United States Courthouse on February 21, 2011.

**SO ORDERED**, this  29th  day of September, 2010.


/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**

---

[3] The Court makes no findings or conclusions with respect to the actions of the other Defendants. Any facts regarding the alleged conduct of the other Defendants were considered only in connection with Defendant Abernathy's conduct for purposes of Defendant Abernathy's motion, the only Motion before and decided by the Court.