## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| JOHN KIRK OWENS,<br>  Plaintiff,<br>vs.<br><br>WILLIAM STOKES, *et al.*,<br>  Defendants. | CIVIL ACTION FILE<br><br>NO. 5:09-CV-399-WLS |

### DEFENDANT STOKES' BRIEF IN SUPPORT OF HIS
### MOTION FOR SUMMARY JUDGMENT

COMES NOW DEFENDANT WILLIAM STOKES, and, pursuant to the Local Rules files this Brief in Support of his Motion for Summary Judgment as follows:

### STATEMENT OF PERTINENT FACTS[1]

### OVERVIEW

This lawsuit stems in part from Plaintiff John Owens' arrest on November 21, 2007, which was based on two robbery warrants obtained by the Bibb County Sheriff's Office. Following that arrest, Bibb County Sheriff's Office investigators transported Plaintiff to the Bibb County Jail, where he was held until he bonded out on December 10, 2007.

Plaintiff sues Investigator William Stokes of the Twiggs County Sheriff's Office for obtaining an armed robbery warrant in Twiggs County. The Twiggs County armed robbery warrant was never executed. Plaintiff was never incarcerated on the basis of the Twiggs County warrant. Plaintiff acknowledges that the *Twiggs* County warrant was never served on him and he was not arrested, charged or prosecuted in connection with that warrant.

---

[1] The facts set forth below are supported by citations to the record in Defendant's Statement of Undisputed Material Facts, submitted herewith. That Statement, and the factual discussion in this Brief, are made solely for the purpose of summary judgment, and Defendant does not necessarily admit the truth or accuracy of any testimony but his own.

On November 29, 2007, City of McDonough Investigator Kenneth Noble obtained an arrest warrant for Owens from a Henry County Magistrate judge. The arrest warrant was granted on witness identifications in both Bibb County and Twiggs County of Plaintiff by a jail trustee in McDonough. After that, the Twiggs County warrant was dismissed on December 7, 2007. Plaintiff bonded out of the Bibb County Jail on December 10, 2007.

## DETECTIVE WILLIAM STOKES

Since 2006, Investigator William Stokes has worked as an investigator with the Twiggs County Sheriff's Office. Plaintiff only dealt with Defendant Stokes on the day of his arrest, November 21, 2007. According to Plaintiff, Defendant Stokes was cordial, engaged in small talk about Plaintiff's farm and cows and was otherwise pleasant to Plaintiff. Plaintiff has no reason to believe that Investigator Stokes had anything against him or acted maliciously. In regard to Investigator Stokes' investigation before obtaining a warrant from the Twiggs County Magistrate Judge, Plaintiff has no personal knowledge.

## MARATHON GAS STATION ROBBERY IN TWIGGS COUNTY

On September 27, 2007, a middle-aged white man walked into a Marathon Gas Station on Highway 96 in Twiggs County, Georgia and robbed the store clerk at gunpoint. The heavy-set robber was wearing blue jeans, a long-sleeved blue shirt, white tennis shoes, and a floppy hat. The investigation of the Marathon Gas Station armed robbery was assigned to William Stokes, a criminal investigator with the Twiggs County Sheriff's Office.

Investigator Stokes responded to the scene of the Marathon gas station and obtained information from the responding deputy and the victim, a gas station clerk. Investigator Stokes also obtained photos of the robber from the camera system at the Marathon gas station. The Marathon convenience store photos provided overview photos of the robber and his vehicle. The

Marathon photographs provided only partial views of the robber's face.

## VARIOUS BANK ROBBERIES

On October 26, 2007, a white man walked into a First Bank in McDonough, Georgia and robbed a teller. The investigation of this robbery was assigned to Kenneth Noble, a detective with the McDonough Police Department.

