**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

JOHN KIRK OWENS,           :
                                 :
     Plaintiff,           :
                                 :     CIVIL ACTION
v.                         :     FILE NO.: 5 :  09-CV-399
                                 :
CITY OF McDONOUGH, GEORGIA, :
KENNETH B. NOBLE,       :
JOHN ABERNATHY        :
WILLIAM STOKES,         :
                                 :
     Defendants.

## PLAINTIFF'S CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COMES NOW**, Plaintiff **John Kirk Owens** and files his <u>Consolidated Brief in</u> <u>Opposition</u> to Defendant William Stokes' <u>Motion for Summary Judgment</u> and the <u>Motion for Summary Judgment</u> filed on behalf of City of McDonough, Georgia and Kenneth Noble.  In accordance with Fed. R. Civ. Pro. 56(c) and Local Rule 56**,** Owens has filed <u>Plaintiff's Statement of Material Facts To Which There Remains A Genuine Issue To Be Tried ("Plaintiff's SMF" or "P. SMF")</u>[1] and his responses to <u>William Stokes'</u> <u>Statement of Undisputed Material Facts</u> and <u>City of McDonough and Kenneth B.</u> <u>Noble's Statement of Undisputed Material Facts</u> contemporaneously with this <u>Consolidated Brief</u>.

---

[1]Owens has attached all supporting evidentiary material as exhibits to his <u>Statement of</u> <u>Material Facts</u>.  Citations to the evidentiary record shall appear as "P. SMF ¶ #" or as "P. Ex. #".  Whenever possible, citations shall include the page number of the exhibit or deposition.

## I.  INTRODUCTION

The Eleventh Circuit announced the legal standard for evaluating this matter in

_Kingsland v. City of Miami_, 382 F.3d 1220, 1228-29 (11ᵗʰ Cir. 2004).

> Next, we consider whether the defendants' investigation was constitutionally deficient.  [. . . ] Appellant contends that, objectively, officers should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon.  We agree.
> [. . . ]
> A qualified immunity analysis must charge the officer with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances . . . A police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest.
> [. . .]
> We recognize, however, that a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.  Nevertheless, an officer may not choose to ignore information that has been offered to him or her . . . Nor may the officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts.

The City of McDonough, together with its agent, Defendant Kenneth Noble, Defendant William Stokes, and former Defendant John Abernathy literally turned a blind eye to the most basic type of exculpatory evidence - physical appearance.

Armed with nothing more than a casual observation by a jail trustee, Noble, Abernathy and Stokes decided to place a seven year old drivers' license photograph of John Kirk Owens into Photographic Line-Ups.  They made no effort to first determine whether the photograph actually depicted Owens as he appeared in the fall of 2007. They did not care.

Noble tried it first, but none of his witnesses identified Owens. A competent law enforcement official would have stopped right there, but Noble is anything but competent. Without a shred of evidence to corroborate the casual observation of his "reliable informant," Noble handed Owens' outdated photograph over to Abernathy and Stokes. Abernathy showed it to his witnesses and, as fate would have it, two witnesses selected Owens' outdated photograph. Stokes brought it to his victim, who also selected Owens' outdated picture. That was all Abernathy and Stokes needed to swear out arrest warrants.

If Owens had looked anything like he did in his drivers' license picture on November 21st – the day Noble, Abernathy and Stokes appeared outside his home with the SWAT team – this would be a harder case. But Owens looked nothing at all like he did in his drivers' license picture. He looked even less like the actual bank robber. Stokes noticed the stark difference right away. He realized that Owens' "body mass, his weight" did not remotely resemble that of the Suspect. (Stokes Dep., p. 31). But he did nothing to prevent Owens' arrest that night, nor did he bother to withdraw his own arrest warrant for eighteen days.

For his part, Abernathy did not care at all about Owens' actual appearance on November 21st. Abernathy "turned a blind eye" to Owens' appearance.

> I really didn't pay that much attention. [ . . . ] I really didn't assess that as much as, you know, we had Mr. Owens, and that's who I wanted. That's who my arrest warrant was for.

(Abernathy Dep., p. 65).  Abernathy "really just didn't make that determination [about the stark difference in Owens' appearance] . . . [W]we got his name, and I arrested him."  (Abernathy Dep., p. 64).

Not to be outdone, Noble likewise ignored plain, exculpatory evidence staring him in the face as he handed his search warrant to John Owens on November 21st.  Seeing Owens for the first time, Noble claimed that "it was dark, of course.  I couldn't tell you, I mean, how much he weighed."  (Noble Dep., p. 88).  He didn't compare Owens' actual appearance with his appearance in the outdated drivers' license photograph.  (Noble Dep., p. 88-89).  But, according to Noble, it would not have made a difference as there was no difference in Owens' appearance.  (Noble Dep., p. 89).

