**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

JOHN KIRK OWENS,        :
                              :

      Plaintiff,         :

                              :     CIVIL ACTION
v.                         :     FILE NO.: <u>5: 09-CV-399</u>

                              :
CITY OF McDONOUGH    :
GEORGIA, KENNETH B. NOBLE,  :
and WILLIAM STOKES,     :

                              :
      Defendants.

## <u>PLAINTIFF'S CONSOLIDATED STATEMENT OF MATERIAL FACTS TO WHICH THERE EXISTS A GENUINE ISSUE TO BE TRIED</u>

**COMES NOW**, Plaintiff John Kirk Owens, by and through his counsel of record,

and pursuant to Fed. R. Civ. Pro. 56(c ) and Local Rule 56 submits <u>Plaintiff's Statement</u>

<u>of Material Facts To Which There Remains A Genuine Issue To Be Tried</u>, as follows:

**I.    JOHN KIRK OWENS**

1.    Owens is a life-long resident of McDonough in Henry County, Georgia.  (<u>Deposition</u>

<u>of John Owens</u>, p. 8, attached hereto as <u>Exhibit</u> <u>A</u> and hereinafter cited as "Owens

Dep., p. #").

2.    He graduated from Henry County High School in 1984. (Owens Dep., p. 9).

3.    Owens has two boys, John Wesley and Justin, who both attended school in

McDonough, Georgia. (Owens Dep., p. 10-11).

4. Owens has owned and operated McDonough Fence Company for a little over twenty-five years. (Owens Dep., p. 8).

5. In November of 2007, Owens lived on his father's farm at 1802 Old Jackson Road, Locust Grove, Georgia 30248. (Owens Dep., p. 12; 56).

6. Owens maintains his bank accounts at the Macintosh State Bank in Henry County, Georgia. (Owens Dep., p. 14).

7. In the Fall of 2007, Owens owned the following vehicles, all of which were properly registered with the Georgia Department of Motor Vehicles:

   a. 1986 Ford Truck – VIN # 1FTHF25H9GNB05239

   b. 1997 Ford Truck – VIN # 4FGL28207VA266064

   c. 2000 Ford Truck – VIN # 1FDXW46F7YEC71258

   d. 1994 Ford Truck – VIN # 1FDLF47F9REA38352

   (*Georgia Department of Motor Vehicles* - *Vehicles By Customer*, attached hereto as Exhibit 8; Owens Dep., p. 36-37).

8. Owens did not own a Chevrolet Silverado – either gold, taupe or champagne in color. (Owens Dep., p. 37).

9. Owens has never owned a Silverado truck. (Owens Dep., p. 37).

10. Owens sold his last Chevrolet product in 1985. (Owens Dep., p. 37).

11. In the Fall of 2007, Owens was forty-one years old. (Owens Dep., p. 8).

12. Owen is 5'10" tall. (*Bibb County Jail Records* – *Intake Screen and Health History*, attached hereto as Exhibit 5).

13. Owens has blue eyes. (*Bibb County Jail Records* – *Book In Photograph*, attached hereto as Exhibit 3).

14. Owens does not have broad shoulders and is not bulked up in his upper body. (Ex. 3 & *John Kirk Owens* – *11/10/2007 Photograph*, attached hereto as Exhibit 4).

15. On November 21, 2007, Owens weighed 200 pounds. (Ex. 5).

16. On November 21, 2007, Owens had a goatee, not a bushy mustache. (Ex. 3).

17. In November of 2007, Owens' hair line receded significantly from his forehead. His hair was brown and was not graying. (Ex. 3 & 4).

18. In November of 2007, his face did not appear round. His cheeks were not puffed out and obviously fat. He did not have excessive fat under his chin that caused his jaw/chin line to disappear. (Ex. 3 & 4; compare, Ex. 6 & 7).

19. Owens' stomach area did not protrude significantly over his waist line. (Compare Ex. 4 and 7).

20. Owens renewed his drivers' license in 2004 by mailing in the renewal form; he did not have a new photograph taken. (Owens Dep., p. 102-03).

21. Owens' drivers' license photograph was taken in either 1999 or 2000, seven years before the robberies in September – November, 2007. (Owens Dep., p. 102).

22. In 1999-2000, when his drivers' license photograph was taken, Owens was at least thirty pounds heavier than he was in September - November of 2007. (Owens Dep., p. 21).

23. Owens was diagnosed with Diabetes in 2006 and dropped at least thirty pounds in weight prior to September – November, 2007. (Owens Dep., p. 21).

24. Owens' drivers' license photograph did not fairly and accurately depict Owens' actual appearance in September-November of 2007. (Compare, Ex. 2 & 3, 4).

25. Owens' drivers' license photograph depicted his face to be rounder and fatter, particularly in the area of his cheekbones and his jaw/chin line. (Compare, Ex. 2 & 3, 4).

26. In 1999-2000, when his drivers' license photograph was taken, Owens had a mustache, but was otherwise clean shaven. (Ex. 3).

27. The specific nature of the inaccuracies – fatter, rounder face and mustache – were critical to the issue of identification, given the appearance of the unknown robber responsible for committing crimes in Twiggs County (September 27, 2007), McDonough (October 27, 2007), Bibb County (November 2 and 19, 2007) and Henry County (December 12, 2007). (Compare, Ex. 2 & 6, 7).

