# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

JOHN KIRK OWENS,

    Plaintiff,

v.

CITY OF MCDONOUGH, GEORGIA;
KENNETH B. NOBLE; and WILLIAM
STOKES,

    Defendants.

CIVIL ACTION FILE
NO. 5:09-CV-399

## DEFENDANTS' CITY OF MCDONOUGH, GEORGIA AND KENNETH B. NOBLE'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW, THE CITY OF MCDONOUGH, GEORGIA and KENNETH B. NOBLE, in his individual capacity and in his official capacity as a Detective for the McDonough Police Department of the City of McDonough, Georgia, by and through their attorney of record, and submit this Reply Brief in Support of Their Motion for Summary Judgment, respectfully showing the Court as follows:

Under Rule 56, once the moving party makes a showing that summary judgment is proper, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56. In Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (hereinafter

referred to as "DSMF"), Plaintiff denies facts deemed to be undisputed by Defendants by citing to Plaintiff's Statement of Material Facts to which there Exists a Genuine Issue to be Tried (hereinafter referred to as "PSMF").  However, PSMF only rewords DSMF and fails to present specific facts showing there is a genuine issue for trial.  See PSMF and DSMF.  In fact, PSMF only reiterates that DSMF creates no genuine issue for trial.

## ARGUMENT AND CITATION OF AUTHORITY

**A. DEFENDANT NOBLE IS ENTITLED TO QUALIFIED IMMUNITY.**

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Plaintiff's complaint states that "[a]t all times relevant to this action, Noble was acting under color of state law and within the scope of his discretionary functions as [a] duly sworn, certified law enforcement officer employed by the McDonough Police Department." (Doc 1, ¶ 9).  Therefore, along with well established case law, Plaintiff concedes that Defendant Noble was performing a discretionary function, and his only argument should be that Defendant Noble's conduct "violate[d]

clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, supra at 818.

Instead, Plaintiff attempts to confuse the court by arguing that Defendant "ignored" exculpatory evidence. Although this may have constituted negligence on Defendant Noble's part, in no way is this the standard governing the shield of qualified immunity for government officials performing discretionary functions. In Plaintiff's complaint, he alleges that the constitutional right violated by Defendant Noble is that of the Fourth Amendment, which states,

> "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

U.S.C.A. Const. Amend. IV. Applying the standard in the context of an alleged unlawful arrest, the question is whether "a reasonably well-trained officer in the petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Malley v. Briggs, 475 U.S. 335, 345 (1986). This standard should be reviewed as a case specific factual analysis.

When considering the facts of this case, it is clear that several well-trained officers in Defendant Noble's position believed that his affidavit would establish

probable cause and that he should apply for the warrant. In fact, Noble's superior officer, Major Kyle Helgerson, Chief of Police Detectives, ordered Noble to obtain a warrant for Plaintiff's arrest on November 29, 2007. (Noble Dep., P. 124-127). Major Helgerson was aware of the facts of the investigation, both inculpatory and exculpatory, and still believed that Noble had probable cause to obtain an arrest warrant. (Noble Dep., P. 124-127). Major Helgerson began his police training with the Forest Park Police Department in 2002, when he was hired as a patrol officer. He immediately was promoted to the special operations team with the Forest Park Police Department. In 2005, Major Helgerson transferred to the McDonough Police Department, where he was hired as a patrol officer, then promoted to detective within a year. Major Helgerson received several hours of investigative training while employed with the McDonough Police Department. Based on these courses and his years of experience, Major Helgerson believed there was probable cause to issue an arrest warrant for John Owens, which is why he ordered Detective Noble to do so.

It can be inferred that Plaintiff believes Helgerson did not violate any clearly established statutory or constitutional right of which a reasonable person would have known because Plaintiff never added Helgerson as a party to the lawsuit. If Plaintiff believed Helgerson were liable for such violation, any reasonable person

in Plaintiff's position would have amended his complaint to add Helgerson as a Defendant to this action. However, that was never done.

