IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JOHN KIRK OWENS,<br>　　　Plaintiff,<br>vs.<br><br>WILLIAM STOKES, *et al.*,<br>　　　Defendants. | CIVIL ACTION FILE<br><br>NO. 5:09-CV-399-WLS |

**DEFENDANT STOKES' REPLY BRIEF IN SUPPORT OF HIS
MOTION FOR SUMMARY JUDGMENT**

COMES NOW DEFENDANT WILLIAM STOKES, a Defendant in the above-styled civil action, and files this his Reply Brief in Support of his Motion for Summary Judgment, showing the Court as follows:

**ARGUMENTS AND CITATION TO AUTHORITIES**

**I. PLAINTIFF ABANDONS HIS FALSE ARREST AND MALICIOUS PROSECUTION CLAIMS AGAINST DEFENDANT STOKES AND CONCEDES STOKES' ENTITLEMENT TO SUMMARY JUDGMENT BY FAILURE TO RESPOND TO DISPOSITIVE ARGUMENTS**

In response to Defendant Stokes' *Motion for Summary Judgment*, Plaintiff makes no attempt to support his claims for "false arrest" or "malicious prosecution," which are the only claims stated against Stokes in the Complaint. Instead, Plaintiff attempts to pursue an entirely different type of "claim" against Defendant Stokes, based (apparently) on Stokes' delay in withdrawing a warrant that was never executed. *Plaintiff's Brief* (Doc. 68) at 20-22 (arguing that the

1

unexecuted Twiggs County warrant caused "illegal detention").

Plaintiff cannot amend his complaint through a summary judgment response, and the Court should grant summary judgment to Defendant Stokes without consideration of any "claim" not raised in the complaint. See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (refusing to entertain claim not raised in complaint, and stating "Liberal pleading does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in the complaint."); Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir.2004) (dismissing claims not raised in complaint but disclosed over the course of discovery); Welch v. Delta Air Lines, Inc., 978 F.Supp. 1133, 1138 (N.D.Ga.1997) ("Plaintiff cannot change its theory of the case (in an effort to avoid summary judgment) *after* Defendant moves for summary judgment.").[1]

In light of Plaintiff's failure even to argue a false arrest or malicious prosecution claim against Defendant Stokes, Stokes is entitled to summary judgment. That is, Plaintiff abandons his "false arrest" and "malicious prosecution" claims, and fails to oppose Defendant's grounds for summary

---

[1] Defendant does not consent to litigate any claim not properly raised in the Complaint. Without waiving that position, in this brief Defendant responds to Plaintiff's arguments in an abundance of caution.

2

judgment.[2] While the Court's analysis need not proceed beyond this point, Defendant considers certain matters raised in Plaintiff's response brief.

## II.     QUALIFIED IMMUNITY BARS PLAINTIFF'S FEDERAL CLAIMS

Initially, Plaintiff does not dispute that Defendant Stokes acted within his discretionary law enforcement capacity for purposes of qualified immunity. "Once a defendant establishes that he was acting within his discretionary authority, **the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity**." Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir.2003); Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) ("Once a law enforcement officer has raised the defense of qualified immunity, the burden of persuasion as to that issue is on the plaintiff."). Here, Plaintiff fails to meet his burden to show that

---

[2] See Fed.R.Civ.P. 56(e) (the adverse party "must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. [Cit.] Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); Kramer v. Gwinnett County, Georgia, 306 F.Supp.2d 1219, 1221 (N.D.Ga.2004) ("Having failed to respond to many of Defendants' arguments and having defended only his Section 1983 claim for deliberate indifference to a serious medical need, Plaintiff is found to have abandoned all other asserted claims."); Bute v. Schuller Int'l, Inc., 998 F.Supp. 1473, 1477 (N.D. Ga. 1998) (Hunt, J.) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); Welch v. Delta Air Lines, Inc., 978 F.Supp. 1133, 1137 (N.D. Ga. 1997) (Hull, J.) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims.").

Defendant Stokes violated clearly established law. Plaintiff's various arguments are discussed in turn.

### A. DEFENDANT STOKES DID NOT CAUSE PLAINTIFF TO BE SEIZED

Instead of addressing Defendant Stokes' arguments, Plaintiff in essence complains about his incarceration in the Bibb County jail on the basis of Bibb County warrants, over which Defendant Stokes had no control. Curiously, Plaintiff makes no effort to address the well-settled rule that the independent acts of other officers breaks any chain of causation between a defendant and resulting alleged harm. See Jones v. Cannon, 174 F.3d 1271, 1287-88 & n. 11 (11th Cir. 1999).

