**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

JOHN KIRK OWENS,          :
         :
     Plaintiff,        :
         :
v.               :     CASE NO.:    5:09-CV-399 (WLS)
         :
CITY OF MCDONOUGH, GEORGIA,  :
KENNETH B. NOBLE,     :
JOHN ABERNATHY,      :
WILLIAM STOKES,       :
         :
     Defendants.     :
_____:

## <u>ORDER</u>

Before the Court are Defendants City of McDonough, Georgia and Kenneth B. Noble's Motion for Summary Judgment (Docs. 56) and Defendant William Stokes's Motion for Summary Judgment (Doc. 64).   For the following reasons, Defendants' Motions for Summary Judgment (Docs. 56 and 64) are **GRANTED-in-part and DENIED-in-part**.

## I.    <u>INTRODUCTION</u>

Plaintiff John Kirk Owens alleges unlawful arrest and detention and malicious prosecution by Defendants City of McDonough, Georgia, Kenneth B. Noble, and William Stokes under the 4th Amendment, 42 U.S.C. § 1983 and the 14th Amendment. Plaintiff also seeks Equitable Relief and an award of Attorneys' Fees and costs pursuant to 42 U.S.C. § 1988 arising from these alleged injuries.

**1.  <u>Jurisdiction and Venue</u>**

The Court's subject matter jurisdiction in this action is predicated on federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.  (Doc. 1, at ¶ 2).  No challenge is made to

the personal jurisdiction over the parties or the appropriateness of venue; which is proper pursuant to 28 U.S.C. 1391, both of which are supported by the facts of this case.  (Id. at ¶ 3)

### 2.  Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised.  Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997).  A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); *see also* Allen, 121 F.3d at 646.

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict.  *See* Celotex, 477 U.S. at 322-23.  The movant bears the initial burden of showing that there is no genuine issue of material fact.  *See* id. at 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *See* id. at 322-24.  Once the movant has met his burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial."  Id. at 324.  A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential

element of the claim.  *See* <u>Cleveland v. Policy Management Sys. Corp.</u>, 526 U.S. 795, 804 (1999); <u>Celotex</u>, 477 U.S. at 323.  To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts." <u>Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 418 U.S. 574, 586 (1986).

**3.  <u>Relevant Facts</u>**

The following summary of relevant facts contains the undisputed facts derived from (i) the Complaint, (ii) Defendant's Answers (Docs. 10 and 12), (iii) Defendants City of McDonough, Georgia and Kenneth B. Noble's Statement of Material Facts as to Which There is No Genuine Issue (Doc. 56), Defendant William Stokes's Statement of Material Facts as to Which There is No Genuine Issue (Doc. 65), Plaintiff's Amended Consolidated Statement of Material Facts to Which There Exists a Genuine Issue to be Tried (Doc. 69), Plaintiff's Response to Defendants City of McDonough and Kenneth B. Noble's Statement of Material Facts as to Which There is No Genuine Issue (Doc. 71), Plaintiff's Response to Defendant William Stokes's Statement of Material Facts as to Which There is No Genuine Issue (Doc. 72), Defendants City of McDonough, Georgia, Kenneth B. Noble's, and William Stokes's Consolidated Response to Plaintiff's Amended Consolidated Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried (Doc. 84).  Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party.  *See* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56.

John Kirk Owens is a lifetime resident of McDonough in Henry County, Georgia.  (Doc. 69 at ¶ 1).  Defendant McDonough, Georgia is a municipality that operates the McDonough Police Department ("MPD").  Defendant Noble is a criminal investigator employed by the MPD

(Doc. 56 at ¶ 2-3). Stokes is a law enforcement officer with the Twiggs County Sherriff's Department (Doc. 65 at ¶ 2).

For more than twenty years, Owens has owned and operated McDonough Fence Company. (Doc. 69 at ¶ 4). In the fall of 2007, Owens was forty-one years old. Owens is 5'11" and, in the fall of 2007, weighed approximately 220 pounds. Owens has brown hair and, at the time, his hair was not graying. He has hazel colored eyes. His face was round, but not chubby. (Id. at ¶¶ 5-18 ). He lives in a house located on Old Jackson Road in Locust Grove. (Id. at ¶ 5) Owens keeps his business and personal checking accounts at the MacIntosh State Bank in Henry County, Georgia. (Id. at ¶ 6). In the fall of 2007, Owens owned several pick-up trucks. (Id. at ¶ 7). Owens has never owned a Chevrolet pick up truck. (Id. at ¶ 8).

## 1. **September 27, 2007 Marathon Gas Station Robbery**

On September 27, 2007, a heavy set white man walked into a Marathon Gas Station on Highway 96 in Twiggs County, Georgia. (Doc. 56 at ¶ 6). He walked up to the counter, pulled a small shiny pistol from his back pocket, pointed it at the store clerk, and told her to give him the money out of the cash register. (Id.) The man took the money, left the store, and drove away in a silver pick up truck. (Doc. 69 at ¶ 32). While the Suspect was robbing the store clerk at gunpoint in the Marathon Store in Twiggs County, Georgia, Owens was making a deposit in his checking account at the McIntosh State Bank in McDonough, Georgia. (Id. at ¶ 68).

A surveillance camera captured several still photographs of the man who robbed the Marathon Gas Station. (Doc. 69 at ¶ 28). The man wore a floppy hat that obscured his face from view, a long light colored shirt, dark pants, and white tennis shoes. (Doc. 56 at ¶ 6). The man had a small mustache and appeared to weigh well over two hundred pounds. (Docs. 65 at ¶ 16, 69 at ¶ 35). The store clerk, described the robber as a white man wearing a cowboy hat. (Doc.

69 at ¶ 34). The surveillance camera captured several still photographs of the man's pickup truck. (<u>Id.</u> at ¶ 36). The truck appeared to be a late model Chevrolet Silverado, champagne or light gold in color, with a rail on the side of the truck box, a 3 ball hitch and an antenna bud on the roof. The truck had a cardboard tag. (<u>Id.</u>). The Twiggs County Sheriff's Office ("TCSO") responded to the scene and, ultimately, the investigation of the Marathon armed robbery was assigned to Defendant Stokes, a criminal investigator for the TCSO. (Doc. 56 at ¶ 7).

Deputy Oscar Basley was the first responding officer. He interviewed the victim, Ok Sun Cho, before turning the investigation over to Defendant Stokes. (Doc. 69 at ¶ 75). Prior to the Marathon robbery, Stokes had no specialized training in investigations and had served as an investigator for about one year. (<u>Id.</u>) Stokes had never used a Photographic Line-up and, other than mandate training in 1995, he had received no training at all on proper composition and use of Photographic Line-Ups. (<u>Id.</u> at ¶ 77). Stokes spoke with the officer on the scene and the witness; he also reviewed surveillance video footage. (<u>Id.</u> at ¶¶ 78-79). Stokes did nothing else in furtherance of his investigation into the Marathon robbery prior to communicating with the Bibb County Sherriff's Office on November 20, 2007. (<u>Id.</u>)

On November 20, 2007, Defendant Stokes met with CID Investigator Holliday of the Bibb County Sheriff's Office to review photographs from the respective robberies in Twiggs and Bibb counties. (<u>Id.</u> at ¶ 80). Stokes concluded that the same person likely committed the robberies in Bibb and Twiggs County. (<u>Id.</u> at ¶ 82). Between September 27, 2007 and November 21, 2007, Defendant Stokes did not independently identify Owens as a "person of interest" or potential suspect for the Marathon robbery in Twiggs County, Georgia. (<u>Id</u>. at ¶ 83).