The McDonough Police Department, through the officers on the scene of the robbery and Noble, secured six witness statements as to the perpetrator of the robbery. The description given in the responding officer's incident report details the perpetrator as a white male, possibly in his 50s, 5'8 to 6 feet tall, and approximately 225 to 250 pounds. Plaintiff John Owens is 5'10 tall. In the fall of 2007, he weighed approximately 220 pounds, had dirty-blonde hair and a round face.

On the afternoon of November 2, 2007, a white male robbed a teller at the Colonial Bank in Bibb County by presenting her with a black bag and telling her to put the money in the bag. The man had some facial hair, was wearing a floppy hat, and walked with a slight limp.

On November 16, 2007, Phillip Hatcher, a jail trustee with the McDonough Police Department, saw a still photograph of the white male that committed the robbery at First Bank in Henry County. Hatcher identified the man as a former employer, John Kirk Owens. On November 19, 2007, a white male wearing a long-sleeved denim shirt, blue jeans, sneakers, a hat and sunglasses robbed the Capital City Bank in Bibb County, Georgia.

## INVESTIGATIONS BY BIBB COUNTY SHERIFF'S OFFICE AND CITY OF McDONOUGH POLICE DEPARTMENT

Investigator Osgood with the Bibb County Sheriff's Office was assigned to the Capital City Bank robbery. He and Detective Abernathy, the detective assigned to the Colonial Bank robbery, believed that the perpetrator in the Capital City Bank robbery was the same person that

3

robbed the Colonial Bank seventeen days earlier. Investigator Holliday, an investigator with the Criminal Investigations Division with the Bibb County Sheriff's Office, received information from the Twiggs County Sheriff's Office that a similar robbery had occurred in that jurisdiction.

After receiving identification of the suspect in the First Bank robbery in McDonough, Georgia, Defendant Noble began to investigate John Kirk Owens by pulling his criminal history, his driver's license, his bank statements, and records regarding the vehicles he owned. Bonnie Bray, the bank manager of the First Bank in McDonough and a witness to the First Bank robbery, contacted Defendant Noble on November 5 21, 2007 after she saw a news report on the Macon news of the Capital City Bank robbery. She believed that the robberies were similar.

When Defendant Noble received this information on November 21, 2007, he decided to call the Bibb County Sheriff's Office and speak with Detective Abernathy to confirm Ms. Bray's belief. At approximately noon on November 21, 2007, Defendant Noble produced a photographic lineup containing John Kirk Owens' driver's license photograph from the Georgia Department of Drivers Services.

Detective Abernathy told Defendant Noble that he believed that the same perpetrator committed the robbery in Twiggs County. Defendant Noble informed Detective Abernathy that he had a potential suspect and provided him with John Kirk Owens' driver's license photo. Detective Abernathy obtained an arrest warrant for Owens on November 21, 2007 after receiving positive identification from a witness that the suspect in the bank robberies in Bibb County was John Kirk Owens.

**DEFENDANT STOKES' INVESTIGATION**

Some time after the Marathon gas station robbery, Investigator Stokes received information from the Bibb County Sheriff's Office that a couple of bank robberies there may be

related to the Marathon gas station robbery. Investigator Stokes met with investigators at the Bibb County Sheriff's Office and based on information from the Bibb County Sheriff's Office, Stokes concluded that the Marathon gas station robber was the same as the Bibb County bank robber.

Stokes had no further leads but in November 2007 the Bibb County Sheriff's Office told Investigator Stokes that they had a suspect and he lived in Henry County. The Bibb County Sheriff's Office provided Investigator Stokes with a photo line-up, which Stokes showed to the victim from the Marathon robbery.

Stokes asked the Marathon robbery victim whether she recognized the robber in the photo line-up. The Marathon gas station crime victim picked Plaintiff out of the line-up as the Marathon armed robber. In his deposition, Plaintiff identified himself in the photo line-up that Defendant Stokes used with the Marathon gas station victim.