Q:    So to you they looked the same – exactly the same?

A:    Yes.

(Noble Dep., p. 89).

A simple comparison of three photographs puts the lie in Noble's testimony.  Plaintiff's Exhibit 1 includes three pictures:  (1) a surveillance picture of the suspect; (2) Owens' outdated drivers' license photograph; and (3) Owens' book-in photograph taken on 11/21/2007.  Owens, as he actually appeared on November 21st, looks nothing like the suspect depicted in the surveillance picture.

The suspect is a very large man, with broad shoulders and a bulky upper body. Several witnesses estimated his weight above 250 pounds. Owens weighed 200 pounds, he does not have broad shoulders and is not bulked up in his upper body. The suspect had a mustache – one witness described it as "bushy" – he did not have a goatee. Owens had a well-defined goatee, not a bushy mustache.[2]

The Suspect's face is very round and fat. His cheek bones are not visible beneath his jowly cheeks; his jaw line is non-existent and he has a great deal of fatty tissue under his chin. Owens' face – *on November 21st* – was not particularly round or fat. His cheeks were not puffy. He did not have excessive fat under his chin. His jaw/chin line is visible. (Ex. 3 & 4; compare, Ex. 6 & 7).

Owens' appearance in his outdated drivers' license photograph, however, told a tragically different story. When it was taken, Owens weighed at least thirty pounds more than he did on November 21st. He had a mustache, not a goatee. His face looks round and fat. There is fat under his chin. His jaw line and cheek bones are less apparent. He looks more like the Robber.

This essential, undisputed fact explains how three lay persons chose Owens' outdated photograph as appearing the most like the Robber. It also demonstrates just how incompetent Stokes, Noble and Abernathy really were on November 21st, when

---

[2] If the suspect had <u>more</u> facial hair than Owens, the distinction would be insignificant as a man can always shave away facial hair. In this instance, however, Owens had <u>more</u> facial hair, far more than any ordinary man could possibly grow in less than two days. The Suspect robbed the Capitol City Bank in Bibb County on November 19, 2007 and had a "bushy mustache," not a goatee.

they ignored Owens' actual appearance. Noble, Stokes and Abernathy were either blind (and none of them were on November 21st) or they simply did not care at all about depriving an innocent man of his liberty.

There should be no room for serious debate as to whether these defendants should be entitled to summary judgment on the merits of Owens' claims or on grounds of qualified immunity. The answer is: "No."

- Unlike Abernathy, Stokes and Noble, no objective, reasonable, minimally trained law enforcement official would have ignored Owens' actual appearance on November 21, 2007 and arrested him anyway.

- Unlike Abernathy, Stokes and particularly Noble, no objective, reasonable, minimally trained law enforcement official would have placed a citizen in a Photographic Line-Up based solely on a casual observation by a jail trustee (undercut as it was by what little independent police work Noble performed).

- Unlike Noble, no objective, reasonable, minimally trained law enforcement official would have represented Owens as a potential suspect to other law enforcement agencies after his own witnesses failed to pick him from a Photographic Line-Up and independent police work failed to corroborate the observations of the jail trustee.

- Unlike Noble, no objective, reasonable, minimally trained law enforcement official would have appeared before a magistrate judge on November 29th and withheld plainly exculpatory evidence to secure an arrest warrant charging Owens with the First Bank robbery.

- Unlike Noble, no objective, reasonable, minimally trained law enforcement official would have based probable cause to secure an arrest warrant solely on identifications by witnesses to other crimes in other counties, when none of the *actual witnesses* to the First Bank robbery identified Owens as the robber.

- Unlike Stokes, no objective, reasonable, minimally trained law enforcement official would have waited *eighteen days after* concluding that Owens was not the person who robbed the Marathon Store to recall the arrest warrant for armed robbery.

The conduct of these Defendants illustrates what the Supreme Court had in mind when it declared that qualified immunity would not protect "plainly incompetent" public officials. <u>Malley v. Briggs</u>, *475 U.S. 335, 344 106 S. Ct. 1092 (1986)*.

"Qualified immunity is, as the term implied, qualified. It is not absolute. [ . . . ] The principles behind qualified immunity would be rendered meaningless if such immunity could be invoked to shelter officers who . . . allegedly flout the law, abuse their authority and deliberately imperil those they are employed to serve and protect." <u>Kingsland</u>, *supra*, at 1234. The Court should deny summary judgment to these defendants.