## II. THE BUBBA BANDIT: SEPTEMBER 27 – DECEMBER 12, 2007

28. Between September 27, 2007 and December 12, 2007, an unidentified white male suspect (hereinafter "Suspect") robbed one convenience store and four banks in Twiggs, Bibb and Henry County. (*See*, *Infra*, ¶¶ 28-63).

29.     Images captured from security videos during the robberies depict a heavy-set, barrel-chested white male.  His face is very fat and round.  His jaw/chin line and his cheek-bones are not readily discernible because his face is very fat.  He appears to have a small mustache in several images, but not a goatee.  (_Twiggs County Photographs_, attached hereto as Exhibit 8; _Bibb County Photographs_, attached hereto as Exhibit 9; _Henry County Bolo_, attached hereto as Exhibit 10).

30.     The Suspect wore a long sleeved denim shirt, jeans and white tennis shoes.  (Ex. 8-10).

31.     The Suspect wore a floppy, camouflage hat that covered his hair.  (Ex. 8-10).

32.     He wore dark, wrap- around sunglasses. (Ex. 8-10).

33.     The Suspect left the scene of each robbery in a Chevrolet Silverado pick-up truck. The truck was champagne, gold or taupe in color. (_Twiggs County Photographs_ of Get-Away Truck, attached hereto as Exhibit 11; see also).

**September 27, 2007 - Twiggs County**
**Armed Robbery at Marathon Gas Station**

34.     At 12:50 p.m. on September 27, 2007, the Suspect walked into a Marathon Gas Station on Highway 96 in Twiggs County, Georgia.  He robbed the store clerk, Ok

Sun Cho, at gun point.  (*Twiggs County Incident Report & Supplemental*, attached hereto as Exhibit 12).

35. Ok Sun Cho, the store clerk, told the responding officer that he Suspect was "a white gentleman wearing a cowboy hat."  (Ex. 12).

36. Ok Sun Cho was not asked to prepare a witness statement or write down a description of the subject.  (Ex. ; Stokes Dep., p.  ).

37. A surveillance camera captured several still photographs of the Suspect. He was wearing a floppy hat that obscured his face from view, a long light colored shirt, dark pants, and white tennis shoes. He appeared to have a small mustache, but no other facial hair.  He was big, barrel-chested, and appeared to weigh well over two hundred pounds. (Ex. 8).

38. The surveillance camera captured several still photographs of the man's pickup truck. The truck appeared to be a late model Chevrolet Silverado, champagne or light gold in color, with a rail on the side of the truck box, a 3 ball hitch and an antenna bud on the roof. The truck had a cardboard tag. (Ex. 11).


### October 27, 2007 – McDonough, Georgia
### Robbery By Intimidation - First Bank

39. The Suspect walked into First Bank in McDonough, Georgia at 12:30 p.m. on October 27, 2007. He walked up to Nichole Adcock's teller window. In a deep,

calm voice, he said, "this is a robbery, my two brothers are in the truck and as long as everyone cooperates, no one will get hurt. We want all of your money, no dye packs. Be calm and everything will be fine. Ms. Adcock put all the cash in her top drawer into the zipper bag the man slid to her; he turned around and walked out of the bank. (_Statement of Nicole Adcock_, Deposition of Kyle Helgerson, Ex. 14).

40.     The first responding officer wrote a report indicating that "the description of the subject changed a few times" but was a "white male, possibly in his 50s, 5'8" to 6'0" feet tall, approximately 225-250 lbs." (Noble Dep., p. 48; Ex. 11).

41.     Adcock described the Suspect as a "White male, late 50s, heavy set about 250 lbs." (Helgerson Dep., Ex. 14).

42.     Hannah Jones, a First Bank employee, described the robber as a heavy set white man with a mustache, camouflage hat, and sunglasses. (Helgerson Dep., Ex. 13).

43.     Wendy Telfer, a First Bank employee, described the robber as a stocky white male who was about 5'9" tall. He wore a big flowing shirt. (Noble Dep., Ex. 11).

44.     Christie Robinson, a First Bank employee, described the robber as wearing a green camouflage hat, black plastic sunglasses, and having a mustache. (Noble Dep., Ex. 11).

45.     Janice Ryan, a First Bank employee, described the robber as a white male, about 5'9"-5'11", weighing 250-260 pounds. (Noble Dep., Ex. 11).

46.     The bank employees filled out Bandit Description Forms provided by the Bank.

The descriptions given by the witnesses varied considerably, as summarized in the

following chart:[1]

| Age | Weight | Height | Build | Stature |
|-----|--------|--------|-------|---------|
| 40-45 – 2x<br>50s – 2x | 200 lbs – 2 x<br>250 lbs – 2 x | 5'4" – 1x<br>5'8" – 2 x<br>5'10" – 2 x | Medium – 3x<br>Larger – 2 x | Medium- 2x<br>Heavy – 3x |

(Ex. 14; Noble Dep., p. 41).

47.     Defendant Kenneth Noble made no effort to memorialize which witness prepared

each form.  (Noble Dep., p. 41-42).

48.     Other witnesses described the "get away" vehicle driven by the robber as a

Chevrolet Silverado pickup truck, gold/taupe in color, with a cardboard tag that

said, "lost tag." (Ex.   )

49.     The First Bank robbery was within the jurisdiction of MPD and ultimately,

Defendant Noble was assigned to lead the investigation.

## November 2, 2007 – Bibb County, Georgia

## Robbery By Intimidation – Colonial Bank

50.     The Suspect entered the Colonial Bank in Bibb County around 1:19 p.m. on

November 2, 2007.