Furthermore, two other reasonably well-trained officers in Noble's position believed that they had established probable cause to apply for their own arrest warrants. Former Defendant Abernathy, a Detective with the Bibb County Sheriff's Department, who has been with the Department since 1988, took out an arrest warrant for Plaintiff on November 21, 2007. This Court previously dismissed Abernathy because it believed that he was entitled to qualified immunity. The Court found "that the proper question before the Court is not the quality of the investigation undertaken by Defendant Abernathy – but whether or not Defendant had probable cause arising from the investigation." (Doc 38, P. 17). **The Court found that Defendant Abernathy did have probable cause arising from his investigation to obtain an arrest warrant for Plaintiff, and therefore, found Defendant Abernathy shielded from liability under the doctrine of qualified immunity.** Another detective, Defendant Stokes, also believed he had probable cause arising from his investigation to take out an arrest warrant for Plaintiff in Twiggs County. In fact, both of these Detectives took out arrest warrants on November 21, 2007 – eight days before Noble was ordered to take out an arrest warrant by his superior, Major Helgerson.

The question answered by the Court in deciding Abernathy's Motion to Dismiss is also the proper question for whether Defendant Noble had probable cause arising from his investigation to obtain an arrest warrant for Plaintiff. Again, the quality of the investigation undertaken by Defendant Noble is not the proper question for the Court, as the Plaintiff argues.

In determining whether Noble had probable cause, Plaintiff argues that "probable cause for the first warrant, cannot of itself supply probable cause for the second warrant. Instead, the latter warrant must rest on its own bottom – its own factual predicate." Yattoni v. Oakbrook Terrace, 801 F. Supp. 140 (N.D. Ill. 1992). However, this standard was determined by a Federal District Court in Illinois, not a Federal District Court in Georgia. The Plaintiff does cite a Georgia case, in a footnote, that holds that "the state [can] only use evidence from these offenses subsequent to putting up evidence that the defendant committed the offense charged in the indictment." (Doc. 68, P. 14 (citing Gilstrap v. State, 261 Ga. 798, 799 (1991)). Plaintiff, in an attempt to create more confusion, fails to note that this standard is used in evidence and testimony given **during the trial**, not in evidence and testimony presented to a magistrate for a warrant application. Id. A Federal District Court in Georgia did differentiate between evidence required for probable cause for issuance of an arrest warrant and evidence required

to convict. In Rock v. Lowe, the District Court held that "evidence required for probable cause for issuance of an arrest warrant is much less than the evidence required to convict." Rock v. Lowe, 893 F.Supp. 1573 (S.D.Ga. 1995).

In Gilstrap, the Supreme Court of Georgia noted, "the procedure followed in the trial court raises a substantial possibility that the jury could have settled upon the guilt of the defendant based solely upon evidence of a large number of similar transactions, and before hearing a single witness to the indicted offenses."[1] Id. at 424. However, the court did not determine the outer limit of discretion regarding the sequence of testimony in the Gilstrap case. Even though that determination was not made, it is clear that this possibility could not have occurred in this case. The testimony and evidence presented was not presented during a trial to a jury. Defendant Noble presented testimony and evidence to a magistrate court judge, who then determined that there was probable cause to issue an arrest warrant.

Defendant Noble was sworn under oath when applying for the arrest warrant. He informed the magistrate judge of the details of the investigation, but cannot recall if he told the magistrate that none of the witnesses at the First Bank robbery identified the Plaintiff as the perpetrator. (Noble Dep., P. 96). "A police

---

[1] "The procedure" refers to the trial court "permitt[ing] the state to introduce evidence of nine similar transactions *before* it offered any evidence concerning the charges contained in the indictment on trial."

7

officer violates the Constitution if, in order to obtain a warrant, she perjures herself or testifies in reckless disregard of the truth." Joseph v. Kimple, 343 F.Supp.2d 1196, 1202 (2004) (quoting Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994)). In no way did Defendant Noble perjure himself or testify in reckless disregard of the truth. "Good-faith (hence, honest, non-obvious) mistakes contained in, and minor omissions from, arrest/search warrants will not be sufficient to pierce qualified immunity." Id. at 1202 (citing Madiwale v. Savaiko, 117 F.2d 1321, 1324 (11th Cir. 1997)).