In fact, Plaintiff's only authority in opposition to Defendant Stokes' qualified immunity defense (Tillman v. Coley, 886 F.2d 317, 320 (11th Cir.1989)), *distinguishes* Rich v. Dollar, 841 F.2d 1558 (11th Cir. 1988), a case that shares a critical common element with the role of Defendant Stokes in the present case. In Rich, an investigator was granted qualified immunity because there *was no evidence that his particular conduct caused a seizure*. Rich, 841 F.2d at 1566 (granting qualified immunity for lack of "a genuine issue of material fact as to whether Dollar caused Rich's arrest and prosecution," where it was undisputed that the defendant did not cause the plaintiff's arrest). The same is true of Defendant Stokes, who on that basis (among others) is entitled to summary judgment.

### B. PLAINTIFF'S LAWFUL SEIZURE IN BIBB COUNTY CANNOT GIVE RISE TO A CLAIM AGAINST STOKES

Plaintiff makes the strange contention that he can recover from Investigator Stokes for a portion of his detention in the Bibb County Jail. Aside from failing to raise that type of cause of action in the Complaint, the claim is illogical and unrecognized by current law. That means that qualified immunity would dispose of such a claim, had such a claim been raised in the Complaint.

To understand why Plaintiff's argument makes no sense, it should first be noted that Plaintiff was in the Bibb County Jail based on Bibb County warrants, until he bonded out. Moreover, the Court has already concluded that the Bibb County detention was supported by probable cause. See Order (Doc. 38) at 18. Therefore, the Bibb County detention was lawful, from start to finish. And, Plaintiff was never jailed in Twiggs County, the Twiggs County warrant was never executed, and Plaintiff was never held in the Bibb County Jail on account of the Twiggs County warrant.

Nevertheless, Plaintiff would have the Court hold that part of his lawful detention in the Bibb County Jail—the roughly three (3) days that Plaintiff *elected* to stay in jail rather than bond out—somehow provides Plaintiff with a right of recovery from Investigator Stokes, whose sole involvement in this case was the unexecuted Twiggs County warrant. Plaintiff's idea is that, had he elected to bond out of the Bibb County Jail sooner, there *would have been* a seizure based on the

Twiggs County warrant. Even if Plaintiff's speculation about what would have happened in an alternative reality were supported by evidence (which is disputed), his bizarre theory is without merit.

If merely stating plaintiff's argument is not enough to show that it lacks merit, an analogy makes the point clear.[3] Suppose that a plaintiff drives his car into an intersection. A blue car hits the plaintiff's car. Almost simultaneously, a tan car cruises by the collision, passing through the exact point where the plaintiff's vehicle would have been but-for its prior collision. The tan car drives off without hitting the plaintiff's car. Under Plaintiff's odd argument, the driver of the tan car should pay him money even though it never hit him because, but-for the collision with the blue car, the tan car likely would have hit him.

### C. Plaintiff Fails to Identify Any Violation of Clearly Established Law

In response to his burden to identify clearly established law transgressed by Defendant Stokes, Plaintiff only cites Tillman v. Coley, 886 F.2d 317 (11th Cir.1989). *Plaintiff's Brief* (Doc. 68) at 23. In Tillman, the defendant directly caused an arrest "for the sole purpose of identification," to figure out whether the plaintiff was a drug dealer who went by the same name as the plaintiff. Id. at 321.

In Tillman, the officer who caused the arrest knew the plaintiff (a local

---

[3] For simplicity this analogy suggests (but does not require) some wrongdoing by two different drivers. In reality, neither the Bibb County officers nor Investigator Stokes acted improperly. .

6

woman) was in her 40s, the drug dealer was in her 20s, and the officer had three (3) months to figure out whether the plaintiff matched the drug dealer. In that case, a "reasonable police officer would have been sufficiently concerned by **the age discrepancy of a generation** to make further investigation as to whether the Mary Tillman he knew had a daughter or a niece." Tillman, 886 F.2d at 321 (emphasis supplied). In the end Tillman *held* that "no reasonable law enforcement officer may conclude that an arrest warrant may be obtained and an arrest made for the sole purpose of identifying a suspect." Id.

For purposes of the qualified immunity inquiry, only Tillman's *holding* matters.[4] Unlike Tillman's holding, here Defendant Stokes did not obtain an arrest warrant "for the sole purpose of identifying a suspect." *Cf.* Tillman, 886 F.2d at 321. Moreover, Investigator Stokes was not confronted by doubts when he took the arrest warrant; the Twiggs County warrant was never executed; and Stokes withdrew the warrant when provided with alibi evidence approximately two weeks after Plaintiff's arrest. Therefore, Tillman is easily distinguishable.