### 2. **October 27, 2007 First Bank Robbery**

A white, stocky man walked into First Bank in McDonough, Georgia at 12:30 p.m. on October 27, 2007.  (Docs. 56 at ¶ 8, 65 at ¶ 22, and 69 at ¶ 37).  He walked up to Ms. Adcock's teller window and said, "this is a robbery, my two brothers are in the truck and as long as everyone cooperates, no one will get hurt.  (Doc. 69 at ¶ 37).  We want all of your money, no dye packs. Be calm and everything will be fine."  (Id.)  Ms. Adcock put all the cash in her top drawer into the zipper bag the man slid to her; he turned around and walked out of the bank.  (Id.)  While the Suspect was robbing the First Bank in McDonough, Georgia, Owens was installing some gates at the residence of Charles Toll, 110 Emerald Drive, McDonough, Georgia.  (Id. at ¶ 69).

Hannah Jones, a First Bank employee, described the robber as a heavy set white man with a mustache, camouflage hat, and sunglasses.  (Doc. 69 at ¶ 40).  Wendy Telfer, a First Bank employee, described the robber as a stocky white male who was about 5'9" tall.  He wore a big flowing shirt.  (Id. at ¶ 41).  Christie Robinson, a First Bank employee, described the robber as wearing a green camouflage hat, black plastic sunglasses, and having a mustache.  (Id. at ¶ 42).  Janice Ryan, a First Bank employee, described the robber as a white male, about 5'9"-5'11," weighing 250-260 pounds.  (Id. at ¶ 43).

These witnesses filled out Bandit Description Forms. The descriptions given by the witnesses varied considerably.  (Docs. 56 at ¶ 9-10, 65 at ¶ 23, and 69 at ¶ 44 n. 1).   Three witnesses estimated that he was in his forties; two witnesses estimated he was in his fifties.  Estimates of his height varied from 5'4" to 5'11".  (Id.)   Two witnesses estimated his weight at 200 pounds; two others estimated his weight at 250 pounds. Two witnesses described a medium build; three described a "heavy" build.  (Id.)   Other witnesses described the "get away" vehicle

driven by the robber as a Chevrolet Silverado pick up truck, gold/taupe in color, with a cardboard

tag that said, "lost tag." (Doc. 69 at ¶ 46). The First Bank robbery was within the jurisdiction of

MPD and ultimately, Defendant Noble was assigned to lead the investigation. (Doc. 56 at ¶ 9).

The First Bank Robbery was Detective Noble's first robbery investigation. (Doc. 69 at ¶

91). Prior to this investigation, Noble had yet to attend P.O.S.T. training in "Investigations" - an

80 hour course required for investigators in the MPD. (Id. at ¶ 92). First Bank provided Noble

with a DVD of the surveillance footage, together with still photographs captured from the DVD.

Noble gave the photographs to the news media and to local jurisdictions. (Id. at ¶ 93). From

November 2nd – 16th, Noble made no progress with his investigation. (Id. at ¶ 94).

On November 16th, a jail trustee assigned to clean up duty at MPD saw a photograph of

the white male who had committed the robbery at First Bank. (Doc. 65 at ¶ 26). The photograph

was attached to a chalk board in the squad room. (Doc. 69 at ¶ 96). The jail trustee said that he

thought the person looked like Owens. (Id.) Noble accepted the jail trustee as a "reliable

source." (Doc. 84 at ¶ 101).

The jail trustee wrote a statement for Noble. (Doc. 69 at ¶ 102). The statement read as

follows:

> Working at Mc. Police station. Saw a picture (for robbing a bank) of a wanted
> man. Told detective I think I knew this person. His name is John Owens. Told
> him where he lives (corner of old Jackson and Coahn (sic)). I worked with him on
> the side a couple of years ago. He owns McDonough Fence Company. And the
> last time I saw him (about 4 to 5 months ago) [h]e was going through a divorce.
> He was talking about bankruptcy and his business was not doing well. And that he
> wanted to keep his kids. I have know (sic) him since around 1997. (Id. at 104).

Noble did not know the jail trustee or the reason he was in custody. (Id. at ¶ 97). Noble's

Supervisor, Captain Kyle Helgerson, did not know the jail trustee either. (Id. at ¶ 98). Prior to

November 16th, the jail trustee had never provided information to law enforcement officers that had been corroborated through further investigation or other sources.  (Id. at 99).

### 3. <u>November 2, 2007 Colonial Bank Robbery</u>

A heavy set white man with a mustache and stubbly beard wearing a floppy, camouflage hat and dark sunglasses, entered the Colonial Bank in Bibb County around 1:19 p.m. on November 2, 2007.  (Doc. 56 at ¶ 10, 65 at ¶ 25, and 69 at ¶50-55).  When a customer walked away from Amy Gorham's teller window, the heavy set white man approached Ms. Gorham, slid a black bag into her booth, and said, "this is a robbery and I am armed.  (Doc. 69 at ¶ 51).  As long as you give me the money and be quiet and no one will get hurt.  (Id.)  My two brothers are on site."  (Id.)  The heavy set white man moved to Chiquita Harris' booth and repeated his orders.  (Id. at ¶ 52).  While the Suspect was robbing the Colonial Bank in Bibb County, Owens was repairing a fence for Southern Pipe and Supply located at 165 McDonough Parkway, McDonough, Georgia 30253.  (Id. at ¶ 70).

Amy Gorham described the robber as an older man wearing a camp brim hat, black sunglasses, a long sleeve denim button down shirt with a white T-shirt underneath, and denim jeans.  (Doc. 69 at ¶ 54).  According to Gorham, he walked with a slight limp.  (Id. at ¶ 53).  The surveillance system failed so no photographic or video evidence was recovered from the Colonial Bank robbery.  (Doc. 69 at 58).

### 4. <u>November 19, 2007 Capitol City Bank Robbery</u>

At 3:42 p.m. on November 19, 2007, an overweight white male, 6'0" tall, with grey hair and stubble on his face, but no beard, wearing a blue jean shirt, tan fishing hat, and sunglasses, walked into the Capitol City Bank in Bibb County, Georgia.  (Doc. 56 at ¶ 12, 65 at ¶ 27, and 69 at ¶¶ 60-61).  He walked up to teller Tiffany Coffer with a blue cloth bag.  (Doc. 69 at ¶ 58).  He

did not show her a weapon. (Id.) He told her to put the money in the bag, not to use a dye pack, and she would not be hurt. (Id.) Ms. Coffer put the money in the blue bag; he took the bag and left the Capitol City Bank. (Id.) Ms. Coffer described the "get away" vehicle as a late model Chevrolet Silverado pick up with an extended cab, tan in color, with a possible "drive out" tag covering the license plate of the vehicle. (Id. at ¶ 65). While the Suspect was robbing Capitol City Bank in Bibb County, Owens was at the home of Shannon Reyome in McDonough, Georgia giving her an estimate on a fence job. (Id. at 71).

### 4. The Investigation of John Kirk Owens by Noble, Stokes, and Abernathy

The robbery at Capitol City bank received coverage on the evening news in Bibb County. (Doc. 69 at ¶ 107). Bonnie Bray, one of the witnesses to the October 27, 2007 robbery of First Bank in McDonough, saw the evening news coverage of the November 19, 2007 robbery at Capitol City Bank. (Id.) She felt the description of the robber and the robbery sounded very much like the robbery at First Bank. (Id.) Bray contacted Noble regarding the similarities of the robberies. (Doc. 56 at ¶ 16). Noble then contacted Bibb County's Sheriff's Office and spoke with Detective Abernathy regarding the similarities in the robberies. (Doc. 65 at ¶ 32).

Following the jail trustee's statement to Detective Noble, and based on the identification of the suspect in the First Bank Robbery in McDonough, Noble began to investigate Owens. (Docs. 56 at ¶ 15, 65 at ¶ 33). Noble pulled Owens's criminal history, driver's license, bank statements, and records regarding the vehicles he owned. (Id.) Owens' drivers' license was valid. (Doc. 69 at ¶ 109). Owens' drivers' license information showed that Owens renewed his license in February of 2004, three years before the robbery in McDonough. (Id. at ¶ 110). Noble ordered a copy of Owens' driver's license picture. The picture depicted Noble as he

appeared in 2000, as Noble did not have a new picture taken when he renewed his drivers' license in 2004. (Doc. 1, ¶61).