Before the Marathon gas station victim picked Plaintiff out of the photo line-up, two victims in the Bibb County bank robberies picked Plaintiff out of a photo line-up. Defendant Stokes obtained an arrest warrant from a Twiggs County Magistrate judge on November 21, 2007, based on the details revealed by his own investigation and information from the other law enforcement agencies.

**ARREST ON BIBB COUNTY ARREST WARRANTS**

Detective Abernathy informed Defendant Stokes that he had taken out arrest warrants for Owens on both Bibb County robberies. After obtaining an armed robbery warrant for Plaintiff's arrest, Investigator Stokes learned that the Bibb County investigators intended to execute the Bibb County warrants in McDonough on November 21, 2007.

Investigator Stokes went to Henry County with the Bibb County officers, where they met

with City of McDonough's Investigator Noble. Noble obtained a search warrant and all the officers went to Plaintiff's residence.

Bibb County Detective Abernathy arrested Owens at his residence on November 21, 2007 based on the two arrest warrants issued for Bibb County. The Bibb County Sheriff's Office investigators took Plaintiff into custody and transported Plaintiff to the Bibb County jail.

Investigator Stokes got a ride back to his vehicle and later drove back to Twiggs County. The Twiggs County arrest warrant was never executed. Investigator Stokes withdrew the Twiggs County arrest warrant after being presented with alibi evidence from Owens' criminal defense attorney.

Based on the alibi evidence, Stokes asked the Twiggs County judge to cancel the Twiggs County arrest warrant. The Twiggs County arrest warrant was never served. Plaintiff was never arrested or incarcerated on the basis of the Twiggs County warrant.

## ARGUMENT AND CITATION OF AUTHORITY

Plaintiff asserts federal § 1983 claims against Defendant Stokes for false arrest and malicious prosecution. Defendant moves for summary judgment as to all claims against him by Plaintiff. That said, under the factual scenario of this case Defendant Stokes had no role in Plaintiff's arrest, incarceration(s) or any pertinent "prosecution," if a prosecution ever existed.

Instead of restating arguments provided elsewhere, Defendant incorporates by reference the arguments and authorities detailed in the summary judgment briefs of his co-Defendants. To sum up those briefs and the arguments detailed herein, probable cause existed to believe that Plaintiff committed various bank robberies, as well as armed robbery of a Marathon gas station in Twiggs County. The Court previously agreed, at least in relation to the Bibb County bank

6

robberies. Order (Doc. 38) at 18.

The Bibb County incarceration is the only link that Plaintiff claims between Detective Stokes and any alleged constitutional deprivation. See Complaint at ¶142. Because the Bibb County incarceration was based on at least arguable probable cause, Order (Doc. 38) at 18, it follows that Defendant Stokes is entitled to qualified immunity, since Plaintiff cannot link Stokes to a constitutional deprivation. See Hicks v. Moore, 422 F.3d 1246, 1253 (11th Cir.2005) (absence of constitutional violation barred § 1983 claims against persons not directly involved in underlying conduct). In the remainder of this Brief, Defendant turns to specific claims arguably implicated by his own specific conduct in the incidents underlying this case.

## QUALIFIED IMMUNITY PROTECTS DEFENDANT STOKES FROM PLAINTIFF'S CLAIMS

In the context of § 1983 constitutional claims, courts ordinarily analyze the qualified immunity defense by asking first whether the defendant's conduct, as alleged by plaintiff and shown by the evidence, amounts to a constitutional violation. See Pearson v. Callahan, 129 S.Ct. 808, 818 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001). If the court finds evidence showing a constitutional violation, qualified immunity still protects officers who acted within their discretionary authority and did not violate clearly established law.

In this case, Defendant Stokes investigated and applied for an arrest warrant following identification of Plaintiff as a suspect. As the Complaint acknowledges, hose acts were performed within Defendant's job functions as an investigator with the Twiggs County Sheriff's Office. Complaint at ¶¶13, 30; see Grider v. City of Auburn, Ala., 618 F.3d 1240, 1262 n.33 (11th Cir.2010) (discussing qualified immunity discretionary authority element); Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). Therefore, Defendant acted within his discretionary law

7

enforcement authority for purposes of qualified immunity.