## II. STATEMENT OF THE CASE

John Kirk Owens filed this lawsuit on November 18, 2009. (Doc. # 1 ). The four original defendants were served with summons and filed Answers with the Court. (Doc. # 3-6 (service); 10-12 (Answers)). The parties conducted a Rule 16/26 conference on January 14, 2010 and submitted their Rule 16/26 Report on January 20, 2010. (Doc. # 27). Former Defendant Abernathy moved for dismissal at the pleadings stage and the Court granted his motion on September 29, 2010. (Doc. # 21-24 & 37 (Order) ).3

---

3 During the Scheduling Conference held on November 9, 2010, Owens' counsel confirmed that the Court's Order dismissing Abernathy was not a "final order" triggering Owens' time to file a notice of appeal. Owens reserves the right to file a notice of appeal from the Order when the Court enters final judgment in this matter.

The remaining parties participated in a Scheduling Conference with the Court and, thereafter, conducted discovery. Following a brief extension, the parties completed discovery on or about July 31, 2011. (Doc. # 52). Defendants City of McDonough, Georgia and Kenneth B. Noble filed their Motion for Summary Judgment on August 30, 2011. (Doc. # 54-56). Defendant William Stokes filed his Motion for Summary Judgment on September 9, 2011. (Doc. #64-65).4 Thereafter, the Court granted Owens' request to permit filing of his responsive pleadings on October 10, 2011. (Doc. # 67).

## III.  ARGUMENT AND CITATION OF AUTHORITIES

In accordance with Fed. R. Civ. Pro. 56 and Local Rule 56, Owens has submitted a separate <u>Statement of Material Facts To Which There Remains A Genuine Issue to Be Tried</u> ("Owens SMF"). Each separately enumerated fact is supported by citations to record evidence and the relevant evidentiary materials are attached as exhibits. To avoid redundancy and space limitations, Owens relies upon the facts set forth in Owens SMF and does not fully recite the relevant facts herein. Instead, Owens turns directly to the legal arguments presented by the Defendants' <u>Motions</u>.

### A.  THE SUMMARY JUDGMENT STANDARD

As a matter of law, summary judgment is only appropriate when there is "no *genuine* issue as to any *material* fact. " Fed. R. Civ. P. 56(c) (emphasis added). A *genuine*

---

4 The Court granted Stokes a brief extension of time to file his motion. (Doc. # 63).

issue of material fact exists "**if the evidence is such that a reasonable jury could return a verdict for the non-moving party**." *Anderson et al v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Materiality, in turn, is nothing more than "**a criterion for categorizing factual disputes in their relation to the legal elements of the claim and <u>not</u> a criterion for evaluating the evidentiary underpinnings of those disputes**." *Id.* (emphasis added). Therefore, "the judges' function is not himself to weigh the evidence and determine the truth of the matter; but to determine whether . . . the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250-251.

The Court must consider "the entire record, [and] '**disregard all evidence favorable** to the moving party that the jury is not required to believe.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110-2102 (2000) (emphasis added).

> Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.

*Id.* at 255. Finally, the non-movant is not required to "produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex*, 477 U.S. at 324.

**B.      NOBLE IS NOT PROTECTED BY QUALIFIED IMMUNITY**

Noble applied for an arrest warrant for John Owens for a robbery at the First Bank in McDonough knowing that no witness or victim from the bank picked Owens out of a photographic line-up; that no evidence tied Owens to the crime; that no evidence tied Owens' vehicle to the crime; that no proceeds from the crime ever ended up with Owens, and that Owens, once viewed in person by Noble, could not have been the man captured on the bank's security camera.  Noble cannot credibly maintain that he is entitled to qualified immunity.

As Noble secured an arrest warrant for Owens, the relevant line of authority flows from the Supreme Court's decision in *Malley v. Briggs*, 475 U.S. 335, 344 106 S. Ct. 1092 (1986).  *See, e.g., Garmon v. Lumpkin County*, 878 F.2d 1406 (11th Cir. 1989); *Jones v. Cannon et al*, 174 F.3d 1271 (11th Cir. 1999).  In *Malley*, *supra*, a state patrolman, acting pursuant to a court-authorized wiretap on a third-party's telephone, monitored two phone calls that implicated the plaintiffs in illicit drug use.  *Malley*, 475 U.S. at 337-38. Based on these two calls, the state patrolman applied for two felony warrants for conspiracy from a magistrate.  The plaintiffs' arrests were published in local and statewide newspapers.  The charges were dismissed, and the plaintiffs sued alleging violations of their Fourth Amendment rights. *Id.*

The Supreme Court held that officers who apply for arrest warrants with a magistrate judge would be protected by qualified immunity, unless "*on an objective*

*basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue.*"  *Id.* at 341.  The Court explained the pertinent inquiry to be:  "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."  *Id.* at 345.  The Court also concluded that a magistrate's subsequent decision to issue the warrant affords no protection to the officer.  Instead, the Court held that, "[w]e find it reasonable to require the officer applying for the warrant to minimize this danger[5] by exercising reasonable professional judgment."  *Id.*