---

[1] The number and "x" following each descriptive item represents the number of witnesses who described this item.

51. He approached Amy Gorham's teller window, slid a black bag into her booth, and said, "this is a robbery and I am armed. As long as you give me the money and be quiet and no one will get hurt. My two brothers are on site." (Ex. 15).

52. He next approached Chiquita Harris' booth and repeated his orders. (Ex. 15).

53. In her written statement, Amy Gorham described the Suspect as "an older gentleman." She said that he spoke very softly and walked with a slight limp. She gave no further physical description of the suspect. (Ex. 15, Bate stamp # 000042-43).

54. Gorham described the Suspect's clothing as a "camp brim hat, black sunglasses, a long sleeve denim button down shirt with a white T-shirt underneath, and denim jeans." (Ex. 15, Bate stamp # 000042-43).

55. In her written statement, Chiquita Harris offered no physical description of the Suspect. (Ex. 15, Bates Stamp # 000044).

56. According to the Incident Report and Narrative, someone described the Suspect as having "a mustache and a stubble beard," being approximately 5'9" tall and weighing 200 lbs. (Ex. 15, Bates stamp # 00041).

57. Harris and Gorham responded to a description questionnaire during the initial investigation of the robbery. The suspect was between 5'7" and 5'9". They both believed he weighed 200 lbs. One described him as "obese" and the other as "stocky." His hair was cut short. One described him as having a mustache and stubble; the other said he was clean shaven. (Ex. 15, Bates stamp # 00039).

58.    The surveillance system failed so no photographs or video was recovered from the Colonial Bank robbery. (Abernathy Dep., p. 18).

59.    None of the witnesses saw how the Suspect left the scene; that is, no one described the "get away" vehicle. Abernathy Dep., p. 19).

### November 19, 2007
### Capitol City Bank Robbery – Bibb County

60.    At 3:42 p.m. on November 19, 2007, the Suspect walked into the Capitol City Bank in Bibb County, Georgia. He walked up to teller Tiffany Coffer with a blue cloth bag. He did not show her a weapon. He told her to put the money in the bag, not to use a dye pack, and she would not be hurt. Ms. Coffer put the money in the blue bag, he took the bag and left the Capitol City Bank. (Ex. 16).

61.    Cofer described the suspect as being "a white male early 50s to mid 50s . . . about 6'2", heavy set guy, facial stubble, not freshly shaven." (Ex. 16).

62.    Responding to the descriptive questionnaire in the Incident Report, Cofer further described the Suspect as having a "stocky" and "obese" build, and having "gray" or "graying" hair. (Ex. 16).

63.    Another witness, Nadia James, described the suspect "as looking to be about 50-55 years of age . . . with a scruffy beard." (Ex. 16).

64.    A third witness, Crystal Swain, described the suspect as a "white male in late forty, early fifties." (Ex. 16).

65.     Cofer described the "get away" vehicle as a late model Chevrolet Silverado pick up with an extended cab, tan in color, with a possible drive out tag covering the license plate of the vehicle. (Ex. 16).

66.     A surveillance camera captured images of the Suspect depicting a very heavy set white man with a big round jowly face and a mustache, wearing a wide-brimmed hat, dark glasses, a light colored shirt hanging over his waist, a white T-shirt, blue jeans, and white sneakers, carrying a small, dark bag in his left hand.  (Ex. 9).

### December 12, 2007
### Enterprise Bank Robbery, McDonough, Georgia

67.     On December 12, 2007, the Suspect entered Enterprise Banking Company in McDonough, Georgia.  He robbed a teller without displaying a weapon.  He fled the scene in a Chevrolet extended cab pickup truck silver or tan in color with silver rails on the truck bed.  (Ex. 10).[2]

### III.     JOHN KIRK OWENS – ALIBI FOR EACH ROBBERY

68.     On September 27, 2007, while the Suspect was robbing Ms. Cho at gunpoint in the Marathon Store in Twiggs County, Georgia, Owens was making a deposit in his

---

[2] Owens was not charged with this offense.  *See*  ¶ 72.

checking account at the McIntosh State Bank in McDonough, Georgia. (*Affidavit of Amanda Crile*, attached hereto as Exhibit 17).

69.     On October 27, 2007, while the Suspect was robbing the First Bank in McDonough, Georgia, Owens was installing some gates at the residence of Charles Toll, 110 Emerald Drive, McDonough, Georgia. (*Documents Compiled by Amanda Crile*, attached hereto as Exhibit 20; see also, Owens Dep., ##).

70.     On November 2, 2007, while the Suspect was robbing the Colonial Bank in Bibb County, Owens was repairing a fence for Southern Pipe and Supply located at 165 McDonough Parkway, McDonough, Georgia 30253. (*Affidavit of Russell Downs*, attached hereto as Exhibit 19).

71.     On November 19, 2007, while the Suspect was robbing Capitol City Bank in Bibb County, Owens was at the home of Shannon Reyome in McDonough, Georgia giving her an estimate on a fence job. (*Affidavit of Shannon Reyome*, attached hereto as Exhibit 18).

72.     On December 12, 2007, while the Suspect was robbing the Enterprise Bank in McDonough, Georgia, Owens was in the Henry County Jail.  Owens had turned himself in on Defendant Kenneth Noble's arrest warrant charging Owens with robbing the First Bank of McDonough on November 2, 2007. (Owens Dep., p. 38; *see also*, Ex. 14).