If Defendant Noble did in fact fail to inform the magistrate of the lack of identification from the photographic lineup by employees of the First Bank robbery, it still does not pierce the shield of qualified immunity because it is not "clearly critical to a finding of probable cause." Joseph, supra (citing Madiwale, 117 F.2d at 1327). The witness's own "Bandit Description Forms" regarding the appearance of the perpetrator prove the lack of reliability as to witness identification. (Noble Dep., Exhibit 10). The six forms obtained from the witnesses of the First Bank robbery vary considerably – the height varies from 5'4 to 5'10, the weight varies from 200 pounds to 250 pounds, his age varies from 40 to mid 50's, and only one could even remember if he had facial hair. After such inconsistences, any reasonably well-trained officer may believe that the lack of

8

identification from a photographic lineup only reiterates the unreliability of the witnesses, and therefore would not lend much weight to the fact that they failed to pick the suspect out of a photographic lineup. Furthermore, the Supreme Court of the United States believes "the police, where they have reason to believe probable cause exists, should be encouraged to submit affidavits to judicial officers." The United States Supreme Court further says:

> the rule we adopt in no way 'requires the police officer to assume a role even more skilled…than the magistrate.' It is a sound presumption that 'the magistrate is more qualified than the police officer to make a probable cause determination,' and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable.

Malley at 1103, footnote 9.

Notwithstanding the foregoing, there is a question as to whether or not Defendant Noble or the City of McDonough would have even executed the arrest warrant. After the issuance of the arrest warrant on November 29, 2011, the magistrate transmitted the warrant to the Henry County Sheriff's Department for service. Defendant Noble did not have any conversations with the Henry County Sheriff's Department on how or when to execute the warrant. (Noble Dep., P. 101). Defendant Noble was not present at the probable cause hearing held in Bibb County, where Plaintiff was in jail, on December 7, 2007. (Noble Dep., P. 116).

9

Defendant Noble did not have any conversations with Plaintiff's attorney regarding his voluntary surrender to the Henry County Sheriff's Department. (Noble Dep., P. 131). The Henry County Sheriff's Department never put a hold on Plaintiff while he was in the Bibb County jail; instead, on the advice of his defense attorney, Plaintiff voluntarily turned himself into the Henry County Sheriff's Office on December 12, 2007. (Noble Dep., P. 131; Owens Dep., P. 34).

Defendant Noble was not able to attend Plaintiff's first appearance hearing on December 12, 2007 so Major Helgerson went in his place. (Noble Dep., P. 133). Once Major Helgerson had the opportunity to view Plaintiff's current appearance, he recalled the warrant. (Helgerson Dep., P. 49). Ironically, there was a bank robbery committed in Henry County on that same date, which confirmed Helgerson and Noble's belief that Plaintiff was not the perpetrator. Unfortunately, Plaintiff spent a couple of hours at the jail on December 12, 2007 before the procedure of recalling the warrant could be completed. Plaintiff posted a property bond in order to be released before the warrant was recalled. While it is a shame that Plaintiff suffered emotional injuries and stress while being detained for twenty-one days by the Bibb County Sheriff's Office, Plaintiff admits that any damages he received were a result of the Bibb County arrest, and not his booking in Henry County. (Owens Dep., P. 59).

## B. THE CITY OF MCDONOUGH

Plaintiff argues that the City of McDonough is liable for Noble's alleged unconstitutional actions because the City ratified his actions. The Plaintiff cites a United States Supreme Court decision where the plurality states:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). However, this is not what occurred in the case at hand.