Additionally, Tillman's holding is defective because it turns on the *subjective reason* for obtaining an arrest warrant. Tillman and cases of its ilk, which evaluate an officer's subjective intentions in a Fourth Amendment analysis,

---

[4] See Hamilton v. Cannon, 80 F.3d 1525, 1530 (11th Cir.1996) ("[t]he law cannot be established by dicta. Dicta is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law.").

7

have been overruled. Arkansas v. Sullivan, 532 U.S. 769, 772, 121 S.Ct. 1876, 1878 (2001); Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769 (1996) ("[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). The Fourth Amendment looks only to *objective* facts and circumstances, not what was going on in an officer's mind.

Plaintiff's contention against Defendant Stokes shares the same the same basic flaw as the Tillman holding. That is, Plaintiff contends (at least in response to Stokes' summary judgment motion) that Stokes' subjective thought process—post-warrant, after meeting Plaintiff, Stokes questioned whether Plaintiff was the robber—triggered a constitutional duty to do something different. Whren and Sullivan, *supra*, dispose of that contention. Investigator Stokes' hesitance does not negate probable cause. The Fourth Amendment is concerned only with the objective evidence that added up to probable cause for the warrant. Moreover, Plaintiff fails to provide any authority to support his view.

Arguably Plaintiff relies upon Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir.2004), but that case does not fit Defendant Stokes' role any more than Tillman. In Kingsland the record showed that officers either fabricated evidence or ignored evidence, in a biased effort to support an improper agenda. Defendant Stokes' investigation and conduct, by contrast, bears no resemblance to the improper police conduct in Kingsland. Plaintiff wisely refrains from arguing that

his case against Defendant Stokes' fits into the <u>Kingsland</u> mold. <u>Kingsland</u> is nothing like this case.

In sum, Plaintiff's sparse authority is easily distinguishable. Next, Defendant addresses a few of Plaintiff's specific arguments in turn.

**1. Investigator Stokes Had No Duty to Conduct the Photo Lineup Differently**

Plaintiff may criticize the manner in which Investigator Stokes conducted the photographic lineup with the Marathon victim. Plaintiff fails to provide any authority that would have told Investigator Stokes in November 2007 that his photographic lineup procedure was constitutionally deficient and violated the Plaintiff's federally protected rights. Therefore, qualified immunity protects Defendant Stokes from any claim based on an allegedly deficient photo lineup.

In factual terms, Plaintiff does not contend that Investigator Stokes suggested to the Marathon victim that she should pick anyone from the lineup, or that she should pick Plaintiff in particular. Moreover, Investigator Stokes knew that two bank robbery victims had previously picked Plaintiff's photo from the photo lineup. In light of probable cause that the Marathon convenience store robbery and the bank robberies were perpetrated by the same robber, Investigator Stokes could have simply relied upon the Bibb County victims' identification. That is, Plaintiff's quibbling about Investigator Stokes' photo lineup procedure is

9

irrelevant because Stokes had probable cause that Plaintiff was the Marathon robber, even without the Marathon victim's photo identification of Plaintiff.

**2. Investigator Stokes Had Probable Cause that Plaintiff Was the Marathon Robber**

Plaintiff substantially ignores the low "probable cause" standard, and the even lower standard for "arguable probable cause."Probable cause does not require certainty, and it does not require an officer to "prove every element of a crime before making an arrest." Jordan v. Mosley, 487 F.3d 1350, 1355 (11th Cir.2007). "Although probable cause requires more than suspicion, it does not require convincing proof, and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir.2002).

Plaintiff generally argues against probable cause by contending that as of November 21, 2007, he bore no real resemblance to the Marathon convenience store robber, even if his driver's license photo did. That contention is belied by the November 2007 photographs attached as Exhibit 5 to Plaintiff's deposition.[5] At the time Plaintiff and the robber looked similar enough to corroborate the victims' photo lineup identifications.

Aside from the photos, Plaintiff acknowledges that as of November 2007 he

---

[5] Plaintiff states that a photo in exhibits 70-1 and 70-3 came from the Bibb County Jail, but that photo does not seem to match the mug shot displayed from the Bibb County Jail documents. *Cf.* Doc. 70-24.

weighed between 200 and 215 pounds. Owens. Dep. at 206. Plaintiff's book-in at Bibb County jail states that he weighed 225 pounds. Doc. 70-24. Witnesses estimated that the bank/Marathon robber weighed between 200 and 250 pounds. Doc. 70-28 at 1-2. As for height, Plaintiff's 5 feet 10 inches (Owens Dep. at 106) squares with the estimate of 5 feet 10 inches provided by a bank robbery victim-witness. Doc. 70-28 at 2. And, as Plaintiff admitted, the Marathon video footage shows a robber that could be viewed as 5 feet 10 inches tall. Owens Dep. at 107.