Noble had MPD officers conduct some surveillance around Owens's property in attempts to photograph him or any vehicles that came through, with no avail. (Doc. 69 at ¶ 115). Noble ordered a copy of Owens' driver's license picture. (Id. at ¶ 117). The picture depicted Noble as he appeared in 1999-2000, as Owens did not have a new picture taken when he renewed his drivers' license in 2004. (Id.) Prior to placing Owens' drivers' license photograph in a Photographic Line-Up, Noble took no steps to confirm that the photograph fairly and accurately depicted Owens' as he appeared in November of 2007. (Id. at ¶ 120).

Noble did not show Owens's drivers' license photograph to the jail trustee before putting Owens in a Photographic Line-Up. (Id. at ¶ 122). Noble put Owens' in a Photographic Line-Up because (a) the Jail Trustee's statement that the Suspect looked like Owens, and (b) Owens' drivers' license photograph seemed to resemble the Suspect depicted in the surveillance images. (Id. at ¶ 124). MPD has no policy or standards to guide officers in determining when a person should be placed in a Photographic Line-Up. According to Noble, he was trained to "[b]asically, do an investigation, of course. Once a person of interest is discovered, a Photographic Line-Up can be used." (Id. at ¶ 123).

Prior to creating a Line-Up, Noble failed to secure any independently verifiable information supporting the jail trustee's statement that Owens might be the suspect. (Id. at ¶ 116). Noble ordered a Photographic Line-Up from the Henry County Sheriff's Department. Owens' drivers' license photograph appeared in the middle of the top row, i.e. Position # 2. (Doc. 69 at ¶ 125). Noble met with each of the six witnesses to the First Bank Robbery and had them view the McDonough Photographic Line-Up. (Id. at ¶ 126). None of the six witness

picked Owens from the line-up, or any other suspects. (Id. at ¶¶ 127-132). Noble had a significant amount of objective evidence reducing the possibility that Owens had committed the First Bank robbery, including: (a) Owens' motor vehicle report showing that he did not own a Chevrolet Silverado pick-up truck; (b) Owens' clean driving history and criminal history; (c) surveillance of his residence uncovered no evidence; and (d) Owens' bank records showed no suspect transactions around the time of the robbery. (Id. at ¶ 135).

Around this time, Detective Abernathy told Defendant Noble that he believed that the same perpetrator committed the robbery in Twiggs County. (Doc. 56 at ¶ 19). Defendant Noble informed Detective Abernathy that "he had a reliable informant that had seen the pictures from the [First Bank] robbery . . . and he gave me a physical description. Said the guy had seen a picture, gave him a name, and gave him a little more information. And he thought he could have a possible suspect up there." (Doc. 69 at ¶ 137). Noble provided Abernathy with John Kirk Owens' driver's license photo. (Doc. 56 at ¶ 35). Noble told Abernathy that Owens "had been falling – kind of fallen on some hard times, his business-wise and his personal life . . ." (Doc. 69 at ¶ 138). When Noble described the jail trustee to Abernathy as a "reliable informant," the term meant something specific to Abernathy based upon his prior experience in law enforcement. (Id. at ¶ 142).

Detective Abernathy reviewed a surveillance photograph of the Suspect from First Bank and concluded that it "could possibly be" the same person who robbed the Bibb County banks. (Id. at 139). At some point, Noble told Abernathy that none of the First Bank witnesses picked Owens out of the Line-Up, but Abernathy does not remember whether that was before or after Abernathy prepared his own Line-Up with Owens. (Id. at ¶ 138). Abernathy took no steps to independently verify Noble's representations that Owens should be considered as a suspect. (Id.

at ¶ 139). Noble provided Abernathy with Owens' drivers' license picture. (Id. at ¶ 139). 144. Abernathy made no effort to determine if the picture accurately depicted Owens' present appearance. (Id. at ¶ 143).

Abernathy compiled a Photographic Line-Up in Bibb County. (Doc. 69 at ¶ 146). Nadia James, a witness to the Capitol City Bank robbery, picked Owens' photograph as the person looking most like the Suspect. (Id. at ¶ 147). Amy Gorham, one of the tellers at Colonial Bank, picked Owens' photograph as the person looking most like the Suspect. (Id. at ¶ 148). None of the other witnesses to the Capitol City Bank robbery picked Owens out of the Photographic Line-Up. (Id. at ¶ 149). None of the other witnesses to the Colonial Bank robbery picked Owens out of the Photographic Line-Up. (Id. at ¶ 150). Detective Abernathy obtained an arrest warrant for Owens on November 21, 2007 after receiving positive identification from a witness that the suspect in the bank robberies in Bibb County was John Kirk Owens. (Doc. 65 at ¶ 36).

Around this time, Abernathy called Stokes and told him about John Owens on November 21, 2007. (Doc. 69 at ¶ 139). Investigator Stokes received information from the Abernathy that a couple of bank robberies there may be related to the Marathon gas station robbery. (Doc. 65 at ¶ 37). Based on the information from Abernathy, Stokes concluded that the Marathon gas station robber was the same as the Bibb County bank robber. (Id. at ¶ 38). Stokes had no further leads- but in November 2007 Abernathy told Investigator Stokes that they had a suspect and he lived in Henry County. (Id. at ¶ 39). Abernathy provided Investigator Stokes with a photo lineup, which Stokes showed to the victim from the Marathon robbery. (Docs. 69 at ¶ 152, 65 at ¶ 40). Prior to showing the Photographic Line-Up to the victim, Ms. Cho, Stokes did nothing to independently investigate, corroborate or otherwise verify that Owens should have been considered as a suspect for the Marathon robbery. (Doc. 69 at 153).

Stokes asked Ms. Cho if the she recognized the robber in the photo line-up. (Doc. 65 at ¶ 41). Ms. Cho picked Owens out of the line-up as the Marathon armed robber. (Id. at ¶ 42). Before the Marathon gas station victim picked Owens out of the photo line-up, Stokes learned that two victims in the Bibb County bank robberies picked Owens out of a photo line-up. (Id. at ¶ 44). Stokes did not ask Abernathy how they had identified Owens as a potential suspect for their robberies. (Doc. 69 at ¶154). Stokes did not speak with Defendant Kenneth Noble prior to November 21, 2007 when he obtained a warrant for Owens's arrest (Stokes Dep., p. 24). On the basis of Ms. Cho's identification alone, Stokes applied for an Arrest Warrant for John Kirk Owens charging him with the offense of Robbery before a Twiggs County Magistrate judge on November 21, 2007. (Doc. 65 at ¶ 45, 69 at ¶ 157). Stokes obtained the warrant; it reads, in pertinent part, as follows: "16-8-41 Robbery. The offender did with intent enter the Marathon Convenience store with the intent to commit a felony within. The offender approached the cashier with a small caliber revolver in his hand and demanded money from the cashier." (Doc. 69 at ¶ 158).

### 5. <u>The Arrest and Adjudication of John Kirk Owens</u>

After Abernathy received positive identifications from witnesses Gorham and James, he went before a magistrate judge and swore out an arrest warrant for Owens on two counts of Robbery by Intimidation. (Doc. 69 at ¶ 160). Abernathy drove to McDonough to meet with Noble and serve his arrest warrants upon Owens. (Id. at ¶ 161). Stokes also traveled to McDonough, Georgia on November 21, 2007 to meet Abernathy and Noble. (Id. at ¶ 162). Detective Abernathy arrested Owens at his residence on November 21, 2007 based on the two arrest warrants issued for Bibb County. (Doc. 56 at ¶ 25). Noble had secured a search warrant for Owens' home from a magistrate judge in Henry County. (Id. at ¶ 26).