Accordingly, Plaintiff bears the burden to show that (1) Defendant committed a constitutional violation and (2) that the constitutional right that Defendant allegedly violated was "clearly established" at the time. Saucier, 533 U.S. at 201.

**A.  Plaintiff's Fourth Amendment Claims Against Stokes Fail for Lack of a Seizure**

In the context of this case, Plaintiff has to show a seizure caused by Defendant Stokes, absent which the Fourth Amendment is not implicated. See Kingsland v. City of Miami, 382 F.3d 1220, 1236 (11th Cir.2004) (dismissing Fourth Amendment malicious prosecution claim for lack of a prosecution-related seizure). Here, Investigator Stokes did not cause a seizure. Rather, Plaintiff was arrested and incarcerated based on *Bibb County* warrants.[2] The Twiggs County warrant never caused a seizure. Therefore, Plaintiff's Fourth Amendment claims against Investigator Stokes fail and the Court need not consider probable cause or any other element of a Fourth Amendment claim against Stokes.

In the event that the Court proceeds further, however, Plaintiff's claims fail for the additional reasons discussed below.

**B.  A Warrant-Based Detention Cannot Support a False Arrest Claim**

Plaintiff asserts a false arrest claim, but Defendant Stokes did not arrest Plaintiff and only obtained an arrest warrant, which was never executed. Because a claim based on a warrant cannot ground a false arrest claim, Defendant Stokes is entitled to summary judgment on the false arrest count of the Complaint. Wallace v. Kato, 549 U.S. 384, 389-90 (2007) (false arrest is a seizure without legal process); Rodriguez v. Ritchey, 556 F.2d 1185, 1191 n.21, 1193 (5th Cir.

---

[2]  The Court has already ruled that the Bibb County incarceration was based on at least arguable probable cause, and thus no Defendant can be liable in connection with any portion of the Bibb County incarceration.

1977) (noting that arrest made under authority of a properly issued warrant is a valid arrest, not a "false" one, and that "[a] warrant is valid even though the court, through lack of information or otherwise, has issued it for the arrest of a person in fact innocent of the offense alleged") (citation omitted); Williams v. Georgia, No. CV410-042, 2010 WL 1737604, at *2 (S.D. Ga. 2010) ("Since [plaintiff] was arrested pursuant to a warrant (hence, a probable cause determination was made), his only conceivable claim is a claim for malicious prosecution."); Joyce v. Adams, No. CV405-078, 2007 WL 2781196, at *3 (S.D. Ga. 2007) ("[T]his Circuit has held that a Fourth Amendment unreasonable seizure claim is most closely analogous to the common law tort of malicious prosecution where the seizure involves obtaining an arrest warrant . . . .") (citing Whiting v. Traylor, 85 F.3d 581, 585 (11th Cir. 1996)).

C.  **Probable Cause Supported the Twiggs County Arrest Warrant**

Probable cause imposes a complete bar to Plaintiff's claims for false arrest and malicious prosecution. Wood v. Kesler, 323 F.3d 872, 882 (11th Cir.2003). For the reasons detailed below, probable cause supported the Marathon armed robbery charge against Plaintiff. Moreover, for qualified immunity Defendant need only have had "arguable probable cause," and that standard is easily met here. Wood, 323 F.3d at 878 (arguable probable cause considers "whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.").

An officer who applies for a warrant is entitled to qualified immunity unless the officer made intentionally false or recklessly false statements that were crucial to establishing probable cause. Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003); Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir.1997); Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir.1994). As discussed below, the information known to Defendant Stokes before he applied for the Marathon

armed robbery warrant was sufficient to support probable cause.

### 1. Robbery

There is no question in this case that the Marathon Gas Station in Twiggs County was robbed at gunpoint. Complaint at ¶26. That left only the question whether probable cause existed to believe that Plaintiff was the robber. For the reasons considered next, probable cause existed to identify Plaintiff as the culprit. .