Cases subsequent to *Malley* focus principally on whether the officer seeking a warrant made "knowingly or recklessly false, or materially misleading statements to support a warrant.  *See, e.g., Garmon,*  878 F.2d at 1410-11; *Kelley v. Curtis*, 21 F.3d at 1554; *Jones v. Cannon*, 174 F.3d at 1285 (11th Cir. 1999).  But the Court's holding in *Malley* leaves no doubt that, even in the absence of "knowingly or recklessly false statements" in a warrant application, a law enforcement officer should be held liable when the warrant application "**is so lacking in indicia of probable cause as to render official belief in its existence unreasonable**."  *Malley*, 475 U.S. at 345. (emphasis supplied).[6]

---

[5]"[T]his danger" refers to the subject of the previous sentence.  "But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should."  *Id.*

[6]The Supreme Court's decision in *Malley* actually turned on this second inquiry, thereby confirming that veracity in the warrant application is not the sole consideration in evaluating liability.

1.      <u>A Well-Trained Officer in Noble's Position would have known that his Affidavit Failed to Establish Probable Cause and would not have taken out the Warrant for John Owens</u>

The United States Supreme Court "has held that the standard of objective reasonableness delineates the degree of qualified immunity accorded an officer whose request for a warrant ultimately causes an unconstitutional arrest." *Garmon*, 878 F.2d at 1409. *See United States v. Leon*, 468 U.S. 897, 919-20 (1984); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Under this standard, conduct that violates 'clearly established statutory or constitutional rights of which a reasonable person would have known,' will support liability under 42 U.S.C. § 1983." *Garmon*, 878 F.2d at 1410 *citing Harlow*, 457 U.S. at 818. Applying the standard in the context of an unlawful arrest, the question is whether "a reasonably well-trained officer in the petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345 (1986).

In his investigation into the robbery of First Bank in McDonough, Detective Noble had no leads. A jail trustee told Noble that the still photograph from surveillance camera at First Bank looked like a person he knew – John Owens. Noble did nothing to determine the reliability of this informant. Noble testified that he was unaware of any information the informant had provided law enforcement in the past much less whether law enforcement had been able to corroborate information provided by the source. The source had not previously identified any suspects for law enforcement. The jailhouse

source had never previously provided information that had been used by law enforcement to establish probable cause for a search warrants or arrest warrants.  The source had not cooperated with law enforcement in any sting or undercover capacity.

Noble did not investigate to see if Owens – *as he looked in November of 2007 -* actually resembled the man in the First Bank surveillance photos.  Worse still, Noble ordered Owens' drivers' license photograph knowing that it was at least three years old, but made no effort to confirm that Owens' appearance had not changed.  As a result, Noble placed an outdated photograph of Owens depicting him with a mustache and a very fat face – not unlike the robber – but very much unlike Owens' actual appearance.

Despite Noble's incompetence, the victim and witnesses at First Bank did not pick Owens out of the line-up.  Noble's so called investigation uncovered nothing to corroborate Hatcher's "fly-by" identification of Owens.  Accordingly, Noble had no direct or circumstantial evidence that Owens committed the First Bank Robbery.

In the absence of evidence, Noble based his arrest affidavit on identifications made by witnesses to other crimes in other counties.  In his view, these identifications were sufficient to establish probable cause because the robber in those crimes had the same *modus operandi* and looked like the perpetrator of the First Bank robbery.   Noble was wrong.  "[P]robable cause for the first warrant, cannot of itself supply probable

cause for the second warrant.  Instead, the latter warrant must rest on its own bottom--

its own factual predicate." *Yattoni v. Oakbrook Terrace,* 801 F. Supp. 140 (N.D. Ill. 1992). [7]

In *Ortega v. Christian,* 85 F.3d 1521 (11th Cir. 1996), Metro-Dade Police

Department was investigating a robbery and confidential informant informed them that

he knew the person who committed the robbery.  *Id.* at 1523.  At the plaintiff's

residence, the informant identified the plaintiff as the perpetrator.  *Id.*  The victim of the

robbery, however, never identified the plaintiff as the perpetrator and was never shown

a photo lineup.  *Id.*

The Eleventh Circuit considered whether an informant's tip rises to the level of

probable cause.  The Court cited several factors to consider including the informant's

veracity, reliability and basis of knowledge.  *Id.* at 1525.  *See United States v. Gonzalez,*

969 F.2d 999, 1002 (11th Cir. 1992).  "In addition, the corroboration of the details of an

informant's tip through independent police work adds significant value to the probable

cause analysis." *Ortega,* 85 F.3d at 1525.  *See Gonzalez,* 969 F.2d at 1003.  The Court

applied these factors and concluded that the informant's tip lacked essential elements to

support probable cause.  *Id.*

---

[7] This premise is consistent with Georgia law on the use of similar transactions.  In a prosecution for the
First Bank robbery, the Bibb and Twiggs county robberies could only be introduced for a limited purpose
as "similar transaction" evidence.  The State could only use evidence from these offenses subsequent to
putting up evidence that the defendant committed the offense charged in the indictment.  *See e. g.,*
*Gilstrap v. State,* 261 Ga. 798, 799 (1991).