**IV.     THE CRIMINAL INVESTIGATION**

73. On September 27, 2007, the Twiggs County Sheriff's Office ("TCSO") responded to the scene of the armed robbery at the Marathon store.

74. Deputy Oscar Basley was the first responding officer. He interviewed the victim, Ok Sun Cho, before turning the investigation over to Defendant William Stokes, a criminal investigator for the TCSO. (Ex. 12; _Deposition of William Stokes_, p. 10, attached hereto as Exhibit B, hereinafter cited as "Stokes Dep., p. #").

75. Prior to the Marathon robbery, Stokes had no specialized training in investigations. (Stokes Dep., p. 8).

76. Stokes had served as an investigator for about a year. (Stokes Dep., p. 8).

77. Stokes had never used a Photographic Line-up and, other than mandate training in 1995, he had received no training at all on proper composition and use of Photographic Line-Ups. (Stokes Dep., p. 8-9).

78. When Stokes arrived on the scene of the Marathon robbery, he spoke with Deputy Basley and Ms. Cho. Ms. Cho described the suspect as "a white male wearing blue jeans, a long-sleeved blue shirt, white tennis shoes, and a floppy hat. (Stokes Dep., p. 11).

79. Stokes also reviewed surveillance video footage. The footage switched through numerous cameras. (Stokes Dep., p. 11-12).

80. Stokes did nothing else in furtherance of his investigation into the Marathon

robbery prior to communicating with someone in the Bibb County Sheriff's Office on November 20, 2007. (Stokes Dep., p. 12).

81. On November 20, 2007, Defendant Stokes met with CID Investigator Holliday of the Bibb County Sheriff's Office to review photographs from the respective robberies in Twiggs and Bibb counties. (Stokes Dep., p. 12-14, Ex. 3; Abernathy Dep., p. 23-31).

82. Stokes concluded that the same person likely committed the robberies in Bibb and Twiggs County. (Stokes Dep., p. 13).

83. Between September 27th and November 21st, Defendant Stokes did not independently identify Owens as a "person of interest" or potential suspect for the Marathon robbery in Twiggs County, Georgia. (Stokes Dep., p. 21).

84. In Bibb County, former defendant Abernathy had been assigned to investigate the November 2nd robbery at Colonial Bank. (_Deposition of John Abernathy_, p. 13, attached hereto as Exhibit "C", hereinafter cited as "Abernathy Dep., p. #").

85. Abernathy had no success developing any leads or suspects. The case had grown cold until the November 19th robbery at Capitol City Bank. (Abernathy Dep., p. 21).

86. Abernathy responded to the scene of the Capitol City Bank after hearing the description of the Suspect go out over the radio. It "would have been the age, the long-sleeved denim shirt, the blue jeans, the sneakers, the hat, and the sunglasses." (Abernathy Dep., p. 22).

87.    Abernathy conferred with Detective Paul Osgood, who had been assigned to

       investigate the Capitol City Bank robbery.  Abernathy and Osgood concluded

       that they were looking for the same suspect.  (Abernathy Dep., p. 22-23).

88.    Abernathy and Osgood learned about the Marathon armed robbery in Twiggs

       County around November 20th.  Abernathy understood that the Twiggs County

       investigators "didn't really have any more information that we did."

       (Abernathy Dep., p. 27).

89.    Abernathy and Osgood did not independently identify Owens as a "person of

       interest" or potential suspect for the Colonial Bank (11/2) and Capitol City Bank

       (11/19) robberies prior to speaking with Defendant Kenneth Noble. (Abernathy

       Dep., p. 31-32; 36; 59).

<u>PHASE II: 11/16/07 – 11/21/07</u>
<u>DETECTIVE NOBLE INVESTIGATES JOHN OWENS</u>

90.    Detective Kenneth Noble of the McDonough Police Department (MPD) was

       dispatched to the scene of the investigation of the robbery at First Bank on

       November 2, 2007.  (*Deposition of Kenneth Noble*, p. 36, attached hereto as Exhibit

       "D", hereafter cited as "Noble Dep., p. #").

91.    It was Noble's first robbery investigation.  (Noble Dep., p. 36-37).

92.    Prior to this investigation, Noble had yet to attend P.O.S.T. training in

       "Investigations" - an 80 hour course required for investigators in the

       McDonough Police Department ("MPD"). (Noble Dep., p. 35, Ex. 8).

93. First Bank provided Noble with a DVD of the surveillance footage, together with still photographs captured from the DVD. Noble gave the photographs to the news media and to local jurisdictions. (Noble Dep. p. 51; MPD Investigative File, p. 000009, attached hereto as <u>Exhibit</u> <u>13</u>).

94. From November 2nd – 16th, Noble made no progress with is investigation. (Noble Dep., p. 51-53).

95. On November 16th, 2007, Phillip Daniel Hatcher, an inmate in the Henry County Jail, had been assigned to clean up duty at MPD. (Noble Dep., p. 53-54).

96. Hatcher saw a photograph of the Suspect hanging on a bulletin board in the squad room at MPD. Hatcher approached Noble and told him that he thought he might know the Suspect. (Noble Dep., p. 53, Ex. 13, p. 000024; <u>see also</u>, *Deposition of Kyle Helgerson*, p. 21-25, attached hereto as Exhibit "D", hereinafter cited as "Helgerson Dep., p. #").