Chief Preston Dorsey is the official policymaker for the City of McDonough for policies relating to police procedures. Defendant Noble presented his investigation to Major Helgerson, who in turn, ordered him to take out an arrest warrant. Major Helgerson discussed the case with Chief Dorsey, who, after the warrant for the Plaintiff was recalled, also investigated the procedures followed by Defendant Noble during his investigation. Plaintiff must show that the City or the authorized policymaker, Chief Dorsey, "directly participated in the alleged constitutional deprivations or that there is some other causal connection between its acts or omissions and the alleged constitutional deprivations." Ferdinand v. City of Midway, 2010 WL 4705093 (2010) (citing Cottone v. Jenne, 326 F.3d

11

1352, 1360 (11th Cir. 2003)). Plaintiff argues that Chief Dorsey and Major Helgerson "ratified" Noble's actions when Helgerson ordered Noble to obtain an arrest warrant for Plaintiff. Plaintiff cites Matthews v. Columbia County as valid case law that supports the conclusion that ratification by an authorized policymaker creates liability for a municipality. However, Plaintiff fails to explicitly point out that the final policymaker must ratify not only the decision itself, but also the unconstitutional basis for the decision. Matthews, 294 F.3d 1294 (11th Cir. 2002).

The evidence proves that both Chief Dorsey and Major Helgerson believed Defendant Noble had probable cause to obtain an arrest warrant. (Helgerson Dep., P. 39; Dorsey Dep., P.14). In fact, according to Defendant Noble, Major Helgerson ordered him to obtain the arrest warrant. These facts only confirm that Chief Dorsey and Major Helgerson ratified Defendant Noble's actions because they thought the basis for his actions was constitutional. Only after the arrest warrant had already been recalled did Chief Dorsey or Major Helgerson question whether or not probable cause existed. Unfortunately, in these situations hindsight is 20/20 and not applicable to whether or not the City ratified any actions by Defendant Noble or the basis of his actions. Therefore, Plaintiff fails to show that Chief Dorsey or the City ratified any unconstitutional actions when Defendant Noble obtained an arrest warrant. On the contrary, Chief Dorsey and Major

Helgerson ratified Noble's actions on the basis of the constitutionality of his actions. Since the evidence does not prove that the City of McDonough or Chief Dorsey, the authorized policymaker for the City, ratified an unconstitutional basis for Defendant Noble's actions, Plaintiff's claims against the City should be dismissed.

## CONCLUSION

For the above and foregoing reasons, Defendants' Motion for Summary Judgment should be granted, and Plaintiff's claims against Defendants should be dismissed.

This the 21st day of October, 2011.

Respectfully Submitted,

THE WHALEN LAW FIRM LLP

/s/ Leigh C. Hancher
Andrew J. Whalen, III
Georgia Bar No. 750625
Leigh C. Hancher
Georgia Bar No. 322282

Attorney for Defendants
City of McDonough and
Kenneth B. Noble

101 South Hill Street
Post Office Box 133
Griffin, Georgia 30224
770.227.9456
[ajwhalen3@whalenlaw.net](mailto:ajwhalen3@whalenlaw.net)

# IN THE U. S. DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

**JOHN KIRK OWENS,**

    **Plaintiff,**

                        CIVIL ACTION FILE
                        NO.: 5:09-CV-399

vs.

**CITY OF MCDONOUGH, GEORGIA,**
**KENNETH B. NOBLE,**
**WILLIAM STOKES**

    **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2011, I electronically filed the foregoing **DEFENDANTS' CITY OF MCDONOUGH, GEORGIA AND KENNETH B. NOBLE'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:

| | |
|---|---|
| William J. Atkins, Esq. | Jason C. Waymire, Esq. |
| The Atkins Firm, LLC | Williams, Morris & Waymire, LLC |
| 6400 Powers Ferry Road, Suite 355 | 4330 South Lee Street |
| Atlanta, GA 30339 | Building 400, Suite A |
| | Buford, GA 30518 |

/s/ Leigh C. Hancher
Andrew J. Whalen, III
Georgia Bar No. 750625
Leigh C. Hancher
Georgia Bar No. 322282

THE WHALEN LAW FIRM LLP
101 South Hill Street
Post Office Box 133 (30224)
(770) 227-9456
(770) 228-9873
ajwhalen3@whalenlaw.net

CERTIFICATION: The above-signed counsel hereby certifies that this document was prepared in Times New Roman 14 point font in accordance with LR 5.1B, N.D.Ga.