The other supposedly distinguishing characteristics—fatness of face and facial hair—are no more helpful to Plaintiff's cause. Fatness of face is quite subjective, and facial hair is easy to change. Neither characteristic negated Investigator Stokes' "arguable probable cause," and neither characteristic was sufficient to trigger a constitutional mandate for Stokes to dis-believe the evidence, which included photo lineup identifications of three (3) separate victim-witnesses.

The Eleventh Circuit plainly regards citizen reports and statements to officers as sufficient to establish probable cause. "Once a witness tells a story which, if believed, would support criminal charges, society's interest swings in favor of the investigating officer presenting that witness to the proper authorities without fear of personal liability, absent subornation of perjury." Williams v. City of Albany, 936 F.2d 1256, 1260 (11th Cir.1991); Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir.1998) (stating that an officer generally is entitled to rely on a

victim's criminal complaint as support for probable cause). Thus Plaintiff's arguments against probable cause fail on the basis of undisputed citizen reports identifying Plaintiff as the robber, which were corroborated by Plaintiff's physical resemblance to the robber.

### 3. Investigator Stokes Had No Clearly Established Duty to Remonstrate with Bibb County Detectives or Withdraw the Twiggs County Warrant More Quickly

Instead of arguing false arrest or malicious prosecution against Defendant Stokes—those are the claims raised in the Complaint—Plaintiff argues that Investigator Stokes should have talked the Bibb County investigators out of arresting Plaintiff, and should have withdrawn the Twiggs County warrant more quickly. Not surprisingly, Plaintiff cites no authority for those arguments.

After seeing Plaintiff in person, Defendant Stokes thought there was a 50% chance that Plaintiff was the Marathon robber. Stokes Dep. at 56. Thus under a "preponderance of the evidence" standard there was not enough to tip the scales against Plaintiff. However, probable cause is something less than 50% certainty or probability. And, an officer can have probable cause but entertain some doubt at the same time.

Regardless of any doubt about whether Plaintiff was the Marathon robber, Investigator Stokes had no constitutional duty to remonstrate with investigators from a *different agency* who arrested Plaintiff on *Bibb County warrants*, when the

warrants were based on those officers' independent investigations into *different crimes*. Plaintiff fails to identify any authority for his position. Probably no such authority exists.

As for withdrawing the Twiggs County warrant, Investigator Stokes cautiously waited for alibi evidence from Plaintiff's counsel before seeking dismissal. Plaintiff's counsel initially told Stokes that alibi evidence existed, and he later provided the alibi evidence. Stokes Dep. at 35-36. The alibi evidence seemed to clear Plaintiff of the Marathon robbery, and Stokes took action to withdraw the Twiggs County warrant the same day he was provided with alibi evidence. Stokes Dep. at 37. There was nothing unreasonable about that sequence of events.

Plaintiff provides no authority for the proposition that the United States Constitution imposed a clearly established duty upon Investigator Stokes to seek withdrawal more quickly based solely on some doubt about Plaintiff's resemblance to fuzzy, obscured photos from a convenience store robbery. That is particularly so where the Marathon robbery victim—who saw the robber face to face—picked Plaintiff out of a photo lineup and identified him as the robber.

In sum, qualified immunity protects Investigator Stokes because he did not violate clearly established law.

## **CONCLUSION**

For the foregoing reasons, and as more fully discussed in his initial Brief, Defendant Stokes shows that qualified immunity bars Plaintiff's claims against him.

                    WILLIAMS, MORRIS & WAYMIRE, LLC

                    /s/ Jason Waymire
                    JASON WAYMIRE
                    Georgia Bar No. 742602
                    Attorney for Defendant Stokes

Bldg. 400, Suite A
4330 South Lee Street
Buford, GA 30518
T: 678-541-0790
F: 678-541-0789
terry@wmwlaw.com

# CERTIFICATE OF SERVICE

This will hereby certify that I, the undersigned, have this day served upon all parties the foregoing DEFENDANT STOKES' REPLY BRIEF on all parties via electronic mail through Court's CM/ECF system, as follows:

Andrew J. Whalen , III    ajwhalen3@whalenlaw.net, cward@whalenlaw.net, lhancher@whalenlaw.net

David B. Fife    david@atkinsfife.com, maryjo@atkinsfife.com

Leigh C. Hancher    lhancher@whalenlaw.net, cward@whalenlaw.net

William J. Atkins    bill@atkins-law.com, maryjo@atkins-law.com

This 31st day of October, 2011.

                      WILLIAMS, MORRIS & WAYMIRE, LLC

                      /s/ Jason C. Waymire
                      Jason C. Waymire
                      Georgia Bar No. 742602
                      Attorney for Defendant Stokes

Bldg. 400, Suite A
4330 South Lee Street
Buford, Georgia 30518
678-541-0790
678-541-0789