Abernathy met Owens, explained the Bibb County charges, handcuffed him, and placed him in the back of his squad car. (Doc. 69 at ¶ 166). Abernathy recalls Owens saying something to the effect, "bank robbery? I ain't robbed any bank. . . " (Id. at ¶ 167). Abernathy read Owens his Miranda rights and Owens invoked his right to counsel. (Id. at ¶ 168). Prior to traveling to Owens's residence, Defendant Noble obtained a search warrant from a Henry County Magistrate judge that he executed on the evening of November 21, 2007. (Doc. 56 at ¶ 24). Owens was already in the custody of the Bibb County Sheriff's Office at the time the house was searched. (Id.) No evidence was seized in the search of Owens' residence. (Id.)

Abernathy admits that he did not pay attention to any height, weight, or facial distinctions between the pictures of the suspect and the physical presence of Owens. (Doc. 69 at ¶¶ 169-172). When Stokes saw Owens in person at the scene of his arrest, he immediately realized that Owens did not look like the person who committed the Marathon robbery. (Id. at ¶¶ 171-172). Stokes saw that "his body mass, his weight" did not remotely resemble that of the Suspect. (Id. at 173).

Even though Stokes, Abernathy, and Noble all agreed that the same person had committed the robberies in their respective jurisdictions, Stokes did not say anything to Abernathy, or Noble when he saw Owens in person and realized that he looked nothing like the Suspect. (Doc. 69 at ¶ 174). Stokes had the Twiggs County arrest warrant with him on November 21, 2007 but he did not serve Owens with the warrant. (Id. at ¶ 178). Stokes instead turned the arrest warrant over to a clerk in the Twiggs County Sheriff's Office. (Id. at ¶ 180). The Twiggs County arrest warrant was never executed. (Doc. 65 at ¶ 53).

Stokes followed normal procedure and on November 21, 2007, he placed a hold on the Owens. (Doc. 69 at ¶ 181). Stokes understood that if Owens attempted to make bond in Bibb

County, "he can bond out of that facility, but then he will be transferred to the other agencies holding a warrant for him . . . in other words, he could bond out, but he wouldn't get out." (Id. at ¶ 179). Between November 21, 2007 and December 7, 2007, Stokes did not make any further progress into the investigation of the robberies or Owens; also, Stokes made no effort to recall the Twiggs County arrest warrant. (Id. at ¶ 183-184). On November 29, 2007, Defendant Noble obtained an arrest warrant for Owens from a Henry County Magistrate judge. (Doc. 56 at ¶ 26). The arrest warrant was granted on witness identifications in both Bibb County and Twiggs County of the potential suspect identified by the jail trustee in McDonough. (Id. at ¶ 28).

Owens was brought before a magistrate judge in Bibb County on December 7, 2007. (Doc. 69 at ¶ 189). The magistrate judge set a $3,000.00 bond; however, there was a hold on Owens from Twiggs County based on Defendant Stokes's warrant for the Marathon Gas Station armed robbery. (Id.) A probable cause hearing was held in the Bibb County Law Enforcement Center on December 7, 2007 to determine if there was probable cause for Owens' arrest in Bibb County. (Doc. 56 at ¶ 27). Owens's attorney had evidence in the form of witnesses, videotape, documents, and affidavits that affirmatively proved that Owens had not committed any of the robberies. (Doc. 1, ¶144).

The Bibb County charges against Owens were dropped because no probable cause was found. (Doc. 56. at ¶ 28). Investigator Stokes ultimately withdrew the Twiggs County arrest warrant after being presented with alibi evidence from Owens's criminal defense attorney. (Doc. 65 at ¶ 54). Although Stokes claims he took immediate steps to have the Twiggs County warrant dismissed on December 7, 2007, the hold at the Bibb County Jail was not lifted until December 10, 2007. (Doc. 69 at ¶ 188).

Following the hearing, John Kirk Owens voluntarily turned himself into the Henry County Sheriff's Office on December 12, 2007, where he was booked and released. (Doc. 56 at ¶ 29). Owens was never jailed in Henry County on these charges. (Id.) Another robbery was committed on December 12, 2007, which confirmed that Owens was not the perpetrator of the First Bank robbery in McDonough, Georgia. Defendant Noble recalled the Henry County arrest warrant on December 13, 2007. (Doc. 56 at ¶ 30). During this time, Owens' arrest as the perpetrator of several bank robberies was broadcast on several television news networks. (Doc. 1, ¶154). Owens' arrest as the perpetrator of several bank robberies was covered by several newspapers, including the paper in Owens' home town of McDonough, Georgia. (Doc. 1, ¶155).

## II.   DISCUSSION

### A.  Parties' Arguments

#### 1.  Defendants City of McDonough, Georgia and Investigator Kenneth B. Noble's Motion for Summary Judgment (Doc. 54)

Defendants argue that Detective Noble is entitled to qualified immunity because he was acting within his discretionary authority when the events giving rise to Plaintiff's claims occurred. Regarding Plaintiff's claims relating to the allegedly deficient investigation, Defendants assert that an officer is only required to have an objectively reasonable basis for believing facts, the sum of which give rise to probable cause. To this end, Defendant Noble states that he based his probable cause determination on several factors, including, the strong similarities between the still photographs taken at the Marathon Gas Station and Owens's driver's license photograph, the identification of the photograph of the bank robber by a jail trustee that formerly worked for Owens, and the identification of Owens from a Photographic Line-Up by an eye witness to one of the robberies in Bibb County. (*See* Doc. 55 at 8).

Defendant asserts that the presence of probable cause is an absolute bar to Plaintiff's false arrest claim. However, even if no probable cause existed, Defendants claim they are still entitled to summary judgment on Plaintiff's claims because the applicable standard is arguable probable cause. Arguable probable cause, according to Defendants, requires only that no reasonable officer could've found probable cause under the circumstances based on the knowledge the officer in question possessed. Defendants argue that because Plaintiff's claims against Defendant Noble fail, Plaintiff's claims against the City of McDonough Georgia must also fail. Here, Defendants assert that the MPD did not fail to train its criminal investigators and Plaintiff has failed to show that the alleged wrong occurring in this case is the result of an official custom or policy of Defendant City of McDonough, Georgia. Moreover, Defendants argue that Defendant City of McDonough, Georgia cannot be held vicariously liable because the conduct is required to rise to a level of deliberate indifference under the law.

Defendants also argue that Plaintiff did not suffer an actual injury due to Defendant Noble or the MPD's actions; therefore, they conclude that Plaintiff cannot show he is entitled to damages. Defendants allege that Plaintiff's incarceration was a result of the Bibb County arrest- not their warrant or hold. In light of this fact, Defendants state that they cannot be held liable where no injury arose to Plaintiff as a result of the alleged unlawful search and seizure. In further support of this contention, Defendants assert that Plaintiff has not shown any facts to support an award of compensatory damages, especially relating to emotional distress. Because Plaintiff's compensatory damages claims fail, Defendants argue that Plaintiff is not entitled to punitive damages. (Id.)

### 2. __Defendant Detective William Stokes's Motion for Summary Judgment (Doc. 64)__

Defendant Stokes also seeks summary judgment as to Plaintiff's claims. Defendant Stokes's primary argument regarding Plaintiff's false arrest claim is that Plaintiff was never incarcerated on the basis of the Twiggs County warrant sought by Defendant Stokes. Based on this fact, Defendant asserts that Plaintiff has failed to show that warrant based detention can support a false arrest claim.

Defendant asserts that Defendant Stokes is entitled to qualified immunity because Plaintiff has shown no evidence on which to base a finding that Stokes's actions rise to the level of a constitutional violation. Under the applicable legal analysis, Defendant Stokes argues that probable cause- or at the least- arguable probable cause existed and supported his actions seeking the Twiggs County warrants. Defendant argues that the Twiggs County warrant was supported by several facts that would satisfy a finding of probable cause, or arguable probable cause; these facts include, but are not limited to, the eyewitness identification where the victim chose Plaintiff from a Photographic line-up.