### 2. Identification

Some time after the Marathon gas station robbery, Investigator Stokes received information from the Bibb County Sheriff's Office that a couple of bank robberies there may be related to the Marathon gas station robbery. Investigator Stokes met with investigators at the Bibb County Sheriff's Office and based on their information, Stokes concluded that the Marathon gas station robber was the same as the Bibb County bank robber. The crimes were quite similar, and the photos from the various crimes were obviously of the same robber.

In November 2007 the Bibb County Sheriff's Office told Investigator Stokes that they had a suspect in Henry County. The Bibb County Sheriff's Office provided Investigator Stokes with a photo line-up, which Stokes showed to the victim from the Marathon robbery. Stokes asked the Marathon robbery victim whether she recognized the robber in the photo line-up. The Marathon gas station crime victim picked Plaintiff out of the line-up as the Marathon armed robber.[3]

Before the Marathon gas station victim picked Plaintiff out of the photo line-up, Stokes learned that two victims in the Bibb County bank robberies picked Plaintiff out of a photo line-

---

[3] In his deposition, Plaintiff identified himself in the photo line-up that Defendant Stokes used with the Marathon gas station victim.

up. Investigator Stokes was entitled to rely upon information provided by other officers.[4]

Based on the details revealed by his own investigation and information from the other law enforcement agencies, Defendant Stokes obtained an arrest warrant from a Twiggs County Magistrate Judge on November 21, 2007. Based on the foregoing, at the time of the warrant application at least "arguable probable cause" existed to conclude that Plaintiff committed the Marathon gas station armed robbery. *Cf.* Rushing v. Parker, 599 F.3d 1263, 1268 (11th Cir. 2010) (granting qualified immunity in misidentification case, where officer relied upon victim's complaint and identification, and "a reasonable officer in [this] situation could have followed a similar course of action and believed that probable cause existed.").

### D. Plaintiff Cannot Establish a Malicious Prosecution Claim

> To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution. … [T]he constituent elements of the common law tort of malicious prosecution included: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused.

Wood v. Kesler, 323 F.3d 872, 881-82 (11th Cir. 2003).

Any claimed damages are cut off following independent acts of other police officers, judicial officers, prosecutors and/or the grand jury's indictment. Jones v. Cannon, 174 F.3d 1271, 1287-88 & n. 11 (11th Cir. 1999) (actions of prosecutor and grand jury indictment broke the

---

[4] United States v. Wilson, 894 F.2d 1245, 1254 (11th Cir.1990) ("[W]hen a group of officers is conducting an operation and there exists at least minimal communication between them, their collective knowledge is determinative of probable cause."); United States v. Allison, 953 F.2d 1346, 1350 (11th Cir.1992) (officers can rely upon information from other officers); Collins v. Nagle, 892 F.2d 489, 495 (6th Cir.1989) (same); Williams v. Town of White Hall, Alabama, 450 F.Supp.2d 1300, 1305 (M.D.Ala.2006) ("It is perfectly self-evident that law enforcement officials must be able to rely, within reason, on information they receive from fellow law enforcement officials without fearing for personal liability if that information later turns out to be incorrect.").

causal chain between officer and prosecution).

Here, Plaintiff's malicious prosecution claim against Defendant Stokes fails on numerous elements. Initially, at least arguable probable cause existed, as discussed above. Therefore, Plaintiff cannot show an *unreasonable* seizure in violation of the Fourth Amendment. Wood, 323 F.3d at 882. Indeed, Plaintiff cannot even show a *seizure* based on the Twiggs County warrant, regardless of reasonableness. That and other elements are considered below.