Just as in *Ortega*, the information provided to Noble by the jail trustee lacked essential elements to support probable cause. Noble admitted that the jail trustee had "no past history [with MPD] which could lend support to the informant's veracity and reliability." *Ortega*, 85 F.3d at 1525. Noble had no independent information that the jail trustee actually knew Owens. Finally, Noble took "no independent steps to investigate the informant's tip" and he had no evidence "corroborat[ing] the informant's identification of [Owens]." *Id.*

Noble did nothing to determine the jailhouse informant's "veracity," "reliability," or "basis of knowledge." Noble did not conduct meaningful surveillance or make contact with Owens to confirm or rebut the informant's claim. He knew from the informant that Owens ran a fencing company, yet Noble made no effort to interview any of Owens' recent customers. The few investigative steps Noble took either failed to corroborate the informant's claim or directly contradicted the claim.

The Eleventh Circuit held that the officer lacked probable cause to arrest and detain the plaintiff in *Ortega*. The same result should follow in this matter as the only evidence Noble had tying Owens to the First Bank robbery was an identification by an unreliable jail trustee.

In *Tillman v. Coley*, 886 F.2d 317 (11th Cir. 1989), an undercover officer purchased a quantity of marijuana from a person giving the name "Mary Tillman" and looked to be about 24 years old. *Id.* at 318. The defendant, Sheriff Coley, knew a Mary Tillman in the

community; knew she lived 200-300 feet from the drug transaction, but knew that she was about forty-one years old rather than closer to the age the undercover officer had reported. *Id.* Despite this knowledge, the defendant did no investigation to clear up or dispel the age discrepancy. Furthermore, the defendant did not inform the magistrate judge of the age discrepancy or the defendant's concerns about it. *Id.*

The Eleventh Circuit considered whether a reasonably well-trained officer with the information in the undercover police officer's report and the knowledge that the defendant had in regard to the age of the plaintiff would have known that probable cause did not exist. *Id.* at 320. The court found the defendant's application for the arrest warrant to be unreasonable and denied qualified immunity. *Id.* at 320-21.

Any objective, reasonably competent law enforcement official possessing the same knowledge as Noble would have known that no probable cause existed to support the warrant application. Summary judgment should be denied.

2. Noble's Affidavit is Insufficient on its Face And Omitted Material Facts.

Noble averred that Owens entered the bank and robbed Hannah Jones. This is precisely the kind of conclusory assertion disapproved in *Garmon,* 878 F.2d at 1408. In *Garmon*, the officer who swore out the warrant stated that the arrestee had committed the offense of false report of a crime. The Eleventh Circuit explained that "such a conclusory assertion is insufficient to establish probable cause." *Id.* Furthermore, [b]ecause the affidavit contained nothing but the investigator's conclusion that [the

plaintiff] had committed the crime, the magistrate could not possibly have conducted the independent assessment required by the fourth amendment . . ." *Id.* at 1409. *See Giordenello v. United States,* 357 U.S. 480, 486 (1958) (magistrate "should not accept without question the complainant's mere conclusion that the person whose arrest is sought committed a crime"); *Johnson v. United States,* 333 U.S. 10, 14 (1948) (protection afforded by the fourth amendment consists of requiring that inferences from facts leading to the complaint "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime").

Noble provided nothing to the magistrate to help him reach an informed decision as to the presence or absence of probable cause. The application contains no facts at all. The identified victim is, in fact, not the victim at all; she was a witness to the robbery. She failed to pick Owens out of a line up, just like the other First Bank witnesses. Noble admitted that he did not give the magistrate evidence of probable cause information arising from the First Bank robbery; instead, he told him that Owens had been identified for robberies that occurred in other counties. (Noble Dep., p. 97-98).

If the Court somehow approves of Noble's conclusory affidavit, the Court cannot also ignore Noble's intentional omission of relevant, material evidence in his warrant application. An officer "who intentionally or with reckless disregard omits facts material to an affidavit's probable cause violates the Fourth Amendment." *Madiwale v.*

*Savaiko*, 117 F.3d 1321, 1326-27 (11th Cir. 1997).  The Eleventh Circuit permits the plaintiff to show recklessness without direct evidence.  A court, instead, can infer recklessness from the omission itself if the fact is "'clearly critical to a finding of probable cause.'"  *Id.* at 1327 *quoting United States v. Martin*, 615 F.2d 318, 319 (5th Cir. 1980).  In other words, the omitted fact is material if, when added to the application, probable cause no longer exists.  *Madiwale,* 117 F.3d at 1327.