97. Noble did not know why Hatcher was in custody. (Noble Dep., p. 53-54).

98. Noble did not know Hatcher at all. (Noble Dep., p. 54).

99. Captain Kyle Helgerson – Noble's supervisor -did not know Hatcher either. (Helgerson Dep., p. 21).

100. Prior to November 16th, Hatcher had never provided information to law enforcement officers that had been corroborated through further investigation or other sources. (Noble Dep., p. 54-55; Helgerson Dep., p. 21-22).

101.    Prior to November 16th, Hatcher had never given information to law enforcement that had been used by law enforcement officers in furtherance of a criminal investigation. (Noble Dep., p. 54-55; Helgerson Dep., p. 22).

102.    Hatcher had never worn a wire as part of an undercover investigation supervised by law enforcement officials. (Noble Dep., p. 55).

103.    Noble described Hatcher as a "reliable source." (Noble Dep., p. 54).

104.    Hatcher wrote a statement for Noble.

> Working at Mc. Police station.  Saw a picture (for robbing a bank) of a wanted man.  Told detective I think I knew this person.  His name is John Owens.  Told him where he lives (corner of old Jackson and Coahn (sic)).  I worked with him on the side a couple of years ago. He owns McDonough Fence Company.  And he last time I saw him (about 4 to 5 months ago) e was going through a divorce.  He was talking about bankruptcy and his business was not doing well.  And that he wanted to keep his kids.  I have know (sic) him since around 1997.

(Noble Dep., p. 55-57, Ex. 11).

105.    Noble did not take any steps to corroborate Hatcher's story that he had worked for Owens.  (Noble Dep., p. 56).

106.    Between November 16th and November 21st, Noble did nothing to follow up on Hatcher's statement that the Suspect looked like Owens. (Noble Dep., p. ; Ex. 11).

107.    On November 21, 2007, Bonnie Bray, another employee of First Bank, contacted Noble because she had seen evening news coverage of the robbery at Capitol City Bank. She felt the description of the robber and the robbery sounded very much like the robbery at First Bank. (Ex. 13, p. 32).

108. During the morning of November 21st, Noble took steps to corroborate Hatcher's statement that the Suspect looked like Owens. (Noble Dep., p. 57-58; Ex. 13, p. 000075).

109. Noble pulled Owens' drivers license information. Owens' drivers' license was valid. (Noble Dep., p. 58, Ex. 13, p. 000036-37).

110. The drivers' license record Noble pulled showed that Owens had renewed his license in February of 2004 – almost three years before the robbery in McDonough.  (Noble Dep., p. 58, Ex. 13, p. 000036-37).

111. Noble ran a criminal history on Owens.  Owens' criminal history did not give Noble any reason to suspect that Owens had robbed the First Bank.  (Noble Dep., p. 58-59; Ex. 13, p. 000041-43).

112. Noble pulled a report from the Georgia Department of Driver Services that listed all the vehicles registered to Owens.   The report showed that Owens did not own a truck matching the description of the getaway vehicle.  (Noble Dep., p. 58; Ex. 13, p. 000044-46).

113. All of Noble's vehicles were properly registered and licensed through     the State of Georgia. (Noble Dep., p. 58; Ex. 13, p. 000044-46).

114. None of the information Noble received from Georgia DDS corroborated Hatcher's statement that Owens might be the Suspect.  (Noble Dep., p. 59).

115.    Noble had MPD officers conduct some surveillance around Owens' property in "attempts to photograph him or any vehicles that came through, with no avail." (Helgerson Dep., p. 32).

116.    Noble failed to secure any independently verifiable information supporting Hatcher's statement that Owens might be the Suspect prior to putting Owens' in a Photographic Line-Up. (Noble Dep., p. 59-61; 68).

117.    Noble ordered a copy of Owens' driver's license picture. The picture depicted Noble as he appeared in 1999-2000, as Owens did not have a new picture taken when he renewed his drivers' license in 2004. (Owens Dep., p. 102-03; Noble Dep., p. 62).

118.    Noble knew that Owens' drivers' license photograph was at least three years old, as the record he received from DDS showed the renewal date for Owens' drivers' license. (Noble Dep., p. 62).

119.    Other than looking at the renewal date, Noble made no effort to determine when the photograph was taken. (Noble Dep., p. 63).

120.    Prior to placing Owens' drivers' license photograph in a Photographic Line-Up, Noble took no steps to confirm that the photograph fairly and accurately depicted Owens' as he appeared in November of 2007. (Noble Dep., p. 63-64).

121.    Helgerson made no such efforts either. (Helgerson Dep., p. 31-34).

122.    Noble did not show Owens; drivers' license photograph to Hatcher before putting Owens in a Photographic Line-Up. (Noble Dep., p. 64).

123.    MPD has no policy or standards to guide officers in determining when a person

should be placed in a Photographic Line Up.  According to Noble, he was

trained to "[b]asically, do an investigation, of course.  Once a person of interest is

discovery, a photographic line up can be used."   (Noble Dep. p. 61).

124.    Noble put Owens' in a Photographic Line-Up because (a) Hatcher's statement

that the Suspect looked like Owens, and (b) Owens' drivers' license photograph

seemed to resemble the Suspect depicted in the surveillance images.  (Noble

Dep., p. 66; Helgerson Dep., p. 21).

125.    Noble ordered a Photographic Line-Up from the Henry County Sheriff's

Department.  Owens' drivers' license photograph appeared in the middle of the

top row, i.e. Position # 2.  (Noble Dep., p. 69-74).