In addition to his other defenses, Defendant Stokes argues that Plaintiff should be seeking relief pursuant to the 14th Amendment despite his pleadings citing the 4th Amendment. (Doc. 55). According to Defendant, the relevant analysis must yield a finding that Defendant Stokes did not violate clearly established law. In support of this contention, Defendant points to the fact that Plaintiff has failed to show direct pre-incident authority that would provide Defendant Stokes with fair and clear warning regarding the diameters of the instant constitutional violation as the law requires. (Id.)

### 3. **Plaintiff's Consolidated Response to Defendants' Motions for Summary Judgment (Doc. 68)**

Plaintiff argues, among other things that Defendants undertook a constitutionally deficient investigation prior to seeking the warrants and ultimate arrest of Plaintiff. Plaintiff points the Court towards the Defendants use of the dated photograph in the line-up and the disregard of exculpatory evidence as proof of his contention that the officers' conduct violated his clearly-established constitutional rights. Plaintiff emphasizes the officer's failure to notice the "stark" differences between Plaintiff at the time of arrest as compared to the driver's license photograph used in the line-up. For these reasons, Plaintiff states that no qualified immunity may exist because an objective, reasonable, and minimally trained official would not have ignored these facts. Plaintiff's primary arguments rely on the alleged investigatory failures of Defendants as support for his claims that his constitutional rights were violated. (*See* Doc. 68 at 6).

Here, Plaintiff argues that Defendants' conduct was so reckless as to be outside of the conduct protected by qualified immunity. To this end, Plaintiff argues that throughout the time in question leading to Plaintiff's arrest, the Defendants "lacked indicia of probable cause" that could have been easily cured by independent investigations or the corroboration of information obtained from other officers. Plaintiff further argues that Defendant Noble's affidavit supporting the arrest warrant was legally insufficient and omitted material facts. Plaintiff asserts that Defendant's actions, specifically the omission of exculpatory evidence, rise to the level where the Court may infer recklessness under the law. In light of this fact, Plaintiff argues that Defendant City of McDonough is also liable for Defendant Noble's conduct because it failed to

properly train Noble and, through the actions of Noble's superiors, ratified his conduct.[1] Plaintiff states a jury question exists regarding the reasonableness of Defendant's actions because Defendant's conduct does not meet a qualified immunity standard under the applicable law.

In support of his contention, Plaintiff points the Court to Noble's independent investigation of the First Bank robbery which produced no leads and his dependence on the identification and statements of the jail trustee. Plaintiff argues that the jail trustee was not a reliable source; the jail trustee had no history with the MPD and his credibility was unsupported by any facts. Plaintiff states that Noble took no independent steps to investigate the jail trustee's identification of Plaintiff and could find no evidence to corroborate his claims- yet transmitted Plaintiff's photographs to other law enforcement agencies despite these exculpatory facts. Plaintiff argues that this evidence and other exculpatory evidence existed and was ignored by Defendant.

Regarding Defendant's arguments that Plaintiff cannot show an injury or an entitlement to damages, Plaintiff argues that his incarceration- lengthened by Defendant Stokes's Twiggs County hold- is sufficient to show that he suffered harm at the hands of Defendants. (Id.) Plaintiff also argues that these harms are compensable under the law.

### 4. **Defendant City of McDonough, Georgia and Investigator Kenneth B. Noble's Reply to Plaintiff's Response (Doc. 85)**

In reply, Defendants argue that Plaintiff's Statement of Disputed Material Facts (Doc. 69) presents no questions of fact for the jury. Instead, Defendants argue that Plaintiff simply re-words and repackages Defendants' factual statements. Defendants reemphasize their arguments regarding their entitlement to judgment on Plaintiff's claims under the protections afforded by

---

[1]    Plaintiff asserts that a disputed material fact exists as to whether Defendant Noble was directed to seek the warrant against Plaintiff. (Doc. 68). Plaintiff alleges that the record supports a finding that Defendant Noble sought an arrest warrant at the direction of his supervising officers, despite the fact that Defendants allege he sought the warrant on his own. (Doc. 55). The Court agrees a question of fact exists, as discussed below at §II.B.2.(a).

qualified immunity. Defendants allege that other officers in Noble's position also believed that Noble had probable cause, including the other Defendants and Noble's supervisors, which supports a finding that Defendant's conduct meets the standards under the law. Defendants also note that Plaintiff does not allege that Defendant Noble committed perjury or testified in reckless disregard when seeking the arrest warrant against Plaintiff. In light of the foregoing, Defendants argue that Plaintiff's claims are based on facts that do not meet the applicable legal standards within the Eleventh Circuit. According to Defendants, applicable authority regarding omissions of exculpatory evidence and materiality in similar factual situations requires Plaintiff to show deliberateness, intent, and/or malice.

Defendants further argue that any omission by Defendant Noble, if any occurred, was not significant enough to pierce the "shield" of qualified immunity and was not material to Noble's finding that probable cause existed. To this end, Defendants remind the Court that Noble did not execute the arrest warrant and should not be penalized as if his warrant were the detaining instrument. Upon learning of Plaintiff's alibis and other evidence, Defendants quickly dismissed the warrants against Plaintiff. Regarding Plaintiff's <u>Monell</u> liability arguments, Defendants argue that the City of McDonough had to ratify not only the alleged unconstitutional action but also the unconstitutional basis for decision. Defendants assert that Plaintiff has failed to place facts in the record to support such a finding and that the facts support a grant of judgment on all of Plaintiff's claims against Defendants.

**5.** **Defendant Detective William Stokes's Reply to Plaintiff's Response (Doc. 86)**

Defendant Stokes argues that Plaintiff, in his Response, abandons his false arrest and malicious prosecution claim against Stokes, and instead focuses on a new claim- not stated in his Complaint. (Doc. 86). Defendant also argues that Plaintiff has not met his burden under the

burden-shifting standards applicable where Defendant seeks the protections of qualified immunity. (Id.) Moreover, Defendant reemphasizes his claims that Defendant Stokes and Twiggs County did not cause Plaintiff to be seized. (Id.) Here, Defendant argues, the unlawful seizure is the sole fault of Bibb County. To this end, Defendant argues that Plaintiff has failed to identify any violation of clearly established law and that Stokes had no duties to Plaintiff that were not met by his conduct during the investigation and following Plaintiff's arrest. (Id.) Defendant reasserts that, at all times, Defendant had probable cause-or at the least arguable probable cause. Defendant argues that these causation standards do not require the standards of certainty that Plaintiff asserts and that the facts support a grant of judgment on all of Plaintiff's claims against Defendant.

**B.  Analysis**

**1.  False Arrest  (Count One)**

Plaintiff alleges false arrest in violation of his fourth amendment rights pursuant to 42 U.S.C. § 1983 against Defendant Detective Noble, Investigator Stokes, and the City of McDonough by Monell liability. (Doc. 1). "Government actors may be sued under 42 U.S.C. § 1983 in either their official or individual capacity." Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997), *quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). Here, it is undisputed that Defendants were acting within the course and scope of their discretionary authority when they engaged in the conduct, including the alleged deficient investigations and swearing of warrant applications against Plaintiff. (Doc. 68), *see also* Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir., 2002) ("[t]o receive Qualified Immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.").

In Response, each of the Defendants as government officials, seek the protections afforded while acting within their official capacity under Qualified Immunity. (Docs. 54 and 64). *See* Gold v. City of Miami, 121 F.3d 1442, 1445 (11th Cir. 1997), *quoting* Harlow v. Firtzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982) ("[w]hen sued in an individual capacity, an official may enjoy Qualified Immunity from suit in certain actions." Often, even if public officials may have violated a Plaintiff's Constitutional rights, Qualified Immunity shields public officers from personal liability if those Constitutional acts "did not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818, 102 S.Ct. at 2738.