### 1. Plaintiff Was Not Seized Based on the Twiggs County Warrant

Aside from the existence of probable cause, Plaintiff was not subject to a prosecution-related *seizure*, which is an essential element for a Fourth Amendment malicious prosecution claim. Kingsland v. City of Miami, 382 F.3d 1220, 1235 (11th Cir.2004). The evidence is that Plaintiff was arrested based on a *Bibb County* warrant, and later released from the Bibb County Jail on bond. By the time Plaintiff posted bond in Bibb County, the Twiggs County warrant was withdrawn. The Twiggs County warrant was never executed and did not result in a seizure of Plaintiff.

In Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir.2004), the Eleventh Circuit considered a Fourth Amendment malicious prosecution claim by a plaintiff who was arrested without a warrant and then released on bond without any further arrest or detention. Id. at 1225. Kingsland held that the malicious prosecution claim was barred because there was no Fourth Amendment "seizure" following release on bond. Id. at 1236.[5] Kingsland rejected the idea that "normal conditions of pretrial release constitute a "continuing seizure" [absent] some significant, ongoing deprivation of liberty, such as a restriction on the defendant's right to travel interstate."

---

[5] Kingsland ruled that the plaintiff had a viable *false arrest* claim based on the initial warrantless arrest. However, the federal *malicious prosecution* claim was deficient for lack of a second "seizure" following release on bond.

Kingsland, 382 F.3d at 1236.

Kingsland squarely held that without a seizure in the course of a prosecution, a plaintiff cannot maintain a federal malicious prosecution action. Kingsland, 382 F.3d at 1236. As in Kingsland, here Plaintiff cannot demonstrate a Fourth Amendment seizure flowing from the Twiggs County warrant. It follows that, under Kingsland, Plaintiff's malicious prosecution claim against Defendant Stokes fails. Kingsland controls this case in favor of Investigator Stokes.

### 2. Defendant Stokes Did Not Institute or Carry On a Prosecution, and the Twiggs County Warrant Did Not Result in a Prosecution

Investigator Stokes obtained a warrant for Plaintiff's arrest. However, that warrant was never executed. That is, the Twiggs County warrant did not result in a prosecution. Plaintiff was never indicted or charged in a Twiggs County court for robbing the Marathon convenience store. Moreover, Investigator Stokes did not "prosecute" Plaintiff. If Plaintiff wants to sue someone for the prosecution he must sue someone who actually prosecuted. Eubanks v. Gerwen, 40 F.3d 1157, 1161 (11th Cir.1994) (malicious prosecution claim against investigating officer was barred because officer merely provided information to prosecutor, and did not decide whether to prosecute).[6] Because Investigator Stokes was never a prosecutor, and indeed there was never a Twiggs County prosecution, Stokes is not liable to Plaintiff for malicious prosecution.

---

[6] See also Battle v. Webb, 298 Fed.Appx. 882, 883 n.3 (11th Cir. 2008) (malicious prosecution claim failed because plaintiff "has not named the prosecutor who was responsible for obtaining an indictment."); Skousen v. Brighton High Sch., 305 F.3d 520 (6th Cir.2002) (officer "cannot be held liable for malicious prosecution when he did not make the decision to prosecute"); Jones v. Cannon, 174 F.3d 1271, 1287-88 & n. 11 (11th Cir. 1999) (actions of prosecutor broke the causal chain between officer and prosecution); State v. Hanson, 249 Ga. 739, 742-743(1), 295 S.E.2d 297 (1982) ("[f]rom the beginning of our criminal justice system prosecutors have exercised the power of prosecutorial discretion in deciding which defendants to prosecute."); Hicks v. Brantley, 102 Ga. 264, 271-72, 29 S.E. 459, 462 (1897) (detailing public prosecutor's role, part of which "is to determine whether or not to commence a particular prosecution, or to discontinue one already begun.").