Noble omitted material facts that, in this case, would have destroyed the false pretense of probable cause maintained in Noble's conclusory affidavit. Noble omitted that the victim and witnesses failed to identify Owens in a photo line-up.  He omitted that Owens did not own a truck resembling the getaway car.  He omitted that a search of Owens' residence failed to turn up any incriminating evidence. Most critically, he omitted that Owens' actual appearance did not resemble that of the criminal who robbed the bank.  Only a jury can determine if Noble omissions were intentional or demonstrated a reckless disregard for the truth.  Noble violated the Fourth Amendment and is not entitled to summary judgment.

In *Evans v. City of Plant City*, 2007 WL 2916454 (M.D. Fla. 2007), the officer was investigating a home invasion robbery by several perpetrators.  One admitted perpetrator identified the plaintiff as one of the robbers.  *Id.*  The officer put the plaintiff's photo in a line-up and showed the victim who identified the plaintiff as one of the robbers.  *Id.*  The officer indicated in the application that the plaintiff had been

identified by other members of the gang he had been affiliated with. The court in *Evans* found that the officer had "misled the reviewing judge by suggesting, if not directly stating that [fellow gang members] had identified the plaintiff." *Id.*

Noble told the magistrate judge that Owens robbed Hannah Jones, but failed to inform the magistrate that Jones and the other witnesses did not identify Owens. The slim, fact-deficient affidavit implied that Owens had been identified as the robber of the First Bank in McDonough. Noble admitted as much in his deposition. This Court should not tolerate such conduct by law enforcement.

3.    Noble's Investigation was Constitutionally Deficient

A qualified immunity analysis "must charge [the officer] with possession of all the information reasonably discoverable by an officer acting reasonably under the circumstances . . . '[A] police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir. 2004) *quoting Sevigny v. Dicksey*, 846 F.2d 953 (4th Cir. 1988). In *Kingsland*, the Eleventh Circuit also agreed that "officers should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon." *Id*. at 1228.

In *Kingsland*, the plaintiff was involved in an accident with an off-duty City of Miami police officer. A number of officers from the Miami Police Department responded to the scene and conducted an investigation that ultimately resulted in the

plaintiff's arrest for driving under the influence of marijuana. *Kingsland, 382 F.3d at 1223-25.* Viewed in the light most favorable to the plaintiff, the evidence demonstrated that these officers ignored several witnesses at the scene and failed to take the kind of investigatory steps that officers would normally take to collect physical evidence that – if it existed – would have supported their contention that the plaintiff was under the influence of marijuana. *Id. at 1225-1230.*

Noble literally "turned a blind eye" to exculpatory evidence when he saw Owens on November 21st – at the scene of his arrest – and chose to ignore the startling reality that Owens looked nothing at all like the perpetrator. Owens was obviously lighter – by all appearances, at least fifty pounds lighter – than the perpetrator. Owens had a goatee; just two days earlier, the suspect only had a mustache when he was captured on surveillance cameras at Capitol City bank. Noble's fellow officer - Stokes - immediately noticed that John Owens was not the guy;[8] he just decided not to do anything about it.

    C.     STOKES IS NOT ENTITLED TO THE PROTECTION OF QUALIFIED IMMUNITY AND CAUSED ILLEGAL DETENTION OF OWENS

Lt. Stokes was investigating an armed robbery at a Twiggs county convenience store. Despite having the robbery captured on the store's video, Lt. Stokes had no leads. Believing that the Twiggs armed robbery appeared to look similar to the Bibb county robbery, Stokes got a photographic line-up from Bibb County containing John Owens. Stokes had never conducted a photographic line-up before in his career. Stokes

---

explained nothing to the victim to assist in achieving good identification.  Stokes did

not tell her that the fact that the line-up was being shown did not mean that police had

a suspect; that she did not have to make a selection; that is just as important to let

innocent persons go as it is to identify perpetrators or any other cautionary language.

Once the victim picked Owens out of the line-up, Stokes immediately made application

for an arrest warrant.

After taking out the arrest warrant, Stokes accompanied Noble and Abernathy to

the residence of Owens where the three detectives intended to arrest Owens and

execute a search warrant on his house.  Once Stokes saw Owens in person, Stokes knew

that was not they robber.  He wrote in his report that upon seeing Owens face-to-face,

Owens did not look like the perpetrator.  The reasons are plain from comparing the

book-in photograph of John Owens with the still photographs of the robbery.  Owens

appears to be 50 or so pounds lighter and has a goatee which was the perpetrator did

not appear to have on the stills and no witness ever described him with a goatee.