126.    Noble met with each of the six witnesses to the First Bank Robbery and had

them view the McDonough Photographic Line-Up.  (Noble Dep., p. 74, Ex. 13,

p. 000022).

127.    Hannah Jones did not pick out Owens or anyone else. (Noble 73-74).

128.    Wendy Telfer did not pick out Owens or anyone else.  (Noble Dep., p. 73-74).

129.    Christie Robinson did not pick out Owens or anyone else. (Noble Dep., p. 73-74).

130.    Janice Ryan did not pick out Owens or anyone else. (Noble Dep., p. 73-74).

131.    Inez Carver did not pick out Owens or anyone else.  (Noble Dep., p. 73-74).

132.    Karen Adcock did not pick out Owens or anyone else.  (Noble Dep., p. 73-74).

133.    Noble did not retain the Line-Up forms of the witnesses showing that none of them

were able to select a suspect from the Line-Up (Noble Dep., p. #).

134. Noble had no evidence supporting Hatcher's supposition that Owens' resembled the Suspect who robbed First Bank. (*See*, *Infra*, ¶¶ 90-114).

135. Noble had a significant amount of objective evidence reducing the possibility that Owens had committed the First Bank robbery, including: (a) Owens' motor vehicle report showing that he did not own a Chevrolet Silverado pick-up truck; (b) Owens' clean driving history and criminal history; (c) surveillance of his residence uncovered no evidence; and (d) Owens' bank records showed no suspect transactions around the time of the robbery. (*See*, *Infra*, ¶¶ 90-114; Ex. 13, p. 000052-74).

PHASE III: 11/21/2007
NOBLE IDENTIFIES OWENS' AS A SUSPECT TO BUTTS AND TWIGGS COUNTY

136. Despite having no evidence of probable cause that Owens committed the First Bank robbery, Noble contacted former defendant Abernathy of the Bibb County Sheriff's Department on November 21st and informed him that MPD had a "potential suspect." (Abernathy Dep., p. 30).

137. Noble told Abernathy that "he had a reliable informant that had seen the pictures from the [First Bank] robbery . . . and he gave me a physical description. Said the guy had seen a picture, gave him a name, and gave him a little more information. And he thought he could have a possible suspect up there." (Abernathy Dep., p. 31).

138. Noble told Abernathy that Owens "had been falling – kind of fallen on some hard

times, his business-wise and his personal life . . ." (Abernathy Dep., p. 31).

139.   Abernathy reviewed a surveillance photograph of the Suspect from First Bank

and concluded that it "could possibly be" the same person who robbed the Bibb

County banks.  (Abernathy Dep., p. 32).

140.   At some point, Noble told Abernathy that none of the First Bank witnesses picked

Owens out of the Line Up, but Abernathy does not remember whether that was

before or after Abernathy prepared his own Line Up with Owens.  (Abernathy

Dep., p. 32-33).

141.   Abernathy knew that he was putting Owens in some jeopardy of being picked as

the Suspect by putting him in his Line Up, but he took no steps to independently

verify Noble's representations that Owens should be considered as a suspect.

(Abernathy Dep., p. 35-36).

142.   When Noble described Hatcher to Abernathy as a "reliable informant," the term

meant something specific to Abernathy based upon his prior experience in law

enforcement.  (Abernathy Dep., p. 36-38).

143.   Noble provided Abernathy with Owens' drivers' license picture.  (Abernathy

Dep., p. 42).

144.   Abernathy made no effort to determine if the picture accurately depicted Owens'

present appearance.  "We didn't know John Owens. I had never seen John

Owens and nobody went and looked."  (Abernathy Dep., p. 42-43).

145.   Abernathy admitted that the age of a particular photograph is important in

considering how to construct a Photographic Line Up.  (Abernathy Dep., p. 43).

146.  Abernathy compiled a Photographic Line-Up in Bibb County.  (Abernathy Dep., p. 44-48).

147.  Nadia James, a witness to the Capitol City Bank robbery, picked Owens' photograph as the person looking most like the Suspect.  (*Photographic Line-Up – James*, attached hereto as <u>Exhibit</u> <u>25</u>).

148.  Amy Gorham, one of the tellers at Colonial Bank, picked Owens' photograph as the person looking most like the Suspect.  (*Photographic Line-Up – Gorham*, attached hereto as <u>Exhibit</u> <u>26</u>).

149.  None of the other witnesses to the Capitol City Bank robbery picked Owens out of the Photographic Line Up.

150.  None of the other witnesses to the Colonial Bank robbery picked Owens out of the Photographic Line Up.

151.  Abernathy called Stokes and told him about John Owens on November 21st. (Stokes Dep., p. 21).

152.  Abernathy provided Stokes with the Bibb County Photographic Line Up containing Owens' drivers' license photograph in the second position.  (Stokes Dep., p. 21).

153.  Prior to showing the Photographic Line Up to Ms. Cho, Stokes did nothing to independently investigate, corroborate or otherwise verify that Owens should

have been considered as a suspect for the Marathon robbery. (Stokes Dep., p. 21).

154. Stokes did not bother to ask the Bibb County investigators how they had identified Owens as a potential suspect for their robberies. (Stokes Dep., p. 22).