Because Defendants have shown that they were acting within their discretionary authority, "the burden shifts to the Plaintiff to show that Qualified Immunity is not appropriate." *See* Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004). To overcome a qualified immunity defense at summary judgment, the evidence, when viewed in the light most favorable to the plaintiff, must "make out a violation of a constitutional right," and "the right at issue [must have been] 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009). The undisputed facts show that Plaintiff was arrested and incarcerated for a crime that he did not commit;[2] thus, Plaintiff has properly alleged a violation of a constitutional right. An arrest qualifies as a "seizure" of a person, and an arrest without probable cause violates the Fourth Amendment, and a cause of action for damages may be asserted under § 1983. Madiwale

---

[2] The Court references Plaintiff's innocence in an effort to communicate that Plaintiff has stated a cognizable constitutional violation. This reference is provided only to more fully set forth the Court's understanding of the facts and Plaintiff's arguments and provide context helpful to understanding more fully the material events and issues in this case. The Court notes that whether or not Plaintiff is innocent is not the deciding factor in its analysis. As discussed herein, whether or not Defendant Officers had *arguable probable cause* at the time of Plaintiff's arrest is the applicable and controlling legal standard.

v. Savaiko, 117 F.3d 1321, 1324 (11th Cir.1997), Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 n. 15 (11th Cir.2010).  The Court now considers whether that right was clearly established at the time of the incident.  Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009).  Vinyard v. Wilson, 311 F.3d 1340, 1349 (11th Cir. 2002) ("[i] f, for purposes of qualified immunity, sufficient evidence exists that a government official violated a constitutional right, the Court must then determine whether that right was clearly established at the time of the violation.").

Plaintiff has the burden of establishing the absence of probable cause to succeed on a § 1983 claim.  Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998).  To do so, plaintiff must show that no reasonably objective police officer would have perceived there to be probable cause for the arrest.  Phillips v. Fla. Fish & Wildlife Conservation Comm'n, 325 F. App'x 864, 865 (11th Cir. 2009).  However, the existence of probable cause at the time of arrest constitutes an absolute bar to a § 1983 action for false arrest.  Marx v. Gumbinner, 905 F.2d 1503, 1505 (11th Cir.1990, see also Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir.1996).

Defeating a defendant officer's foundation for probable cause is a heavy burden for a Plaintiff.  The Supreme Court has found that "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Illinois v. Gates, 462 U.S. 213, 245 n. 13, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983).  Further, "[p]robable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir.1996) (quoting Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir.1990)).  If a Constitutional violation occurred because the officer lacked probable cause, the Court considers - as Defendants note- whether arguable probable cause existed.  "Arguable probable cause exists 'where reasonable

officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.' " See Scarbrough v. Myles, 245 F.3d 1299, 1302 (11th Cir. 2001).

### a) **Investigator William Stokes**

The Court **GRANTS** Defendant William Stokes's Motion for Summary Judgment as to Plaintiff's false arrest claim (Count One).  As discussed below in detail, the law is well established that "a government officer Defendant is entitled to Qualified Immunity unless, at the time of the incident, the 'preexisting law dictates, that is, truly compel[s],' the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the circumstances. Marsh v. Butler County, Ala., 268 F.3d 1014, 1031 (11th Cir. 2001)(internal quotations omitted).

Here, the Court finds that Defendant has provided sufficient evidence under the law to support a finding of arguable probable cause and, therefore, should be protected by Qualified Immunity.  Even construed in a light most favorable to Plaintiff, the facts before the Court do not support a conclusion that reasonable, similarly situated public officials possessing the information or evidence that Defendant had at the time would not have drawn the same conclusions from the evidence upon which Defendant Stokes relied.  The Court distinguishes Defendant Stokes from Defendant Noble for, among other things, his reliance on information obtained from Defendant Noble and his reliance on the eyewitness identification of Plaintiff obtained from the victim of the Marathon robbery.

The law supports a finding of qualified immunity barring Plaintiff's claims against Defendant Stokes based on his reliance on the investigations of Defendant Noble and Abernathy as supplied to Defendant Stokes.  "When a group of officers is conducting an operation and there

exists at least minimal communication between them, their collective knowledge is determinative of probable cause." Wilson v. Howard, 894 F.2d 1245 (11th Cir. 1990) (internal citation omitted). The Court's finding does not portray Stokes's conduct as ideally reasonable or a model for police investigation. Defendant's failure to communicate his doubts about Plaintiff's appearance and the likelihood that he was not the perpetrator to his fellow officers is, at best, negligent. *See* Hunter v. Bryant, 502 U.S. 224, 227, 112 S Ct. 534, 116 L.Ed.2d 589 (1991) (officers who reasonably but mistakenly conclude that probable cause existed are entitled to immunity). However, the evidence taken in the light most favorable to Plaintiff, establishes that Defendant Stokes conducted an investigation, interviewed an independent witness, including an eyewitness that identified Plaintiff, and concluded that Plaintiff was the suspect. While Defendant's investigation may not have been the most thorough and submitted Plaintiff to great discomfort, Plaintiff has not provided facts that prove Defendant acted in a manner that should deny him Qualified Immunity. See Kelly v. Curtis 21 F.3d 1544 (11th Cir. 1994) (citing the Eleventh Circuit's holding in LeSavage v. White, 755 F.2d 814, 820 (11th Cir.1985), where the Court held that a police officer "was at most negligen[t]" when he failed to get an exculpatory report from a fellow officer before seeking an arrest warrant).

The Court finds that this evidence in the totality of the circumstances was sufficient to support Defendant Stokes's basis for probable cause; and at the very least, provided grounds to support a finding of arguable probable cause. Because the presence of arguable probable is an absolute bar to Plaintiff's claim, the Court **GRANTS** Defendant William Stokes's Motion for Summary Judgment as to Plaintiff's false arrest claim (Count One) and Plaintiff's malicious prosecution claim (Count Two).

### b)  **Detective Kenneth B. Noble and the City of McDonough, Georgia**

The Court first considers the actions of Defendants Detective Kenneth B. Noble and the City of McDonough, Georgia. The Court finds that summary judgment is not appropriate on Plaintiff's false arrest claim against Defendants Noble and the City of McDonough. Having closely reviewed the facts in the record in the light most favorable to Plaintiff, and the arguments of the parties, the Court finds that there exists questions of fact as to whether a reasonable officer could have concluded that probable cause existed in order to seek the arrest warrant against Plaintiff. The Court notes several significant facts that form the basis of its finding that probable cause, and arguable probable cause, did not exist. These facts include, but are not limited to, Defendant's reliance on the jail trustee's identification of Plaintiff, and Defendant's transmission of Plaintiff's photograph and representation of reliability in the absence of eyewitness identifications or other corroborating evidence.

The undisputed material facts construed in the light most favorable to Plaintiff reveal the following information regarding Noble's investigation of Plaintiff. At the time of the incident Detective Noble had been employed with the McDonough Police Department over eight years, and had been working Criminal Investigations Division for nearly two years. (*See* Doc. 75 at 17). The First Bank Robbery was Detective Noble's first robbery investigation. Prior to this investigation, Noble had yet to attend P.O.S.T. training in "Investigations" - an 80 hour course required for investigators in the MPD.

Noble received Plaintiff's name from a jail trustee that approached him and advised him that "he thought he knew" the individual pictured in a photograph taken from the bank robbery. According to the jail trustee, Plaintiff resembled perpetrator. The jail trustee was not completely certain regarding the suspect's identity. In fact, the jail trustee stated: "Saw a picture (for

robbing a bank) of a wanted man. Told detective I think I knew this person." (Doc. 69 at ¶ 104).