### 3. Plaintiff Cannot Show Malice

Plaintiff cannot show malice by Investigator Stokes. "Malice consists of personal spite or general disregard of the right consideration of mankind, directed by chance against the individual injured." O.C.G.A. § 51-7-2. "Malice" means more than carelessness or negligence. Corporate Property Investors v. Milon, 249 Ga.App. 699, 705(2), 549 S.E.2d 157 (2001) ("By definition a negligent act cannot be malicious"). Where a prosecution is based on witness report(s) and there is no evidence of personal spite by an officer, the defendant officer is entitled to summary judgment. Kelly v. Curtis, 21 F.3d 1544, 1556 (11th Cir.1994) (dismissing malicious prosecution claim based on lack of evidence of malice); Stanford v. City of Manchester, 246 Ga.App. 129, 131, 539 S.E.2d 845 (2000) (granting summary judgment on malice element where "The investigation and prosecution were initiated in response to the alleged victim's report … and were not directed by personal spite or by chance against" plaintiff).

Here, Investigator Stokes sought an arrest warrant based on evidence provided by an eyewitness identification, other officers and photographs provided from the Marathon robbery and similar bank robberies. Plaintiff and Investigator Stokes had no previous history, and Plaintiff has no evidence to show that Investigator Stokes bore him any ill will that would support the "malice" element of a malicious prosecution claim. Therefore, Investigator Stokes is entitled to summary judgment.

### E. Plaintiff Cannot Establish a Fourteenth Amendment Claim

Technically the Complaint claims violations of the Fourteenth Amendment based on alleged seizure and prosecution. Complaint at ¶¶168, 180, 191. However, those seizure and prosecution claims must be analyzed under the Fourth Amendment rather than the Fourteenth Amendment's "due process" framework.

> The first task in a section 1983 suit is "to isolate the precise constitutional violation with which [defendant] is charged." Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). If an Amendment provides an explicit textual source of constitutional protection against the sort of conduct complained of, that Amendment- not the more generalized notion of substantive due process under the Fourteenth Amendment-is the guide for analyzing the claim. See Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989) (in the context of an excessive force claim). For example, in Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), the Supreme Court refused to recognize a substantive due process right under the Fourteenth Amendment to be free from criminal prosecution except upon probable cause; the Court determined that such a claim must be analyzed under the Fourth Amendment. Id. at 813.

Jordan v. Mosley, 298 Fed.Appx. 803, 805 (11th Cir.2008).

Based on that rule, Plaintiff cannot recover under the Fourteenth Amendment alleged seizure and prosecution, conduct that is covered by the more specific Fourth Amendment. Additionally, it should go without saying that Plaintiff cannot show a clearly established Fourteenth Amendment violation by Stokes, any more than he can show a violation of the Fourth Amendment. Even if the Fourteenth Amendment is now held to have conferred a "right" upon Plaintiff against Defendant Stokes' alleged conduct, it certainly was not a "clearly established" right in November 2007.

**F. Defendant Stokes Did Not Violate Clearly Established Federal Law**

Plaintiff bears the burden to show that Investigator Stokes violated clearly established federal law. Montoute v. Carr, 114 F.3d 181, 184 (11th Cir.1997). As discussed above, Stokes' actions in this incident were well within the realm of conduct allowed under federal constitutional parameters. Plaintiff cannot cite any pre-incident binding authority that provided Defendant Stokes with fair and clear warning *"that his conduct was unlawful in the situation he confronted."* Corey Airport Services, Inc. v. Decosta, 587 F.3d 1280, 1285 (11th Cir.2009) (emphasis supplied). Absent such authority, qualified immunity bars Plaintiff's § 1983 claims

15

against Defendant Stokes.

## **CONCLUSION**

For the above and foregoing reasons, Defendant Stokes is entitled to summary judgment.

Respectfully submitted,

WILLIAMS, MORRIS & WAYMIRE, LLC

/s/ Jason Waymire
JASON C. WAYMIRE
Georgia Bar No. 742602
Attorney for Defendant Stokes

Bldg. 400, Suite A
4330 South Lee Street
Buford, Georgia 30518
678-541-0790
678-541-0789
jason@wmwlaw.com