What did Stokes do with the doubts that he harbored about John Owens?  He did

nothing.  He did not go meet with Noble and Abernathy and say, "Hey if we believe

that the same guy did all three of these robberies and I can plainly see he's not the guy I

was looking for, maybe he's not the guy you two are looking for either."  He just went

back to Twiggs county.

Importantly, Stokes did nothing to withdraw the warrant he had procured prior to seeing John Owens. Because Stokes did not take any action on the warrant, it was remained a hold in place while Owens sought a preliminary hearing and bond in Bibb county. As it turns out, Owens was given a low bond on December 7,. Posting the bond at that time would have been a futile act because Stokes' warrant was not cleared until December 10. If Owens had posted bond on December 7, he would not have been freed from custody due to the Twiggs county hold that remained in place until December 10.

Until and unless the Twiggs county warrant was dismissed and the hold lifted, Owens could not be freed from custody. Because Stokes did not move to dismiss the warrant until December 7 despite having harbored doubts about Owens being the perpetrator since November 21, Owens was not able to be released from Bibb county detention center until December 10. Moreover, the hold from Twiggs county was not cleared until December 10. Had Stokes moved to dismiss the warrant back when he saw that Owens could not have been the robber, then the hold from Twiggs county would have been removed long before December 7. Had the hold been cleared prior to December 7, then Owens could have been freed from jail as soon as he posted the bond set on December 7. As it turned out, Owens had to remain in jail for three days after receiving a bond because Stokes did not move to dismiss the warrant in Twiggs county until December 7. It took another three days for the hold to clear in Bibb county. Stokes

is responsible for the continued illegal detention of Owens on a warrant Stokes had harbored doubts about for more than two weeks before he moved to dismiss the warrant.

In *Tillman v. Coley,* 886 F.2d 317 (11th Cir. 1989), the Eleventh Circuit criticized the defendant in the case for admittedly harboring doubts about whether the plaintiff was the person an undercover officer had described as the perpetrator, but did nothing about resolving his doubts. The defendant Sheriff had testified that he had "doubts in [his] mind" about the plaintiff's identity. *Id*. at 318. Nevertheless, the defendant allowed her to be arrested and only dismissed the warrant after calling on the undercover officer to take a look at her at the jail. *Id.* The Court pointed out that the defendant had at least three months to resolve his doubts about the plaintiff's identity. *Id.* at 321. "Because of the doubts he harbored, [the defendant's] actions were not reasonable." *Id.*

D.   NOBLE CAUSED HARM TO OWENS

1.   Subsequent Misidentification and Arrest of Owens was a Natural Consequence of Noble's Actions

Detective Noble took the word of a jailhouse source of unknown veracity and reliability and put John Owens in a photographic line-up. Noble failed to turn up any facts to corroborate the statement of the jailhouse source pointing to Owens' involvement in the First Bank robbery. Noble failed to use a photograph of Owens that looked the way Owens appeared during the time of the robberies. Noble failed to find

any witness from the First Bank robbery who agreed with his jailhouse source that Owens was the perpetrator. Noble failed to use his own eyes and judgment to avoid a false arrest of an innocent person. Despite all this, Noble provided Abernathy with the "suspect" John Owens. Abernathy would never have presented a photographic line-up with John Owens to the witnesses in the Bibb County robbery but for Noble offering him up as a suspect (despite the fact that Noble had found no evidence to suggest that Owens had robbed the First Bank in McDonough).

Although Defendants may argue that the investigation of Abernathy which resulted in the arrest and detention of Owens was an intervening act, intervening acts do not break the chain of causation as long as they are natural and foreseeable consequences of the acts. For example, in *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), the arresting officer made use of an impermissibly suggestive show-up resulting in the false arrest of an innocent person. The defendant argued that "it was the action of the prosecutor, in using the impermissibly suggestive identification at trial, which led to [the plaintiff's injury], and not [the defendant's] procurement of the identification itself." *Id.* at 747. The court pointed out that it is true that the actions of the prosecutor constituted an intervening act. "It is not true, however, that the prosecutor's discretion to control the state's case at trial is such an intervening act to excuse [defendant] from the 'natural consequences' of his actions and, therefore, any

tort liability." *Id.* "In constitutional-tort cases, 'a man [is] responsible for the natural consequences of his actions.'" *Id. quoting Monroe v. Pape,* 365 U.S. 167, 187 (1961).

Likewise, in the instant case, Noble should reasonably have known that he was causing a substantial risk that a person his evidence and eyewitnesses had rejected as a suspect could be misidentified once he became the only suspect circulated in the investigation into the Bibb county robbery. The subsequent misidentification and arrest of Owens in Bibb county was a natural consequence of the poor decision to submit Owens to Bibb county as a suspect when Noble had found nothing to develop Owens as a suspect.