155. Stokes did not speak with Defendant Kenneth Noble prior to November 21st. (Stokes Dep., p. 24).

156. Stokes showed the Bibb County Photographic Line Up to Ms. Cho. She selected Owens. (Stokes Dep., p. 19-21; _Twiggs County Photographic Line-Up_, attached hereto as Exhibit 21).

157. On the basis of Ms. Cho's identification alone, Stokes applied for an Arrest Warrant for John Kirk Owens charging him with the offense of Robbery. (Stokes Dep., p. 22-23).

158. The warrant reads, in pertinent part, as follows: "16-8-41 Robbery. The offender did with intent enter the Marathon Convenience store with the intent to commit a felony within. The offender approached the cashier with a small caliber revolver in his hand and demanded money from the cashier." (_Twiggs County Arrest Warrant_, attached hereto as Exhibit 22).

159. When Stokes met with the magistrate judge to swear out the arrest warrant, he already knew that two witnesses in Bibb County had picked Owens out of the Photographic Line-Up. (Stokes Dep., p. 23).

PHASE IV: 11/21/2007
THE ARREST : "IN PERSON, OWENS LOOKS NOTHING LIKE THE SUSPECT"

160. As soon as Abernathy had positive identifications from Gorham and James, he went before a magistrate judge and swore out an arrest warrant for Owens on two counts of Robbery by Intimidation. (Abernathy Dep., p. 50; *Bibb County Arrest Warrant*, attached hereto as <u>Exhibit</u> <u>26</u>).

161. Abernathy drove to McDonough to meet with Noble and serve his arrest warrants upon Owens. (Abernathy Dep., p. 50-51)

162. Stokes also traveled to McDonough, Georgia on November 21st to meet Abernathy and Noble. (Stokes Dep., p. 24-25).

163. Noble had secured a search warrant for Owens' home from a magistrate judge in Henry County. (Ex. 13, p. 000014-20).

164. Stokes left his squad car at the McDonough Police Department and traveled over to Owens' house with Abernathy. (Stokes Dep., p. 25).

165. Stokes was there when Abernathy took Owens into custody and placed him in the back of his squad car. (Stokes Dep., p. 26).

166. Abernathy met Owens, explained the Bibb County charges, handcuffed him, and placed him in the back of his squad car. (Abernathy Dep., p. 62-63).

167. Abernathy recalls Owen saying something to the effect, "bank robbery? I ain't robbed any bank. . . " (Abernathy Dep., p. 63).

168. Abernathy read Owens his Miranda rights and Owens invoked his right to counsel. (Abernathy Dep., p. 64).

169.    Abernathy stood face to face with Owens.  He claims that he noticed no differences between Owens' appearance in person and his appearance in his drivers' license photograph.   (Abernathy Dep., p. 64).

170.    Abernathy testified that, "No.  I just – I really just didn't make that determination [difference in appearance].  I just – you know, we got his name, and I arrest him."  (Abernathy Dep., p. 64).

171.    Asked if the surveillance photographs depicted "essentially a big fat white guy," Abernathy admitted, "you could say that." (Abernathy Dep., p. 65).

172.    Abernathy was asked, "could you not tell, when you were arresting John Owens, that he didn't have all that kind of weight all around is torso and stuff?"  He replied,

> I really didn't pay that much attention.  When he was in the bank, I mean, a lot of – there's special effects and everything that's good.  It's easy to say, when you go to a bank, you can disguise yourself to look like anything.  I really didn't assess that  as much as, you know, we had Mr. Owens, and that's who I wanted.  That's who my arrest warrant was for.

> (Abernathy Dep., p. 65).

173.    Stokes had a chance to look at Owens in person at the scene of his arrest.  (Stokes Dep., p. 26-27).

174.    When he saw Owens in person, Stokes immediately realized that Owens did not look like the person who committed the Marathon robbery.  (Stokes Dep., p. 27).

175. Stokes saw that "his body mass, his weight" did not remotely resemble that of the Suspect. (Stokes Dep., p. 31).

176. Even though Stokes, Abernathy, Osgood and Noble all agreed that the same person had committed the robberies in their respective jurisdictions, Stokes did not say anything to Abernathy, Osgood or Noble when he saw Owens in person and realized that he looked nothing like the Suspect. ((Stokes Dep., p. 31-32).

177. Stokes did nothing to stop Abernathy from arresting Owens for the Bibb County robberies, even though he knew that Owens was not the person responsible for committing these crimes. (Stokes Dep., p. 32).

178. Stokes had the Twiggs County arrest warrant with him on November 21st but he did not serve Owens with the warrant. (Stokes Dep., p. 27).

179. Stokes instead turned the arrest warrant over to a clerk in the Twiggs County Sheriff's Office. (Stokes Dep., p. 29-30; 37-38; 40).

180. On November 21st, Stokes knew that based on normal procedure, the agency making the arrest would put a hold on the suspect. (Stokes Dep., p. 29).

181. Stokes understood that if Owens attempted to make bond in Bibb County, "he can bond out of that facility, but then he will be transferred to the other agencies holding a warrant for him . . . in other words, he could bond out, but he wouldn't get out." (Stokes Dep., p. 29).

182. Stokes understood that Owens would then have to make bond in Twiggs County. (Stokes Dep., p. 30).

183. Between November 21st and December 7th, Stokes made no effort to recall the Twiggs County arrest warrant for Owens. (Stokes Dep., p. 34-35; 41-42).

184. Twiggs County placed a hold on Owens with the Bibb County Sheriff's Office. (*Bibb County Jail* – *Profile Report*, attached hereto as <u>Exhibit</u> <u>23</u>).