Other than the jail trustee's statements,[3] Noble had no leads to identifying the bank robbery suspect. Noble did not know the jail trustee prior to this conversation and he had no information regarding the jail trustee and his history with the MPD. Thus, the jail trustee had no history of credibility or reliability with Noble or any of his fellow Officers. Following receipt of Plaintiff's name from the jail trustee, Noble made several investigative steps. Noble obtained Plaintiff's driver's license photograph and compared Plaintiff's photograph with the surveillance footage and still photographs given to him by First Bank. He and MPD officers conducted surveillance around Owens's property in attempts to photograph him or any vehicles around his home.

Noble did not show Plaintiff's photograph to the jail trustee prior to putting Plaintiff's picture in a Photographic Line-Up for the bank robbery witnesses to view. When constructing the lineup, Noble was at all times acting in accordance and compliance with existing policies and procedures of the MPD- because the MPD had no policy or standards to guide officers in determining when a person should be placed in a Photographic Line-Up. In sum, prior to creating a Line-Up, Noble failed to secure any independently verifiable information supporting the jail trustee's statement that Owens might be the pictured robber. At all times relating to the use of Plaintiff's driver's license photograph, Noble was aware that the photograph was several years old.

The Court finds that a question of fact exists as to whether reasonable officers in the same totality of circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest Plaintiff based, in part, on reliance the jail trustee's

---

[3] The jail trustee's statement was not a positive identification. A review of the statement provided to Defendant Noble reveals that the jail trustee stated only that he "[thought] he knew this person." (Doc. 69 at ¶ 104). When considered in context, the Court finds that the statement is vague and ambiguous. Taken alone, the statement cannot be considered a reliable positive identification.

identification, absent independent verification.  <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1232 (11th Cir. 2004).   The Court notes that Defendant Noble did not arrest Plaintiff on November 21, 2007, the date that he executed the search warrant.  However, Defendant did transmit Plaintiff's photograph and information to the other law enforcement officers- which they in turn relied upon.  The Court premises the liability of Defendant in violating Plaintiff's constitutional rights on a deficient investigation and unreasonable reliance on the information from the jail trustee within the totality of the circumstances as known to Defendant at the time of the incident.

In determining whether an informant's tip rises to the level of probable cause, the Court assesses the totality of the circumstances.  <u>United States v. Gonzalez</u>, 969 F.2d 999 (11th Cir. 1992); <u>United States v. Campbell</u>, 920 F.2d 793, 796-97 (11th Cir. 1991).  The Court is required to consider the "relevance of factors such as the informant's veracity, reliability, and basis of knowledge." <u>Ortega v. Christian</u>, 85 F.3d 1521, 1525 (11th Cir.1996) (reversing district court's grant of judgment on the pleadings to Defendant City and finding absence of probable cause where arresting officer relied on unsubstantiated informant's tip, failed to take any independent steps to investigate the tip, and did not have any evidence which would have corroborated the tip) (internal citation omitted); <u>Kingsland v. City of Miami</u>, 382 F.3d 1220 (11th Cir. 2004).  In addition, the Court must consider whether an officer corroborated the details of an informant's tip through independent police work- which "adds significant value to the probable cause analysis." <u>Id.</u> at 1525.   Here, the Court finds that the informant's statement did not rise to the level of a reliable or credible identification and without more it should not have been relied upon by Defendant to such a great extent.  These facts are not sufficient to establish probable cause, or at the least arguable probable cause.  *See* <u>Eubanks v. Gerwen</u>, 40 F.3d 1157 (11th Cir. 1994)

(affirming district court's grant of summary judgment on false arrest claim where no question of fact existed as to whether Defendant's actions were objectively reasonable after Defendant relied on an informant's tip and informant previously supplied reliable information and "tip contained specific information which tended to show tip itself reliable.").

The facts show that based on the jail trustee's statement that he "thought he knew" the perpetrator, whom he later suggested was Plaintiff, and Defendant's review of Plaintiff's dated driver's license photo, Defendant ordered a Line-Up and included Plaintiff's photograph. The existence of a question of fact as to the reasonableness of Defendant's actions is further supported by the fact that none of the six eyewitnesses to the First Bank Robbery identified Plaintiff from the Photographic Line-Up- or any of the other suspects.[4]

The Court considers Defendant Noble's reliance on the informant's tip in view of the totality of the circumstances; including, the wide variety of physical descriptions given by Defendant Noble's eyewitnesses. The descriptions ranged in age (40-50), height (5'4 to 5'11), and weight (200 pounds to 250 pounds). Coupled with these facts, the Court notes that several facts within Defendant's investigation weighed against Plaintiff as the perpetrator; including, the age of Plaintiff's driver's license photograph, and Plaintiff's motor vehicle report showing that he did not own a Chevrolet Silverado pick-up truck. The Court also finds it particularly significant that Defendant Noble thought it was necessary to obtain surveillance of Plaintiff's residence; however, after uncovering no evidence to support a conclusion that Plaintiff was the perpetrator he continued his course of action, ultimately leading to the arrest of Plaintiff. While

---

[4]     As Defendants note, the Court dismissed Defendant Abernathy from this action, and dismisses Defendant Stokes from this action finding that arguable probable cause existed. The Court notes that these Defendants relied on Defendant Noble's representations that a "reliable" informant identified Plaintiff, and corroboration of Plaintiff's identity as the perpetrator by the eyewitness's account. The Court finds it significant that none of the eyewitnesses to the First Bank Robbery identified Plaintiff as the perpetrator. Based in part on this fact, the Court distinguishes between the actions of former Defendant Abernathy and Defendant Stokes because their actions were substantially based on the Defendant's transmission of information which they could rely upon as information from a fellow law enforcement Officer.

none of these facts are dispositive when considered alone, none of these facts are corroborative of Defendant's ultimate conclusion. These facts taken as a whole, as the Court is required to consider them, do not support a finding of probable cause, or arguable probable cause.

Despite the lack of corroborating evidence pointing to Plaintiff as the perpetrator, Defendant Noble told the officers in other jurisdictions that he had reliable information and transmitted Plaintiff's photograph to the Officers.[5]   Additionally, Noble obtained a search warrant and after executing the warrant obtained no evidence from Plaintiff's home. Noble then obtained an arrest warrant for Plaintiff despite no new evidence supporting Owens as the perpetrator. These warrants were not recalled until December 13, 2007. Regarding these facts, the Court does give weight to Defendant's arguments relating to the fact that Plaintiff was not incarcerated due to the Henry County charges- only booked and released. However, the Court finds Plaintiff's response persuasive where Plaintiff asks the Court to consider the interconnectedness of the three counties' investigations, outstanding arrest warrants and holds and their effect on Plaintiff's incarceration, bond amount, and release. Defendant Noble cannot reasonably argue that the other arrests were unrelated to his knowing conduct.

The Court does not reach its finding absent a close consideration of the parties' arguments and the applicable law. Defendants argue that even if in a manner construed most favorably to Plaintiff, Defendants' actions do not warrant a finding that they are not protected by qualified immunity. The Court disagrees. In Kingsland v. City of Miami, 382 F.3d 1220 (11th Cir. 2004), a case heavily relied upon by Plaintiff, Kingsland brought a § 1983 malicious prosecution claim, alleging that the defendant police officers had fabricated evidence used to prosecute her for DUI. The Eleventh Circuit Court of Appeals found that a fact issue existed as

---

[5]     Also, other than the other Officers' beliefs that the same person committed all three robberies, the evidence in the other two investigations does not boot-strap Noble's probable cause, or arguable probable cause analysis.

to whether the officers had failed to conduct a reasonable investigation, manufactured evidence and made deliberate false statements to judicial bodies in their arrest affidavits.[6]  While the instant facts do not necessarily rise to the level of the outrageous conduct of the officers in Kingsland,[7] the Court finds that the instant facts do raise a question of fact as to the reasonableness of Defendant Noble's intentional conduct.  Further, Plaintiff argues that Defendant's actions were at a minimum reckless.