### 2. Owens was also Arrested on the Warrant taken out by Noble

Owens made bond in Bibb County on December 10th, after Twiggs County finally released its hold. Owens returned home, checked his messages and learned that he had an outstanding arrest warrant on the First Bank robbery. Owens turned himself into the Henry county jail during the early morning hours of December 12th. He remained in custody for most of day. He appeared before a magistrate who set a bond. A friend made his bond for him. Owens spent 7 to 8 hours in custody solely on the arrest warrant issued at the behest of Noble.

When Owens appeared in court, Noble's supervisor, Kyle Helgerson, was present. Helgerson saw Owens for the first time. He immediately knew that Owens was not the same person depicted in the surveillance still photo from the First Bank

robbery (*See* Helgerson Dep., p. 48). " . . . **I was pretty confident, it was not the perpetrator**." (Helgerson Dep., p. 48). Helgerson went to a magistrate judge and asked him to dismiss the warrant.

       E.        T<small>HE</small> C<small>ITY</small> O<small>F</small> M<small>C</small>D<small>ONOUGH</small> – R<small>ATIFICATION</small> O<small>F</small> N<small>OBLE'S</small> U<small>NCONSTITUTIONAL</small> A<small>CTIONS</small>

At the summary judgment stage, the City of McDonough only seeks dismissal as to Owens' *Monell* claims based upon a failure to train theory of liability. However, Owens also pled a separate theory of liability – ratification – in his Complaint. (Doc. # 1, ¶190). In *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), a plurality of the Supreme Court reasoned:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Id*. *see also*, *Matthews v. Columbia County*, 294 F.3d 1294, 1297-98 (11th Cir. 2002). Owens presents sufficient evidence that the City of McDonough, through the actions of Chief Preston Dorsey and Captain Kyle Helgerson, ratified Noble's unconstitutional actions, as well as the basis for his actions.

Helgerson testified that as the Captain over the Criminal Investigations Unit, he has authority to direct the course of investigations. Helgerson reports directly to Chief Dorsey. In a major investigation, Helgerson and Dorsey are involved in the decision

making process. In this case, Helgerson testified that he kept Dorsey appraised of developments in the case and, in turn, Noble met with Helgerson to discuss his progress in the investigation.

Helgerson, with Dorsey's knowledge and approval, ratified several steps in Noble's constitutionally deficient investigation. Helgerson met with Noble and the jail trustee who identified Owens as the possible suspect. Helgerson approve Noble's decision to put Owens in a photographic line up based upon the information provided by the jail trustee. After Owens was arrested on the Bibb County warrants, Helgerson met with Noble to discuss the case. Helgerson knew that none of the First Bank employees picked Owens from the line up. He knew that Owens did not own a Chevrolet Silverado. He knew that Noble had been unable to corroborate any other part of the jail trustee's story. Finally, he knew that Noble intended to secure an arrest warrant for Owens based solely upon identifications made by witnesses to other crimes in other counties.

According to Noble, Helgerson ordered him to apply for an arrest warrant for Owens. According to Helgerson, Noble made his own decision to apply for the arrest warrant after meeting with Helgerson. Helgerson only admits that he told Noble that he thought he had probable cause to seek a warrant. This disputed issue is material to Owens' ratification theory of liability and must be resolved by a jury.

## IV. CONCLUSION

For the within and foregoing reasons, Owens respectfully requests that the Court

deny summary judgment to the Defendants.

This  10th   day of October, 2011.

/S/William J. Atkins
William J. Atkins
Georgia Bar No. 027060

**ATKINS & FIFE, LLC**
6400 Powers Ferry Road
Suite 355
Atlanta, GA 30339
404-969-4130
bill@atkinsfife.com

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| JOHN KIRK OWENS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | FILE NO.: 5 : 09-CV-399 |
| | : | |
| CITY OF McDONOUGH, GEORGIA, | : | |
| KENNETH B. NOBLE, | : | |
| JOHN ABERNATHY | : | |
| WILLIAM STOKES, | : | |
| | : | |
| Defendants. | | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2011, I electronically filed the foregoing **PLAINTIFF'S CONSOLIDATED BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to:

Andrew J. Whalen, III
THE WHALEN LAW FIRM LLP
101 South Hill Street
Griffin, Georgia  30224
Ajwhalen3@whalenlaw.net

Jason Waymire
Williams, Morris & Waymire, LLC
4330 South Lee Street, Bld. 400, STE A
Buford, Georgia  30518
jason@wmwlaw.com

This   10th   day of October, 2011.

/S/William J. Atkins
William J. Atkins
Georgia Bar No. 027060

**ATKINS & FIFE, LLC**
6400 Powers Ferry Road, Suite 355
Atlanta, GA 30339
404-969-4130
bill@atkinsfife.com