185. Stokes did not bother to recall the arrest warrant for Owens until December 7th when Owens' attorney subpoenaed him to appear as a witness at Owens' probable cause/bond hearing in Bibb County. (Stokes Dep., p. 35).

186. Despite his own visual observations on November 21st, Stokes did not bother to recall the arrest warrant until Owens' attorney provided him with evidence of his alibi. (Stokes Dep., p. 35-36; Ex. 17).

187. Between November 21st and December 7th, Stokes did nothing to further his investigation of Owens. (Stokes Dep., p. 41-42).

188. Stokes claims he took immediate steps to have the Twiggs County warrant dismissed on December 7th, but the hold at the Bibb County Jail was not lifted until December 10th. (<u>Compare</u>, Stokes Dep., p. 42 & Ex. 22).

189. Owens was brought before a magistrate judge in Bibb County on December 7, 2007. The magistrate judge set a $3,000.00 bond, however, Owens had a hold from Twiggs County based on Defendant Stokes' warrant for the Marathon Gas Station armed robbery.

190. Had Owens made bond, he would have simply been transported to Twiggs county where he would have remained incarcerated. (Ex. 22, Stokes Dep., p. 46-48).

191. The Twiggs County warrant was dismissed because there was "no probable cause." (*Order Dismissing Warrant*, attached hereto as <u>Exhibit</u> <u>23</u>).

192. There were stark differences between Owens' actual appearance in November of 2007 and his drivers' license photograph taken seven years earlier that a prudent trained law enforcement officer could immediately notice. Owens' face looked much less full – he plainly had lost a great deal of weight. (Ex. 1-5).

193. There were stark differences between Owens' appearance in November of 2007 and the appearance of the person who had perpetrated the robberies in Henry, Bibb and Twiggs counties that a prudent trained law enforcement officer could immediately notice, including: (a) Owens had a goatee, not a mustache described by each of the victims, including the victims of the Capitol City robbery on November 19th, just two days prior to his arrest; (b) Owens' face was much smaller than the face shown in each of the surveillance photographs taken of the perpetrator of the various robberies; (c) Owens was shorter than the perpetrator; and (d) Owens did not weigh anywhere near as much as the perpetrator.  (Ex. 1-5).

194. Despite all of the evidence tending to negate Noble's theory that Owens had committed the robbery at First Bank, Noble appeared before a Henry County Magistrate judge on November 27th and swore under oath that Owens had committed the offense of Robbery by Intimidation at First Bank. (Noble Dep. p. 95).

195.   Noble failed to disclose any of the exculpatory information concerning Owens that he had gathered during his brief investigation to the magistrate judge. (Noble Dep. pp. 97-98).

196.   Noble's warrant application and testimony to the magistrate omitted material exculpatory facts that plainly established the absence of arguable probable cause, to support an arrest warrant, including, but not limited to: (a) six out of six witnesses at First Bank had rejected Owens as the perpetrator; (b) Owens did not own or drive a Chevrolet Silverado; (c) a search warrant of Owens' home uncovered no evidence at all; and (d) Noble's "reliable informant" was nothing more than a jail trustee who happened to see a likeness between a BOLO of the perpetrator and Owens (e) he engaged in no unusual banking activity and, (f) had he looked, Owens did not resemble the perpetrator. (Noble Dep. pp. 57-59, 68, 74, 97-98 and Helgerson Dep. pp. 47-48).

197.   Owens was able to make bond on December 10th, 2007.  (Owens Dep. p. 32).

198.   Upon release from Bibb County, Owens learned that the Henry County Sheriff's Office had an active warrant for his arrest – the warrant taken by Noble--and he turned himself into Henry County Jail.  (Owens Dep. p. 32-35).

199.   When Captain Helgerson of MPD had a chance to see John Owens for the first time, he immediately recognized that Owens could not be the person who had committed the robberies. (Helgerson Dep. pp. 47-48).

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| JOHN KIRK OWENS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | FILE NO.: 5 : 09-CV-399 |
| | : | |
| CITY OF McDONOUGH : | | |
| GEORGIA,   KENNETH B. NOBLE, | : | |
| and WILLIAM STOKES, : | | |
| | : | |
| Defendants. | | |

### CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2011, I electronically filed the foregoing

**PLAINTIFF'S  CONSOLIDATED  STATEMENT OF MATERIAL FACTS TO WHICH**

**THERE EXISTS A GENUINE ISSUES TO BE TRIED**  with the Clerk of Court using the

CM/ECF system which will send notification of such filing to:


Andrew J. Whalen, III
THE WHALEN LAW FIRM LLP
101 South Hill Street
Griffin, Georgia  30224
Ajwhalen3@whalenlaw.net

Terry E. Williams
Jason Waymire
Williams, Morris & Waymire, LLC
4330 South Lee Street, Bld. 400, STE A
Buford, Georgia  30518
terry@wmwlaw.com
jason@wmwlaw.com

This_____ day of  October , 2011.

/S/William J. Atkins
William J. Atkins
Georgia  Bar No.027060

Atkins & Fife, LLC
6400 Powers Ferry Road
Suite 355
Atlanta, GA 30339
404-969-4130
david@atkinsfife.com

CERTIFICATION:  The above-signed counsel hereby certifies that this document was

prepared in Times New Roman 14 point font in accordance with LR 5.1B,

N.D. Ga.