"Qualified immunity is, as the term implies, qualified.  It is not absolute.  It contemplates instances in which a public official's actions are not protected." Kingsland, 382 F.2d at 1233 (internal citation omitted).  Here, the Court finds that if the Plaintiff's version of the facts is true, a question of fact exists as to whether Defendant conducted a reasonable investigation that gave rise to probable cause.  Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (arresting officer is required to conduct a reasonable investigation to establish probable cause).  Moreover, in a qualified immunity analysis, the officer is charged with possessing all of the information reasonably discoverable by an officer acting reasonably under the circumstances.  Kingsland v. City of Miami, 382 F.3d 1220, 1228 (11th Cir. 2004).  The Court finds that the existence of easily discoverable facts suggesting Plaintiff's alibi's (*e.g.* Plaintiff's appearance,  Plaintiff's alibis for each robbery) negate a finding of probable cause or arguable probable cause.  To this

---

[6]     *Compare* Trujillo v. Fla. Agency for Health Care Admin., 405 Fed. Appx. 461 (11th Cir. 2010) (affirming the district court's grant of summary judgment where Plaintiff proffered no evidence of fabrication and argued that Defendant ignored exculpatory evidence, failed to access the best documentary evidence available, and asked witnesses hypothetical and leading questions where the only exculpatory evidence Defendant allegedly ignored was Plaintiff's own statement which did not negate existence of probable cause).

[7]     The Eleventh Circuit noted in Kingsland that factual circumstances were "a unique and exceptional case wherein the investigating officers were responding  to a call made by a fellow officer . . . to an accident involving that very officer" and the plaintiff "complain[ed] of a conflict of interest and suggested a possible motive for allegedly covering up a fellow officer's wrongdoing." Kingsland, 382 F.3d 1220 at 1228 n.9.

end, the Court also weighs Defendant's lack of corroboration of the discovered facts through independent police work as "noteworthy in its probable cause analysis." Id. at 1229.

Based on the foregoing, the Court simply cannot conclude that as a matter of law probable cause, or arguable probable cause existed. A genuine material dispute of fact exists as to whether an objective police officer would have perceived there to be probable cause for the arrest. The Court, as discussed above, finds that Plaintiff's right to be free from false arrest was clearly established at the time of the incident. *See* Vinyard v. Wilson, 311 F.3d 1340, 1349 (11th Cir. 2002). Thus, the Court finds that the record, construed in a light most favorable to Plaintiff does not warrant a grant of summary judgment to Defendants Kenneth Noble and the City of McDonough Georgia. Plaintiff's false arrest claim (Count One) may proceed to trial as to Defendants Kenneth Noble and the City of McDonough, Georgia.

### 2. Malicious Prosecution (Count Two)

To establish a federal malicious prosecution claim under § 1983, a Plaintiff must prove (1) the elements of the common law tort of malicious prosecution,[8] and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. Wood v. Kesler, 323 F.3d 872, 881 (11th Cir.2003), *cert. denied,* 540 U.S. 879, 124 S.Ct. 298, 157 L.Ed.2d 143 (2003). "It is well settled that in an action to recover damages for malicious prosecution where, as here, the evidence is in dispute, the existence or non-existence of malice and want of probable cause are questions of fact for the jury." Good Holding Co. v. Boswell, 173 F.2d 395, 399 (5th Cir.1949).[9]

---

[8]    The Georgia tort of malicious prosecution has the following elements: (1) prosecution for a criminal offense; (2) under a valid warrant or accusation or summons; (3) termination of the prosecution in favor of the Plaintiff; (4) malice in the institution and maintenance of the proceedings; (5) lack of probable cause for the proceedings; and (6) damage to the Plaintiff. Commercial Plastics & Supply Corp. v. Molen, 355 S.E.2d 86, 87 (Ga.App.1987).

[9]    In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 12, 1981.

As discussed above, Plaintiff has shown that a question of genuine material fact exists as to whether Defendants had arguable probable cause. *See* <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1556 (11th Cir. 1994) (discussing malicious prosecution claim on Qualified Immunity grounds where Plaintiff alleged Officer purposely and recklessly disregarded the truth and purposely misled the Court) (emphasis added). In light of this fact, the Court finds that Summary Judgment must be denied as to Plaintiff's claim of Malicious Prosecution (Count Two).

There are genuine material facts in the record in dispute from which a reasonable fact finder could deduce that Plaintiff's constitutional right to be free from malicious prosecution was infringed by Defendants. As discussed above, the absence of arguable probable cause supports a finding that Plaintiff has shown that a genuine issue of fact for trial exists regarding Plaintiff's malicious prosecution claim. (*See* Docs. 56, 65, 69, and 84). For this reason, the court **DENIES** Defendants Motions for Summary Judgment (Docs. 55 and 64) to the extent they seek summary judgment on Plaintiff's malicious prosecution claim (count two).

### 3. <u>Monell Liability (*Defendant City of McDonough, Georgia Only*) (Count Three)</u>

As discussed above, the Court finds that summary judgment is not appropriate as to Plaintiff's claim of false arrest against Defendant Noble. Regarding Defendant City of McDonough, Georgia. Plaintiff alleges Defendant City of McDonough is vicariously liable for Defendant's actions based on <u>Monell</u> Liability. The Eleventh Circuit has articulated three ways a plaintiff can meet its burden under <u>Monell</u>. <u>Garvie v. City of Ft. Walton Beach</u>, 366 F.3d 1186, 1188 (11th Cir. 2004) (stating the three ways a plaintiff may identify Monell liability, including: (1) an official policy, (2) a settled custom, or (3) the actions of a "policymaker" that caused the alleged constitutional violation). The Court finds that, as a matter of law, a question of fact

exists as to whether Defendant Noble acted in accordance with applicable law in order to give rise to <u>Monell</u> liability against Defendant City of McDonough, Georgia.

Plaintiff has established that a question of genuine material fact exists as to whether Defendant Noble's actions were simply implements of Defendant City of McDonough, Georgia's policy statements, regulations, or decisions regarding investigatory procedure, or in the instant situation a lack thereof. The record reflects a dispute of material fact as to whether Defendant Noble arrested Plaintiff in execution of an Order from his supervisory Officers. In light of this dispute, the Court finds that Plaintiff has sufficiently asserted a question of material facts as to whether supervisory liability under §1983 applies in the instant case. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003). The record reflects that Defendant Noble's supervising officers personally participated in Plaintiff's arrest; therefore, a causal connection has been established between Defendants' actions and Plaintiff's allegation of constitutional violation.

Moreover, a reasonable fact finder could conclude based on the record that Plaintiff's constitutional rights were infringed upon, in part, due to the allegedly inadequate training of Defendant Noble, the failure of which may constitute a policy supporting government liability. To maintain a claim based on a failure to train adequately, evidence must be proffered showing deliberate indifference to a constitutional deprivation that may result from the failure to provide adequate training. *See* <u>City of Canton v. Harris</u>, 489 U.S. 378, 288, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1978). The Court finds that, as a matter of law, a question of genuine material fact exists as to whether Defendant Noble's actions directly resulted from a failure of Defendant City of McDonough to provide adequate training on, among other things, the use of photographic evidence in a Line-Up and the proper reliance on unsubstantiated identifications. Therefore, for

the foregoing reasons, Defendants' Motions for Summary Judgment (Docs. 54) as to Plaintiff's claim of liability against Defendant City of McDonough (<u>Monell</u> liability-Count Three) is **DENIED**.

## **CONCLUSION**

For the reasons provided herein, Defendants Kenneth Noble and City of McDonough, Georgia's Motion for Summary Judgment (Doc. 54) is **GRANTED-in-part and DENIED-in-part**. Defendant William Stokes's Motion for Summary Judgment (Doc. 64) is **GRANTED**.

**SO ORDERED**, this __30<u>th</u>__ day of March, 2012

/s/ W. Louis Sands

**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**
